**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| R2 SOLUTIONS LLC, | |
|           Plaintiff, | |
|     v. | Civil Action No. 4:23-cv-01147-ALM |
| DATABRICKS, INC., | **JURY TRIAL DEMANDED** |
|           Defendant. | |

**DATABRICKS, INC.'S MOTION TO TRANSFER VENUE TO THE
NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND..............................................................................1

     A.    The Patented Technology Was Designed and Developed in the NDCA. ...............1

     B.    The NDCA Is the Location of Design and Development of the Accused
           Functionality and Accused Product. ........................................................3

     C.    Third-Party Witnesses With Knowledge of Invalidating Prior Art Are
           Located in Northern California..................................................................4

     D.    R2 Has Multiple Connections to California but Limited Ties to This
           District......................................................................................................5

III.   LEGAL STANDARD.........................................................................................6

IV.   ARGUMENT .....................................................................................................7

     A.    R2 Could Have Brought This Suit in the NDCA.......................................7

     B.    The Private Interest Factors Strongly Favor Transfer to the NDCA. ......7

           1.    The Sources of Proof Are Most Easily Accessed in the NDCA................7

           2.    Important Non-Party Witnesses, Including the Named Inventors
                 and Prior Art Witnesses, Could Be Compelled to Testify in
                 NDCA, But Not in EDTX..........................................................................9

           3.    Witnesses Could Attend Trial More Easily in the NDCA. ........................11

     C.    Practical Issues of Litigation Favor Transfer. .........................................13

     D.    The Public Factors Favor Transfer or Are Neutral. .................................13

           1.    Court Congestion Is Neutral. ....................................................................13

           2.    The NDCA Has a Greater Interest in Resolving This Case......................14

           3.    Familiarity of the Forum with the Law Is Neutral....................................15

           4.    Conflicts of Law or Foreign Law Is Neutral.............................................15

V.    CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Cellspin Soft, Inc. v. Nike, Inc*.,
  No. 2:22-CV-0455-JRG-RSP, 2023 WL 6280260 (E.D. Tex. Sept. 26, 2023).......................13

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020)........................................................................8, 13, 14

*In re Apple Inc.*,
  No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ...................................9

*In re DoDots Licensing Sols. LLC,*
  No. 2024-100, 2023 WL 8642716 (Fed. Cir. Dec. 14, 2023)..................................11

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)..........................................................................13

*In re Google LLC*,
  No. 2021-170, 2021 WL 4427899 (Fed Cir. Sept. 27, 2021) ..................................11

*In re Google LLC*,
  No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ............................8, 14

*In re Honeywell Int'l Inc.*,
  No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024).....................................8

*In re Hulu, LLC*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ............................10, 11

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009)............................................................................7

*In re Samsung Elecs. Co.*,
  No. 2023-146, 2023 WL 8642711 (Fed. Cir. Dec. 14, 2023)...........................12, 14

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) .............................................................................13

*In re TracFone Wireless, Inc.*,
  852 F. App'x 537 (Fed. Cir. 2021) .....................................................................11

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ..............................................................................7

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) .....................................................................6, 7, 9

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Jawbone Innovations v. Amazon.com, Inc.*,
  No. 2:21-CV-00435-JRG, Dkt. 60 (E.D. Tex. Sept. 21, 2022).................................................15

*Monterey Rsch., LLC v. Broadcom Corp.*,
  No. W-21-cv-00541-ADA, 2022 WL 526240 (W.D. Tex. Feb. 21, 2022) ............................10

*Texas v. Google LLC*,
  No. 20-cv-957-SDJ, 2021 WL 2043184 (E.D. Tex. May 20, 2021) .......................................15

*Unicorn Energy GMBH v. Tesla, Inc.*,
  No. 2:20-CV-00338-JRG, 2021 WL 4034515 (E.D. Tex. Sept. 3, 2021) .........................7, 15

*VoIP-Pal.com, Inc. v. Google LLC*,
  No. 6:21-CV-00667-ADA, 2022 WL 2068254 (W.D. Tex. June 8, 2022) ............................14

**STATUTES**

28 U.S.C. § 1400(b) ....................................................................................................................7

28 U.S.C. § 1404(a) ...............................................................................................................1, 6, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(c)(1)(B) .......................................................................................................10

Defendant Databricks, Inc. ("Databricks") moves, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the Northern District of California ("NDCA").

