███████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| R2 Solutions LLC, | Civil Action No. 4:23-cv-01147-ALM |
| Plaintiff, | ███████████████ |
| v. | Jury Trial Demanded |
| Databricks, Inc., | |
| Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

████████████

## TABLE OF CONTENTS

I.      LEGAL STANDARD.................................................................................................... 1

II.     ARGUMENT .............................................................................................................. 2

     A.    Public Interest Factors........................................................................................ 3

         i.     The administrative difficulties flowing from court congestion in NDCA weigh against transfer................................................................... 3

         ii.    Texas has a strong interest in deciding the issues of this case................... 4

     B.    Private Interest Factors ...................................................................................... 7

         i.     The relative ease of access to sources of proof does not favor transfer...... 7

         ii.    Databricks has not identified any third-party witnesses who would be unwilling to testify. ............................................................................... 9

         iii.   The cost of attendance for willing witnesses is neutral. ........................... 11

         iii.   Practical problems that make a trial easy, expeditious, and inexpensive weigh heavily against transfer. ............................................ 12

III.    CONCLUSION.......................................................................................................... 13

**TABLE OF AUTHORITIES**

<u>**Cases:**</u>

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
   358 F.3d 337 (5th Cir. 2004) ........................................................................ 1

*Adaptix, Inc. v. Cellco P'ship*,
   No. 6:15-cv-00045, 2015 U.S. Dist. LEXIS 186704 (E.D. Tex. Aug. 12, 2015) ..................... 9

*Cooktek Induction Sys., LLC v. I/O Controls Corp.*,
   2016 U.S. Dist. LEXIS 100825 (E.D. Tex. Aug. 2, 2016) ........................................ 4

*Dong Sik Yoo v. Kook Bin Im*,
   2018 U.S. Dist. LEXIS 11246, 2018 WL 549957 (E.D. Tex. Jan. 24, 2018) .......................... 8

*Gulf Oil Corp. P. Gilbert*,
   330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ............................................ 1

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ............................................................................. 2

*iFly Holdings LLC v. Indoor Skydiving Germany GMBH*,
   2015 U.S. Dist. LEXIS 136537 (E.D. Tex. Oct. 7, 2015) ........................................ 4

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ................................................................. 8

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ................................................................. 3

*In re Planned Parenthood Fed'n of Am., Inc.*,
   52 F.4th 625 (5th Cir. 2022) ............................................................ 1, 3, 8, 9

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) ................................................................ 12

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ................................................................... 2

*In re Volkswagen*,
   566 F.3d 1349 (Fed. Cir. 2009) ................................................................ 12

*Lionra Tech. Limited v. Apple Inc.*,
   No. W-22-CV-00351-ADA (W.D. Tex. May 9, 2023) ........................................... 2, 9

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ................................................................................................ 1, 2

*Uniloc U.S. v. Huawei Device U.S.,*
    2018 U.S. Dist. LEXIS 234545 (E.D. Tex. Sept. 6, 2018) ........................................ 9

*VCode Holdings, Inc. v. Cognex Corp.,*
    2007 U.S. Dist. LEXIS 56672 (E.D. Tex. Aug. 3, 2007) ......................................... 3

## Rules, Statutes and Regulations:

28 U.S.C. § 1404(a) .................................................................................................. 12

Fed. R. Civ. P. 45(c)(1)(B) ........................................................................................ 10

Defendant Databricks, Inc. ("Databricks") asks this Court to transfer this case to the Northern District of California ("NDCA"). While transfer to California may be convenient for Databricks because its headquarters is there, mere convenience is not enough. Databricks must show that NDCA is *clearly* more convenient than this District. *See In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). It has not done so. This District is both home to R2 and much more convenient for R2's witnesses. And while Databricks' headquarters may be in NDCA, it maintains a significant and telling presence in this District, with a number of highly relevant employees. Finally, efficiency considerations strongly favor keeping the case in this District. Because the public and private interest factors do not clearly weigh in favor of transfer, the Court should deny Databricks' motion.