## I.    INTRODUCTION

This case belongs in the NDCA.  All three named inventors on the asserted patent (now third parties) resided in California at the time of invention, and two of them still live there.  The third is also located on the West Coast.  The company where the patented technology was developed, Yahoo! Inc., was headquartered in the NDCA at the time of the claimed invention, and multiple witnesses knowledgeable about key, invalidating prior art are likewise based in the Northern District.  Databricks was founded and is headquartered there, and the accused instrumentalities were designed and developed there.  Northern California is where the key Databricks witnesses with knowledge of these fundamental facts are based, as are nearly all other Databricks party witnesses with potentially relevant knowledge.

In contrast, this case has no meaningful connection to any location in this District.  No relevant witnesses or evidence are located here.  Nor did any of the events leading to the action arise in Texas.  Moreover, the asserted patent has no relevant connection to this District.  Because virtually all the evidence and witnesses are in Northern California, the NDCA is more convenient than this District.  Accordingly, Databricks respectfully requests transfer of this case to the NDCA pursuant to § 1404(a).

## II.    FACTUAL BACKGROUND

### A.    The Patented Technology Was Designed and Developed in the NDCA.

In its Complaint filed on December 28, 2023, R2 Solutions LLC ("R2") asserts U.S. Patent No. 8,190,610 (the "asserted patent" or the "'610 patent").  (Dkt. 1.)  The asserted patent is titled "MapReduce for Distributed Database Processing" and purports to describe an "enhanced

MapReduce programming methodology." (Dkt. 1-2 ('610 patent) at 1:30–45; *see* Dkt. 1, ¶ 20.)[1]

The three named inventors on the asserted patent developed the claimed invention during their employment with Yahoo! Inc., a company that was headquartered in Sunnyvale, California at the time of the invention. (Declaration of Jessica M. Kaempf ("Kaempf Decl."), Ex. A.) Each of the named inventors lived and worked in California at the time of invention, and two were specifically identified on the face of the asserted patent as residing in Northern California (San Jose and Sunnyvale). (Dkt. 1-2, ¶ 1.) Based on their Linkedin profiles, two of the three named inventors currently reside in California: Ali Dasdan in Santa Clara County (in Northern California), and Ruey-Lung Hsiao (in Los Angeles County). (*See* Kaempf Decl., Exs. B, C.)[2]

The assignment history of the asserted patent likewise shows connections between this case and California. The named inventors assigned the asserted patent to Yahoo! Inc. (headquartered in Sunnyvale, California at the time of the claimed invention), which then assigned the asserted patent to Excalibur IP (also based in Sunnyvale, California at the time of assignment). (*Id.*, Ex. E (Asserted Patent Assignment Record).) These entities accordingly may have documents and information regarding the patent sale agreements, and thus the value of the asserted patent. Further, Excalibur IP later assigned the patent to R2, and the person who negotiated the patent sale agreement on behalf of R2 is Eric Lucas, who has identified himself as President of R2 and is based in Laguna Beach, California. (*Id.*, Ex. F (Declaration in Roku case), G (LinkedIn Profile).)

---

[1] MapReduce is the "programming methodology to perform parallel computations over distributed (typically, very large) data sets," and was conventional technology at the time of the purported invention in the '610 patent. (Dkt. 1-2 ('610 patent) at 1:6–8, 3:9–10.) The asserted patent purports to improve on conventional MapReduce by allowing for efficient processing of data from two or more related—but possibly heterogeneous—datasets. (*Id.* at Abstract, 1:31–44.)