## I.    LEGAL STANDARD

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "The determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).[1] "[T]he district court must weigh the private and public interest factors set forth in *Gulf Oil Corp. P. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) to determine whether the destination venue is clearly more convenient than the venue chosen by the plaintiff." *In re Planned Parenthood*, 52 F.4th at 630 (internal citations omitted). The private interest factors include: "(1)

---

[1] Because transfer issues do not involve substantive patent law issues, Fifth Circuit law governs, not Federal Circuit law. *See In re TS Tech United States Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

1

the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft*, 454 U.S. at 241 n.6). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* "Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference." *Lionra Tech. Limited v. Apple Inc.*, No. W-22-CV-00351-ADA, slip op. at 19 (W.D. Tex. May 9, 2023) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)) (attached as Ex. 31).

## II.  ARGUMENT

Databricks failed to show that NDCA is clearly more convenient than this District. It certainly is not convenient for R2—R2 is located here, its president lives in Austin, and transfer to NDCA would delay R2's right to trial by well over a year. Further, Databricks' claim that NDCA is more convenient than EDTX is undercut by Databricks' 300 Texas employees and its Plano office. Despite Databricks' assertion that "[n]o relevant witnesses are located here" (Mot. at 1), one of the Texas employees is Databricks' Director of Technical Solutions for the accused products. That makes him perhaps the *most* relevant witness. Moreover, Databricks failed to offer any evidence that materials are more accessible in NDCA as compared to EDTX, failed to offer any evidence that non-party witnesses it identified are unwilling to come to trial, failed to show that it would be more cost efficient for willing witnesses to have trial in NDCA, and ignored the

judicial economies that stem from keeping the case in EDTX. This case belongs in the Eastern District of Texas.

### A.    Public Interest Factors

Courts in this District typically treat two of the public interest factors as neutral in patent cases: (1) familiarity of the forum with the law that will govern the case; and (2) the avoidance of unnecessary problems of conflicts of law. *See, e.g.*, *VCode Holdings, Inc. v. Cognex Corp.*, 2007 U.S. Dist. LEXIS 56672, at *10–11 (E.D. Tex. Aug. 3, 2007). The two remaining factors—the administrative difficulties flowing from court congestion and the local interest in having local issues decided at home—weigh against transfer.

#### i.    The administrative difficulties flowing from court congestion in NDCA weigh against transfer.

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). The Fifth Circuit has recognized that "to the extent docket efficiency can be reliably estimated, the district court is better placed to do so," and the fact that a case "appears to be timely proceeding to trial [in the current venue] … counsels against transfer." *In re Planned Parenthood*, 52 F.4th at 631. This case will go to trial much faster in this District than in NDCA, weighing strongly against transfer.

Transferring this case to NDCA would cause significant delay. The average time to trial in NDCA for patent cases since 2020 is over sixteen months longer than EDTX (1311 days in NDCA versus 815 days in EDTX). *See* Ex. 1.[2] For the quarter ending December 31, 2023, the Federal

---

[2] All numbered Exhibits are attached to the Declaration of Carder W. Brooks, which is included with this Response as Exhibit A.

Court Management Statistics show that the median time to trial in all civil cases is 21.4 months in EDTX and 48.9 months in NDCA. *See* Ex. 2 at 2, 3. These statistics also show that only 8% of civil cases in EDTX are over three years old, while 21.7% of civil cases in NDCA are over three years. *Id*. This is not a case in which the statistics show only a minor differences between two districts—the differences are indisputable. This case will most certainly proceed to trial much quicker in this Court than NDCA. This factor weighs heavily against transfer.[3]

### ii.    Texas has a strong interest in deciding the issues of this case.

R2's presence in this District and lack of ties to NDCA demonstrate this Court's interest in deciding this case. And while Databricks being headquartered in San Francisco gives NDCA an interest, Databricks *also* makes this District its home, enhancing this Court's interest. *See* ECF 1 at ¶¶ 2-6. Thus, this factor disfavors transfer.