[2] Based on LinkedIn, the remaining inventor, Hung-chi Yang, lives in the Western District of Washington, which is closer to California than to Texas. (*See* Kaempf Decl., Ex. D.)

████████████████████

**B.     The NDCA Is the Location of Design and Development of the Accused Functionality and Accused Product.**

R2's Complaint accuses Databricks' products, systems and/or services "that utilize *Apache Spark*," including specifically the "Databricks Data Intelligence Platform/Databricks Lakehouse Platform" ("Databricks Platform").  (Dkt. 1, ¶ 7 (defining "Accused Instrumentalities" that include any "platform(s) offered or provided by Databricks *that utilize Apache Spark* or any other similar functionality," including the Databricks Platform (emphasis added)).  Apache Spark is an open source, freely available, software project that started in 2009 as a research project at the University of California, Berkeley ("UC Berkeley"), which is based in the NDCA.[3]  (*See* Declaration of Abhinav Taneja ("Taneja Decl.") ¶ 6.)

████████████████████████████████████████████████████████████████.

(*See id.* ¶ 7.)  ████████████████████████████████████████████████

████████████████████████████████████  *Id.* ¶¶ 7–8.)

Databricks is, and always has been, headquartered in the NDCA.  (*Id.* ¶ 4.)  Databricks maintains three offices in that district, including in San Francisco, Mountain View, and Berkeley.  (*Id.*)  ███████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████

The Databricks Platform was designed and developed by Databricks engineers primarily based in Northern California.  (*Id.* ¶¶ 7–9.)  ███████████████████████████████████

---

[3] Apache Spark is an open-source analytics engine used for big data workloads and machine learning.  (*See* Taneja Decl. ¶ 6.).  As a webpage cited in the Complaint reflects, "Apache Spark is at the heart of the Databricks platform."  (Dkt. 1 at n.6 (citing https://docs.databricks.com/en/spark/index.html.)  The Apache Spark project was open-sourced in 2010 and donated to the Apache Software Foundation in 2013. (Taneja Decl. ¶ 6.)

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Further, members of the Databricks financial team with knowledge of Databricks' financial data are also based in Northern California.  (*Id*. ¶ 10.) [REDACTED]

[REDACTED]

[REDACTED]

Documents concerning the design, development, and operation of the Databricks Platform (including source code), as well as any finance documentation, are created in Databricks' Northern California offices.  (*Id*. ¶ 11.)  In contrast, no Databricks employees that work on the accused instrumentalities live or work in Sherman or anywhere else in this District.  (*Id*. ¶ 12.)

### C.    Third-Party Witnesses With Knowledge of Invalidating Prior Art Are Located in Northern California.

Several non-party witnesses knowledgeable about invalidating prior art, including prior art referenced in the asserted patent, are based in the NDCA.  Specifically, the asserted patent purports to improve upon, or "enhance" the utility of, a prior art programming technology called "MapReduce."  (Dkt. 1-2 ('610 patent) at Abstract.)  MapReduce was developed at Google, a company that is headquartered in Northern California.  (*Id*. at 1:6–15.)  The asserted patent cites the prior art publications of the creators of MapReduce, Jeffrey Dean and Sanjay Ghemawat.[4] (Dkt. 1, ¶ 16; '610 patent at 1:5–27, 2:12–17, 2:19–36, 3:9–20.)   Jeffrey Dean and Sanjay Ghemawat are based in Palo Alto and Mountain View, respectively, which are in Northern California.  (*See* Kaempf Decl., Exs. H (Dean LinkedIn (Palo Alto), I (Ghemawat Accurint).)

---

[4] *See also* https://www.databricks.com/glossary/mapreduce ("MapReduce was developed in the walls of Google back in 2004 by Jeffery Dean and Sanjay Ghemawat of Google . . .").