Databricks is incorrect that R2 has only "limited ties" to this District and that it "likely has no sources of proof in this District or even in the State of Texas." Mot. at 5, 8. R2 is a Texas LLC seeking to enforce its patents in its home District. *See Cooktek Induction Sys., LLC v. I/O Controls Corp.*, 2016 U.S. Dist. LEXIS 100825, at *9 (E.D. Tex. Aug. 2, 2016) ("Because Plaintiff is located in Texas, and the owner of the patent at issue, this case does have a significant connection to this district."); *see also iFly Holdings LLC v. Indoor Skydiving Germany GMBH*, 2015 U.S. Dist. LEXIS 136537, at *13 (E.D. Tex. Oct. 7, 2015) ("Texas residents have a strong interest in deciding a patent infringement dispute involving a patent owned by a Texas company."). R2 was

---

[3] Databricks' reliance on *Cellspin Soft* to argue that this factor is neutral is misplaced. *See* Mot. at 13 (citing *Cellspin Soft, Inc. v. Nike, Inc.*, No. 2:22-cv-0455-JRG-RSP, 2023 U.S. Dist. LEXIS 171889, at *12 (E.D. Tex. Sep. 26, 2023)). The plaintiff there did not appear to offer any evidence on the record that the time to trial in NDCA would be longer than in EDTX. *See*, *e.g.*, Ex. 32 (Opp. to Mot. to Transfer Venue, 19, *Cellspin Soft*, No. 2:22-cv-0455-JRG-RSP, 2023 U.S. Dist. LEXIS 171889). R2 has offered evidence here.

███████████

formed in Texas in 2016, and it has maintained places of business in Austin, Texas or in this District the entire time. *See* Exs. 3-6; Ex. B at ¶¶ 2-4, 6-7.[4] R2 conducts business activities in EDTX and this State in the form of, at least, management of its substantial patent portfolio of over 2,000 U.S. patents (and 5,000 patents worldwide) and substantial licensing efforts. Ex. B at ¶ 11. Such business activities are spearheaded and carried out by R2's President, Craig Yudell,[5] who maintains a work address in this District and works extensively from his residence in Austin. *Id.* at ¶¶ 7, 11. Both R2 and its predecessor-in-interest to the asserted patents, a business called Excalibur IP, LLC (with its own ties to Texas), have negotiated dozens of licenses for R2's portfolio outside of litigation. *Id.* at ¶¶ 9-11. Those licensing efforts are ongoing, and R2 plans to continue its patent enforcement and non-litigation licensing efforts in this District and this State. *Id.* at ¶ 12. In fact, many of the patents in R2's portfolio do not expire until the 2030s. *Id.* at ¶ 11.

Databricks' relationship with Texas and this District only embellishes this Court's interest. Databricks maintains a significant business presence in Texas and this District via its Plano operations center. Indeed, notwithstanding its bald assertion that "[n]o relevant witnesses … are located here" (Mot. at 1), Databricks employs 300 people in Texas (*see* Ex. 7), with LinkedIn showing 112 in the DFW metroplex (*see* Ex. 8) and 25 specifically in Plano (*see* Ex. 9). *See also* ECF 1 at ¶¶ 4-6. Databricks' Plano office is its *only* Texas office, meaning that the Plano office is Databricks' Texas hub. *See* Ex. 10.

████████████████████████████

████████████████████████████

---

[4] Exhibit B to this Response is the Declaration of Craig Yudell, R2 Solutions' President.
[5] Databricks alleges multiple times that Eric Lucas is R2 Solutions' president. He is not. Craig Yudell has been R2 Solutions' president since 2021. *See* Ex. B, ¶ 2.