Moreover, inventors of other key prior art references are based in California.  Specifically, the prior art references include U.S. Patent No. 7,590,620 ("the Pike prior art patent"), U.S. Patent Publication No. 2006/0218123 (the "Chowdhuri prior art patent publication") and U.S. Patent No. 6,343,295 (the "MacLeod prior art patent"), all of which are references that have been used to challenge the validity of the asserted patent before the Patent Trial and Appeal Board.[5]  (Kaempf Decl., Exs. J, K, L.)  Based on their LinkedIn profiles, four of the five inventors of the Pike prior art patent—namely Robert C. Pike, Sean Quinlan, Jeffrey Dean and Sanjay Ghemawat—are based in the NDCA.  (Kaempf Decl., Exs. M, N, H, I.)[6]  At the time of invention, each of these named inventors was an employee of Google, and presumably has knowledge about the existence of any prior art systems at Google embodying the technology disclosed in the Pike prior art patent.  (*Id.*)  Further, the leading inventor of the Chowdhuri prior art publication, Sudipto Chowdhuri, is based in Dublin, California.  (*Id.*, Ex. O (LinkedIn Profile).)  One of the named inventors of the MacLeod prior art patent, Casey L. Kiernan, is based in Los Angeles, California.  (*Id.*, Ex. P.)  These witnesses will likewise have knowledge of the existence of any prior art systems embodying the Chowdhuri prior art patent publication and/or the MacLeod prior art patent.  None of the ten inventors across any of the prior art patents asserted in the pending IPRs lives in the Eastern District of Texas ("EDTX").  (*See* Kaempf Decl., Exs. H, I, K, M–P, Y, Z, and AA.)

### D.    R2 Has Multiple Connections to California but Limited Ties to This District.

While R2 purports to be located in Texas (Dkt. 1, ¶ 1), R2 has no identifiable employees based in Texas.  Eric Lucas, who previously submitted a declaration on behalf of R2 in a litigation

---

[5] Each of Cloudera, Fed Ex, American Airlines and Databricks have filed IPRs asserting these prior art references.  *See, e.g.*, IPR2024-00659, IPR2024-00303, IPR2023-00689 and IPR2022-01405.

[6] The only "Pike" inventor who does not live in NDCA currently lives in New Jersey.  (*Id.*, Ex. Y (Accurint Report).)

involving the asserted patent and identified himself as President of R2, is based in Laguna Beach, California.  (*Id.*, Exs. F (Eric Lucas Declaration), G (Eric Lucas LinkedIn).)  Additionally, Marc Booth, who is a signatory of R2's filings to the Texas Secretary of State, is based in Newport Beach, California.  (*Id.*, Ex. Q (R2 tax filing), R (Marc Booth LinkedIn Profile).)

R2's parent companies, Acacia Research Group LLC and Acacia Research Corporation, also have stronger ties to California than to Texas.  (Dkt. 3; Kaempf Decl., Exs. S, T.)  Neither Acacia Research Group LLC nor Acacia Research Corporation has any identifiable employees in Texas.  Based on the LinkedIn profile for Acacia Research Group LLC, all employees of that entity are based in California or New York.  (*Id.*, Ex. S.)  As examples, Eric Lucas (who is also the President of R2) is the Senior Vice President, Licensing and Litigation at Acacia Research Group and, as discussed above, he is based in Laguna Beach, California.  (*Id.*, Ex. G (Eric Lucas LinkedIn).)  Likewise, Marc Booth is Chief Executive Officer of Acacia Research Group LLC and, as discussed above, is based in Newport Beach, California.  (*Id.*, Ex. R.)  Additionally, Kirsten Hoover, the Chief Financial Officer of R2's parent company Acacia Research Group LLC, is based in Newport Beach, California.  (*See* Ex. U (Acacia Research Group LLC officers).)[7]

In its Complaint, R2 pleads no facts suggesting any connections in this District other than being "located" in Frisco, Texas.  (*See* Dkt. 1, ¶ 1.)