████████████████

████████████████. ECF 20-2, ¶ 12. Note that Databricks was careful in its wording. ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ What matters is that Databricks has a Texas hub in Plano to serve its Texas workforce, which consists of 300+ individuals, including engineering and computer/data scientists. *See, e.g.*, Ex. A, ¶ 33 (table summarizing twenty current Databricks employees in Texas with knowledge highly relevant to the accused systems); *see also* Exs. 7-9, 12-30.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

6

███████████████

█████████████████████████████████████████████████

██████████████

In essence, Databricks' relevant business practices are not localized to NDCA as Databricks suggests. Residents in this District invoke the accused systems (*see, e.g.,* ECF 1, ¶¶ 7-9), and Databricks employs engineers in Texas and this District, including its Director of Technical Solutions to deal with accused system operations all over the world. This is a case with substantial local ties to this District on both sides. The same cannot be said for NDCA. Thus, this District has a greater interest in hearing this case.

**B.      Private Interest Factors**

Databricks failed to demonstrate that any of the private interest factors weigh in favor of transfer. Databricks did not show that evidence is more accessible in NDCA, that there are *any* unwilling witnesses for whom NDCA would be more convenient, that it will be easier for willing witnesses to testify in NDCA, or that any practical considerations favor NDCA.

**i.      The relative ease of access to sources of proof does not favor transfer.**

Databricks' argument that this factor weighs in favor of transfer is two-fold: (1) all of Databricks' relevant materials are located in NDCA, and (2) "R2 likely has no sources of proof in this district or even in the State of Texas." Mot. at 8. Databricks is wrong on both counts.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████



Second, Databricks is mistaken that "R2 likely has no sources of proof in this district or even in the State of Texas." Mot. at 8. As discussed above, R2 has important ties to Texas, and substantially all (if not all) of R2's documents are presently located on servers at the offices of its outside counsel in Fort Worth. *See* Ex. B, ¶ 14; *see also* Ex. A, ¶ 34. Such documents include information relevant to patent prosecution, ownership, infringement, damages (such as license agreements involving the asserted patents), and validity (including various asserted prior art). *Id*. No physical copies of these documents are located in NDCA. *Id*.

For the purposes of analyzing this factor, the Fifth Circuit has held that "[t]he location of evidence bears much more strongly on the transfer analysis when … the evidence is physical in nature." *In re Planned Parenthood*, 52 F.4th at 630; *see also In re Apple Inc.*, 979 F.3d 1332, 1339-40 (Fed. Cir. 2020). Even if Databricks possesses physical evidence relevant to this case, it has not shown as much, and has otherwise failed to show that any such documents are so voluminous as to present a burden to transport them to EDTX. *See Dong Sik Yoo v. Kook Bin Im*, 2018 U.S. Dist. LEXIS 11246, 2018 WL 549957, at *7 (E.D. Tex. Jan. 24, 2018) ("[T]he location of documents is

given little weight in determining proper venue unless the documents 'are so voluminous [that] their transport is a major undertaking.'") (citations omitted). Thus, this factor is neutral.

> ii.     **Databricks has not identified any third-party witnesses who would be unwilling to testify.**

The majority of Databricks' exhibits to its motion are offered to demonstrate that individuals Databricks deems relevant non-party witnesses are located in NDCA. But Databricks' arguments on this point are flawed. Fifth Circuit precedent is clear: "the availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *In re Planned Parenthood*, 52 F.4th at 630-31. In *Planned Parenthood*, the Fifth Circuit upheld a district court's finding that "that this factor did not weigh in favor of transfer [when] the [defendants] failed to identify any witnesses who would be unwilling to testify." *Id; see also Uniloc U.S. v. Huawei Device U.S.*, 2018 U.S. Dist. LEXIS 234545, at *8 (E.D. Tex. Sept. 6, 2018) (holding that the party seeking transfer bears the burden of identifying unwilling witnesses who would benefit from transfer). Such is the case here. Databricks has not shown that *any* of the third-party witnesses identified would be unwilling to testify, so this factor should be given no weight.