## III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer" any civil action to any district "where it might have been brought."  28 U.S.C. § 1404(a).  Courts should transfer under § 1404(a) where "the movant demonstrates that the transferee venue is clearly more convenient."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

---

[7] Acacia Research Corporation also has an office in Irvine, California.  (*Id.* Ex. T.)

The threshold "question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am.*, 545 F.3d at 312.  Assuming so, courts then consider whether the "private" and "public" factors favor transfer.  *Id.*  The private factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive," and the public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law."  *Id*. at 315 (citations omitted).  Courts may not give separate weight to the plaintiff's choice of forum.  *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

## IV.    ARGUMENT

### A.    R2 Could Have Brought This Suit in the NDCA.

The plaintiff could have filed this action in the NDCA.  Databricks' headquarters is in Northern California, and the accused instrumentalities were designed and developed there. (Taneja Decl. ¶¶ 4, 8.)  Thus, venue would be proper over Databricks, and Databricks would be subject to personal jurisdiction in the NDCA.  *See* 28 U.S.C. § 1400(b); *see also In re Volkswagen AG*, 371 F.3d 201, 203, (5th Cir. 2004) (per curiam).  Because the case could have been filed in the NDCA, the analysis proceeds to the private and public interest factors, all of which substantially favor transfer or are neutral.

### B.    The Private Interest Factors Strongly Favor Transfer to the NDCA.

#### 1.    The Sources of Proof Are Most Easily Accessed in the NDCA.

The access to sources of proof factor weighs heavily in favor of transfer.  This factor analyzes "the relative ease of access to sources of proof, including documentary and other physical

███████████████

evidence." *Unicorn Energy GMBH v. Tesla, Inc*., No. 2:20-CV-00338-JRG, 2021 WL 4034515, at *1 (E.D. Tex. Sept. 3, 2021).  As the Federal Circuit has instructed, courts must consider "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval."  *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (per curiam); *In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *2 (Fed. Cir. Jan. 26, 2024) (per curiam) (this factor favors transfer where "[c]ustodians of relevant records" are located in the transferee district).  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

Here, the access to sources of proof factor favors transfer because the relevant documents were generated and are currently maintained in the NDCA, and the key document custodians are based in the NDCA.  *See, e.g.*, *In re Google LLC*, 2021 WL 5292267, at *2. ███████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████  Databricks' WeWork location in Plano, Texas does not generate or maintain any documents that are relevant to this case.  (*See id.* ¶ 12.) ████████████

████████████████████████████████████████

Further, R2 likely has no sources of proof in this District or even in the State of Texas.  R2,

while registered in Texas, is a fully owned subsidiary of a California-based public company, Acacia Research Corporation.  (*See* Dkt. 3; Kaempf Decl. ¶ 21.)  R2 currently has no managing executive or employee on record residing in this District or anywhere in Texas.  Individuals known to be associated with R2, including Eric Lucas (who previously submitted a declaration on behalf of R2, identifying himself as President of R2), and Marc Booth (a signatory on R2's Texas Secretary of State filings), reside in California.  (Kaempf Decl., Exs. F, G, R.)  A managing executive of R2's parent company Acacia Research Group LLC, Kirsten Hoover, is also a resident of California.  (*Id.*, Ex. U.)  Therefore, R2's documents relevant to this case are likely maintained in California and R2's document custodians are likewise in California.  R2's lack of presence in the EDTX, and its connections to California, further weigh in favor of transfer.

In sum, given the location of design and development of the relevant technology and of relevant document custodians, and given the absence of relevant evidence in this District, this factor significantly favors transfer to the NDCA.

> **2.    Important Non-Party Witnesses, Including the Named Inventors and Prior Art Witnesses, Could Be Compelled to Testify in NDCA, But Not in EDTX.**

The second factor weighs in favor of transfer.  This factor focuses on "the availability of compulsory process to secure the attendance of witnesses."  *In re Volkswagen of Am.*, 545 F.3d at 315.  "The venue's ability to compel testimony through subpoena power is ... an important factor in the § 1404(a) calculus," and "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue."  *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) (per curiam) (citations omitted).