Furthermore, Databricks failed to establish the "relevancy and materiality of the information such witnesses would provide" to help courts assess if they "would be deposed, called to trial, or both." *Adaptix, Inc. v. Cellco P'ship*, No. 6:15-cv-00045, 2015 U.S. Dist. LEXIS 186704, at *11 (E.D. Tex. Aug. 12, 2015). No invalidity contentions have been served in this case, so Databricks' arguments regarding inventors of claimed prior art are "speculative and based on art that might not be asserted." *Lionra Tech.*, No. W-22-CV-00351-ADA, slip op. at 39 (attached as Ex. 31). Thus, such argument should be afforded little weight because "to allow parties to consider prior art witnesses without requiring them to actually use the references invites substantial

gamesmanship in identifying references to inflate the number of relevant prior art witnesses." *Id*. Furthermore, as Databricks recognizes, the Dean/Ghemawat references were "specifically mentioned in the asserted patents themselves" (Mot. at 10) and were before the USPTO during prosecution, meaning that they are less likely to be asserted as prior art in this case. *See id*.

Additionally, this Court, not NDCA, has compulsory process over at least one highly relevant witness who R2 solutions intends to depose and call to trial. Federal courts may compel a witness's attendance at trial, hearing, or deposition by subpoena if the court is located in the same state where the witness "resides, is employed, or regularly transacts business in person, if the person … is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). Paul Reidy resides in Texas and possesses evidence relevant to R2's damages case. Ex. B, ¶¶ 4-6, 8-10; Ex. 33. Mr. Reidy was the President of Excalibur IP, LLC ("Excalibur"). Ex. 33. The patent-in-suit was previously owned by Excalibur, and Mr. Reidy previously owned R2. Ex. 4; Ex. B, ¶¶ 6, 8. Mr. Reidy negotiated licensing agreements involving the patents-in-suit while they were owned by Excalibur. Ex. B, ¶¶ 5, 9. This information is highly relevant to evaluating the damages that R2 is owed by virtue of Databricks' infringing activities. Traveling from Austin to Sherman will not cause Mr. Reidy to incur substantial expense in comparison to traveling to California. *See KT Imaging*, 2021 U.S. Dist. LEXIS 35071, at * 10-11 ("While Spring is at least four hours away by car from Sherman, it is easier for Spring employees to drive a few hours than to fly to another state."). If this Court determines that the distance between Austin and Sherman is so great that it would inflict substantial expense on Mr. Reidy, R2 will pay Mr. Reidy's travel expenses. *See id.* at * 10–11 (E.D. Tex. Feb. 25, 2021) ("As KTI pledges to pay expenses for those non-East Texas HP witnesses, they would not incur a substantial expense."). Thus, compulsory process is available in this District, and not NDCA, for at least one relevant third-party witness.

█████████████

Because Databricks failed to establish that any of the third-party witnesses it identified are unwilling to testify, and because this Court and not NDCA has compulsory process available as to Mr. Reidy, this factor is neutral.

### iii.    The cost of attendance for willing witnesses is neutral.

Databricks' arguments regarding cost of attendance echo those made with respect to other factors, namely, that the accused products were designed/developed in NDCA and █████████████ ████████. *See* Mot. at 11. This fails for two reasons. First, ████████████████████████ █████████████████████████████████████████████████. Second, Databricks simply pretends that it does not have 300+ employees in Texas with easier access to this Court. This includes Databricks' Director of Technical Solutions, Mr. Raratharajan, a highly relevant witness who "lead[s] the Spark and Cloud Technical Solutions team for the Americas" and is the "[g]lobal lead for Spark Solutions Team." *See* Ex. 11. It would clearly be more convenient for Mr. Raratharajan to attend trial in this District than in NDCA. And further, R2 Solutions has identified over 100 Databricks employees located in the DFW area and this District (*see* Ex. 8), dozens of whom have material information as to the value and functionality of the accused systems. *See* Ex. A, ¶ 33 (table summarizing twenty current Databricks employees in Texas with knowledge highly relevant to the accused systems). ██████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