Here, as discussed above in Sections II.A and II.C, multiple non-party witnesses are subject to subpoena powers of the NDCA, but not to those of the EDTX.  ***First***, two out of three named inventors—Ali Dasdan and Ruey-Lung Hsiao—reside in the NDCA.  (*See supra*, at II.A.)  Because

the named inventors of the asserted patent "likely have relevant testimony," their location in the NDCA favors transfer. *Monterey Rsch., LLC v. Broadcom Corp.*, No. W-21-cv-00541-ADA, 2022 WL 526240, at *5 (W.D. Tex. Feb. 21, 2022). Here, Ali Dasdan is the first named inventor of the asserted patent (*see* Dkt. 1-2); he is based in Santa Clara County, California, and is thus subject to the subpoena power of the NDCA. (Kaempf Decl., Ex. B; Fed. R. Civ. P. 45(c)(1)(B) ("A subpoena may command a person to attend a trial. . . within the state where the person resides, is employed, or regularly transacts business in person").) Likewise, Ruey-Lung Hsiao, another inventor of the asserted patent, is located in Los Angeles County, California and is also subject to the subpoena power of the transferee forum. (Kaempf Decl., Ex. C.)

**Second**, two individuals, Jeffrey Dean and Sanjay Ghemawat, have knowledge about the MapReduce technology that forms the foundation of the asserted patent, and both are located in the NDCA. (*See supra*, at II.C; *id.*, Exs. H, I.) Indeed, the MapReduce prior art was "specifically mentioned in the asserted patents themselves" (*see* Dkt. 1-3), and accordingly, pursuant to Federal Circuit case law, the relevance of these witnesses is "heighten[ed]." *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021).

**Third,** other individuals with knowledge of additional key prior art are based in the NDCA. Specifically, in addition to Jeffrey Dean and Sanjay Ghemawat, Robert C. Pike and Sean Quinlan are named inventors of, and thus have knowledge about, the Pike prior art patent and any related prior art systems. (*See supra*, at II.C; Kaempf Decl., Exs. M, N.) Similarly, Sudipto Chowdhuri and Casey L. Kiernan likewise have knowledge of key prior art. (*See supra*, at II.C; Kaempf Decl., Exs. O, P.) In sum, at least six individuals with knowledge of important prior art are based in Northern California, and thus subject to the subpoena power of the proposed transferee court. (*Id.*)

Because these non-party individuals and entities have highly relevant knowledge about the Asserted Patent and prior art, and because they would be subject to the subpoena power of the

10

NDCA—but not this Court—this factor favors transfer.

### 3.    Witnesses Could Attend Trial More Easily in the NDCA.

The third factor, the cost of attendance for willing witnesses, also strongly favors transfer.

The cost of attendance for willing witnesses is the most important factor in a transfer analysis. *See*

*In re DoDots Licensing Sols. LLC*, No. 2024-100, 2023 WL 8642716, at *1 (Fed. Cir. Dec. 14,

2023) (per curiam) (lower cost of attendance for willing witnesses weighs in favor of transfer).

"[W]here 'a substantial number of material witnesses reside within the transferee venue . . . and

no witnesses reside within the' transferor venue, a district court 'clearly err[s] in not determining'

the convenience of willing witnesses 'to weigh substantially in favor of transfer.' *In re Google*

*LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Sept. 27, 2021) (citation omitted).