████████████

As for R2, Craig Yudell is its President, and he will willingly testify at trial. Ex. B at ¶¶ 2, 15. Mr. Yudell lives in Austin, Texas, and travel for trial in Sherman, Texas is more convenient for him than NDCA. *Id*. at ¶¶ 7, 16. He has relevant and extensive knowledge of at least: (i) the R2 patent portfolio; (ii) company ownership, operations, and financials; and (iii) the licensing of the asserted patents. *Id*. at ¶ 13. Accordingly, and on balance, this factor is at least neutral.

### iv.     Practical problems that make a trial easy, expeditious, and inexpensive weigh heavily against transfer.

Transferring this case to NDCA will create significant diseconomies. "[I]t is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of 'paramount consideration.'" *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) (quoting *In re Volkswagen*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). This Court has substantial experience with the patent-in-suit based on prior litigation—indeed, this patent has been asserted in this Court in *sixteen different cases* (Ex. 36), "which included [claim construction] hearing[s] and lengthy opinion[s] construing various claim terms" on two different occasions. *Id.* at 1344; *see also* Exs. 34, 35.

For its part, Databricks does not analyze this factor and merely concludes its neutrality "because the case is in its early stages, and there is no related co-pending litigation in this District." Mot. at 13. But this ignores the fact that it is entirely proper for the Court to "consider any judicial economy benefits which would have been apparent at the time the suit was filed," including "a district court's experience with a patent in prior litigation." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (non-precedential) (holding that "a district court's experience with a patent in prior litigation" is a "permissible consideration[]" in "ruling on a motion to transfer venue."). This Court is already familiar with the patent-in-suit, including claim construction issues. It would be inefficient for another court to start from scratch. *See In re Volkswagen*, 566 F.3d at 1351

12

("Although these cases may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources."). Accordingly, this factor weighs heavily against transfer.

## III.    CONCLUSION

Databricks has not demonstrated that the public and private factors weigh in favor of transfer. Considering all relevant factors, Databricks failed to meet its burden and this Court should deny Databricks' motion. To the extent that the Court is inclined to transfer the case, R2 requests that the Court order venue discovery to give R2 the opportunity to further substantiate that this case belongs here.

Dated: June 10, 2024                                  Respectfully submitted,

                                                  */s/ Edward R. Nelson III*
                                                  EDWARD R. NELSON III
                                                  State Bar No. 00797142
                                                  ed@nelbum.com
                                                  BRENT N. BUMGARDNER
                                                  State Bar No. 00795272
                                                  brent@nelbum.com
                                                  CHRISTOPHER G. GRANAGHAN
                                                  State Bar No. 24078585
                                                  chris@nelbum.com
                                                  JOHN P. MURPHY
                                                  State Bar No. 24056024
                                                  murphy@nelbum.com
                                                  CARDER W. BROOKS
                                                  State Bar No. 24105536
                                                  carder@nelbum.com
                                                  **NELSON BUMGARDNER CONROY PC**
                                                  3131 West 7th Street, Suite 300
                                                  Fort Worth, Texas 76107
                                                  817.377.9111

                                                  **COUNSEL FOR PLAINTIFF**
                                                  **R2 SOLUTIONS LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served via electronic mail upon all counsel of record on this the 10th day of June, 2024.

*/s/ Edward R. Nelson III*

## CERTIFICATE OF MOTION TO SEAL

Pursuant to Local Rule CV-5(a)(7), I hereby certify that an unopposed motion to seal was electronically filed with the Clerk of Court using the CM/ECF filing system on this the 10th day of June, 2024 to file under seal this Response, Exhibit B, and Exhibit 4.

*/s/ Edward R. Nelson III*