This factor strongly favors transfer. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, the design and

development of the Databricks Platform to utilize Apache Spark occurred primarily in Northern

California.  (*Id.* ¶ 9.)  The Databricks engineering team that designed and developed the accused

instrumentalities is primarily located in Northern California, well over 1400 miles away from

Sherman, Texas.  (*Id.*; Kaempf Decl., Ex. V.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The convenience to these highly relevant party witnesses weighs heavily in favor of transfer.  *In*

*re TracFone Wireless, Inc.,* 852 F. App'x 537, 539 (Fed. Cir. 2021) (willing witnesses factor favors

transfer where "several of [defendant's] likely employee witnesses [are] residing in the transferee

venue"); *In re Hulu, LLC*, 2021 WL 3278194, at *4 (willing witnesses factor favors transfer where

"nearly all of the party witnesses are in or near the" transferee venue).

████████████████████

Conversely, *none* of the Databricks employees that work on Apache Spark lives in this District, and no Databricks custodians who create or maintain documents relevant to this action are in this District.  (Taneja Decl. ¶ 12.) ████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████  Indeed, as the Federal Circuit has explained, any inconvenience to employees with non-technical knowledge cannot outweigh the inconvenience to witnesses with critical knowledge of the accused functionality.  *See In re Samsung Elecs. Co.*, No. 2023-146, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023) (per curiam) (employees in transferor forum "who have no technical knowledge of the accused functionality here, 'cannot overcome the immense inconvenience that the majority of relevant witnesses would face if the case [were not transferred].'").

The NDCA would also be more convenient for likely witnesses associated with R2.  Such individuals will likely have knowledge about the R2's business and licensing of the asserted patent, and are located in or around Laguna Beach, California.  (*See supra*, at II.D.)  As one example, Eric Lucas previously submitted a declaration confirming he has knowledge about the sale (and value)

of the asserted patent, and he is based in Laguna Beach, California.[8]  (Kaempf Decl., Exs. F, G.)
Laguna Beach is approximately 1000 miles closer to the NDCA than it is to Sherman, Texas.  (*Id.*,
Exs. W, X.)  Under this factor, the proximity of these witnesses to Northern California favors
transfer.  *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023) (when the distance between the
transferor court and the transferee court is more than 100 miles, "the factor of inconvenience to
the witnesses increases in direct relationship to the additional distance to be traveled.").

### C.    Practical Issues of Litigation Favor Transfer.

This factor considers "practical problems that make a trial easy, expeditious and
inexpensive."  *In re Apple*, 979 F.3d at 1342.  This factor favors transfer because the case is in its
early stages, and there is no related co-pending litigation in this District.  Further, witnesses from
both parties are located in or near the transferee venue; thus, transferring this action will minimize
problems and costs associated with travel.

### D.    The Public Factors Favor Transfer or Are Neutral.

#### 1.    Court Congestion Is Neutral.

This Court has found this factor neutral because "the record does not indicate any further
basis to comparatively evaluate court efficiencies."  *Cellspin Soft, Inc. v. Nike, Inc*., No. 2:22-CV-
0455-JRG-RSP, 2023 WL 6280260, at *5 (E.D. Tex. Sept. 26, 2023).  The Federal Circuit has
ruled that this factor is afforded the least weight because it "appears to be the most speculative"
factor.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

---

[8] Additionally, Marc Booth (a signatory on R2's Secretary of State filings) and Kirsten Hoover
(executive of R2's parent company) are likewise based near Laguna Beach, CA (specifically in
Newport Beach).  (*See supra*, II.D.)  To the extent any of Eric Lucas, Marc Booth, and Kirsten
Hoover are unwilling witnesses, their presence in California favors transfer to an even greater
extent, because they are subject to the subpoena power of the NDCA.

### 2.    The NDCA Has a Greater Interest in Resolving This Case.

The local interest factor strongly favors transfer in this case.  "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'"  *In re Apple*, 979 F.3d at 1345 (quoting omitted) (emphasis in original).

As the Federal Circuit has instructed, the "'research[ ], design[ ], and develop[ment]' of accused technology within the [transferee forum] are 'significant factors that give the [transferee forum] a legitimate interest in adjudicating the cases "at home.""  *VoIP-Pal.com, Inc. v. Google LLC*, No. 6:21-CV-00667-ADA, 2022 WL 2068254, at *8 (W.D. Tex. June 8, 2022); *In re Samsung Elecs. Co.*, 2023 WL 8642711, at *2 (where "[t]he accused functionality was []researched, designed, and developed in NDCA and the patented technology was also invented in NDCA," this "clearly gives NDCA a significant connection to the events giving rise to this suit").[9]

Here, the local interest factor strongly favors transfer to the NDCA because ***both*** the technology claimed in the asserted patent ***and*** the accused technology were designed and developed there.  Specifically, the patented technology was designed and developed at Yahoo! (a company that was headquartered in Northern California at the time of the claimed invention), including by two named inventors who were based in Northern California at the time of the claimed invention.  (*See supra*, II.A.)  Moreover, the accused Apache Spark technology and the Databricks Platform were designed and developed in Northern California.  (*See supra*, II.B.)  Accordingly, the location of design and development of the technology at issue in this case clearly gives the NDCA a significant connection to this case.

---

[9] *In re Google*, 2021 WL 5292267, at *2 (favoring transfer where defendant "researched, designed, and developed the accused functionalities in [NDCA]"); *In re Apple*, 979 F.3d at 1345 (favoring transfer where "accused products were designed, developed, and tested in NDCA").

Further, where a party is a resident of the transferee district, "'[t]here is little doubt' that a district 'has a local interest in the disposition of [the] case.'" *Texas v. Google LLC*, No. 20-cv-957-SDJ, 2021 WL 2043184, at *9 (E.D. Tex. May 20, 2021) (citation omitted)); *see also Unicorn Energy GMBH*, 2021 WL 4034515, at *5 (transferee district has stronger local interest where defendant "is headquartered in the Northern District and the design, development, management, and decision making related to the Accused Products have historically been centered there" despite the defendant's alleged sales and employees in the district). ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████ Thus, the presence of any employees in this District does not change that the local interest of this case is significantly stronger in Northern California.

There is no reasonable dispute that the NDCA has a stronger local interest in the adjudication of the case than the EDTX. This factor thus strongly favors transfer to the NDCA.

### 3.    Familiarity of the Forum with the Law Is Neutral.

This Court has found this factor is neutral where both the transferor and the transferee forums are equally familiar with the Patent Law. *See Jawbone Innovations v. Amazon.com, Inc.*, No. 2:21-CV-00435-JRG, Dkt. 60 at 16 (E.D. Tex. Sept. 21, 2022).

### 4.    Conflicts of Law or Foreign Law Is Neutral.

No issues regarding conflicts of law or foreign law apply here. This factor is thus neutral.

## V.    CONCLUSION.

All private factors strongly favor transfer, and all the public factors likewise favor transfer or are neutral. Databricks respectfully requests that the Court transfer this action to the NDCA because it is clearly the more convenient forum.

Dated: May 21, 2024

Respectfully submitted,

/s/ Michael J. Sacksteder
Michael J. Sacksteder (Admitted E.D. Texas)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350
Email:        msacksteder@fenwick.com

Jessica M. Kaempf (Admitted E.D. Texas)
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:    206.389.4510
Facsimile:    206.389.4511
Email:        jkaempf@fenwick.com

*Attorneys for Defendant*
*Databricks Inc.*

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for Defendant has complied with L.R. 7(h) regarding this motion.  On May 21, 2024, counsel for Defendant met and conferred with counsel for Plaintiff via telephone, and counsel for Plaintiff indicated that it opposes the relief requested by this motion.

*/s/ Michael J. Sacksteder*
Michael J. Sacksteder

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that a motion to seal the present document has been filed.

*/s/ Michael J. Sacksteder*
Michael J. Sacksteder

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 21, 2024.  Additionally, I hereby certify that all counsel of record who consented to electronic service are being served with a copy of this document via electronic mail per Local Rule CV-5.

*/s/ Michael J. Sacksteder*
Michael J. Sacksteder
