# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| R2 Solutions LLC, <br><br>    Plaintiff, <br><br> v. <br><br> Databricks, Inc., <br><br>    Defendant. | Civil Action No. 4:23-cv-01147-ALM <br><br> Jury Trial Demanded |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

In its Reply, Databricks discards the per-factor analysis required by § 1404(a) and, instead, hyper-focuses on the few facts favorable to its cause. Those facts do not alter the analysis. Three factors weigh against transfer and the remaining five are neutral. Transfer should be denied.

I. **THREE FACTORS WEIGH AGAINST TRANSFER.**

    A. **The administrative difficulties flowing from court congestion in NDCA weigh against transfer.**

Databricks cannot identify any evidence to refute the fact that this factor weighs heavily against transfer. The Fifth Circuit is clear that district courts are entitled to consider docket efficiencies in their analyses. *See* Resp. at 3; *see also In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022); *In re Clarke*, 94 F.4th 502, 510 (5th Cir. 2024); *In re Chamber of Commerce of United States*, No. 24-10463, 2024 U.S. App. LEXIS 14863, at *22 (5th Cir. June 18, 2024). The evidence of record establishes that this case will certainly proceed to trial much quicker in this Court than NDCA. *See* ECF 30 (Resp.) at 3-4 (including Exs. 1-3). This factor weighs heavily against transfer.

    B. **Texas has a strong interest in deciding the issues of this case.**

Databricks distorts case law and ignores R2's arguments in concluding that local interests favor transfer. While *In re Clarke* held that the focus of the analysis is on "the *events*—not the *parties*" (94 F.4th 502, 511 (5th Cir. 2024) (emphasis in original)), the Fifth Circuit also specifically "directed courts to consider 'the location of the injury, witnesses, and the [p]laintiff's residence' because those considerations 'are useful proxies for determining what local interests exist in each venue.'" *In re Chamber of Commerce*, 2024 U.S. App. LEXIS 14863, at *18 (quoting *In re Clarke*, 94 F.4th at 511). Taking those proxies in order, Texas and this District clearly have strong interests in deciding the issues in this case: R2 has been, and continues to be, injured by

1

Databricks' infringements emanating from Databricks' brick-and-mortar location in Plano (*see* ECF 1, ¶¶ 6-9; ECF 30 (Resp.) at 7); relevant witnesses are located here (*see* ECF 30 at 4-7, 10); and R2 resides here (*see* ECF 30 at 4-7).

Moreover, Databricks' own admissions make clear that, in addition to Databricks' direct infringements in this District, events giving rise to R2's induced infringement claim are centralized here. Databricks admits ███████████████████████████████████████████████████████████████████████████████ *See* ECF 34-1 (Taneja Decl.), ¶¶2-4. As discussed in R2's Response (and unrebutted by Databricks), ███████████████████████████████████████████████████████████████████. *See* ECF 30 (Resp.) at 6. ████████████████████████████████████. *See id*. It follows, then, that Databricks' Director of Technical Solutions and Plano hub play a critical role in its customers' infringing use of the accused instrumentalities. This factor weighs heavily against transfer.

### C. Practical problems that make a trial easy, expeditious, and inexpensive weigh heavily against transfer.

Databricks' only point is that prior cases before this Court involving the patent-in-suit involved different parties and, thus, involved "different factual issues" born of "different accused products." *See* ECF 35 (Reply) at 5. This is not only conclusory, it is false. All of the accused products and systems in the sixteen prior cases asserting the '610 patent implemented Apache Spark which, per Databricks, "is at the heart of this case." *See* ECF 35 (Reply) at 1; *R2 Solutions*

---

[1] Databricks alleges that ████████████████████████████████████████████ *See* ECF 35-1 (Taneja Decl.), ¶¶2-4. Regardless of his name in Databricks' system, Databricks does not dispute that he is Databricks' Director of Technical Solutions or that he is located in DFW.

*LLC v. American Airlines, Inc.*, No. 4-22-cv-00353, ECF 1-6 (E.D. Tex. Apr. 28, 2022); *v. CVS Health Corporation et al.*, 4-22-cv-00354, ECF 1-6 (E.D. Tex. Apr. 28, 2022); *v. Hilton Worldwide Holdings Inc. et al.*, 4-22-cv-00356, ECF 1-6 (E.D. Tex. Apr. 28, 2022); *v. Citigroup Technology, Inc.*, 4-22-cv-00357, ECF 1-10 (E.D. Tex. Apr. 28, 2022); *v. FedEx Corporate Services, Inc.*, 4-21-cv-00940, ECF 1-5 (E.D. Tex. Nov. 29, 2021); *v. State Farm Mutual Automobile Insurance Company*, 4-21-cv-00941, ECF 1-6 (E.D. Tex. Nov. 29, 2021); *v. Booking.com BV*, 4-21-cv-00942, ECF 1-6 (E.D. Tex. Nov. 29, 2021); *v. Booking.com Transport Limited*, 4-21-cv-00943, ECF 1-6 (E.D. Tex. Nov. 29, 2021); *v. Agoda Company Pte. Ltd.*, 4-21-cv-00944, ECF 1-6 (E.D. Tex. Nov. 29, 2021); *v. JPMorgan Chase & Co.*, 4-21-cv-00174, ECF 1-4 (E.D. Tex. Mar. 2, 2021); *v. The Charles Schwab Corporation*, 4-21-cv-00122, ECF 1-4 (E.D. Tex. Mar. 2, 2021); *v. Fidelity Brokerage Services LLC*, 4-21-cv-00123, ECF 1-4 (E.D. Tex. Mar. 2, 2021); *v. Deezer SA* 4-21-cv-00090, ECF 1-7 (E.D. Tex. Jan. 29, 2021); *v. Walmart Inc.* 4-21-cv-00091, ECF 1-5 (E.D. Tex. Jan. 29, 2021); *v. Target Corporation* 4-21-cv-00092, ECF 1-5 (E.D. Tex. Jan. 29, 2021); *v. Workday, Inc.* 4-21-cv-00093, ECF 1-4 (E.D. Tex. Jan. 29, 2021). The efficiencies of keeping this case in this Court cannot be overstated, and this factor weighs heavily against transfer.

II. **FIVE FACTORS ARE NEUTRAL.**[2]

    A. **The relative ease of access to sources of proof is at least neutral.**

Databricks argues in reply that this factor favors transfer because its documents are "primarily generated" in NDCA and ▬▬▬ is there. *See* Reply at 1-2. This is not enough. Where documents are created is certainly *a* consideration in the analysis; but it's not the only one, and a single custodian's residence in NDCA does not tip the scales in favor of transfer. Critically,

---

[2] Neither party disputes that two of the public factors (familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflicts of law) are neutral.

Databricks has no responses regarding its failure to identify any physical evidence in NDCA, failure to identify the location of the relevant source code,[3] and failure to acknowledge that there are relevant documents and custodians that are located in DFW (e.g., Databricks' Director of Technical Solutions). *See* ECF 30 (Resp.) at 7-9. Further, essentially all evidence in R2's possession is located in Texas. *See id*. at 8. This factor is at least neutral.

### B. The availability of compulsory process to secure the attendance of unwilling witnesses is at least neutral.

The only third-party witnesses Databricks identifies are inventors/authors of purported prior art and the inventors of the patent-in-suit. In arguing relevance of the prior artists, Databricks says "multiple parties have relied heavily on the cited prior art to challenge the asserted patent before the PTAB." Reply at 3. But on June 11, 2024, the PTAB analyzed Databricks' petition asserting this prior art and denied institution on the merits in a 51-page, reasoned decision. *See Databricks, Inc. v. R2 Solutions LLC,* No. IPR2024-00659, Paper 16 (PTAB June 11, 2024); *see also Cloudera, Inc. v. R2 Solutions LLC,* No. IPR2024-00303, Paper 11 (PTAB June 11, 2024). The PTAB offered highly-detailed analysis explaining why the alleged prior art is not reasonably likely to render any claims of the '610 patent invalid. *See id*. Witnesses familiar with such prior art are, thus, likely not relevant at all; it would be foolhardy for Databricks to allege invalidity in this case based on art the PTAB already deemed insufficient. And while R2 does not dispute the location or relevance of the inventors of the '610 patent, this alone does not tip the scales towards transfer considering that R2 identified a highly relevant third-party witness (Paul Reidy) who resides in Texas. *See* Resp. at 10. This factor is neutral.

---

[3] Databricks cites to *In re Google LLC* as purportedly signifying that the location of the source code is immaterial. *See* No. 2021-178, 2021 U.S. App. LEXIS 33789, at *3 (Fed. Cir. Nov. 15, 2021). But this case does not discuss source code at all and is inapposite.

4

### C. The cost of attendance for willing witnesses is neutral.

Databricks is wrong that "R2 provides *no evidence* showing that any Databricks employees in Texas possess relevant knowledge." ECF 35 (Reply) at 1 (emphasis in original). Indeed, R2 dedicated meaningful space in its Response, and almost two dozen exhibits, to relevant witnesses in Texas. *See* ECF 30 (Resp.) at 11. 

*See id*. While Databricks apparently thinks this does not count as evidence (*see* ECF 35 (Reply) at 3-4), Databricks does not dispute it. Indeed, Databricks merely alleges that ECF 35-1 (Taneja Decl.), ¶ 3. But whether they design and develop the accused instrumentalities, or instead teach Databricks' customers how to actually use them, it is undisputed that the employees have highly relevant knowledge regarding the accused instrumentalities and how they function.

As to R2's witnesses, Databricks claims that "current executives of R2 and its parent entity" are in NDCA. ECF 35 (Reply) at 2. This is misleading.[4] The principal executive of R2 is its president, Craig Yudell. Mr. Yudell is responsible for R2's day-to-day operations, including its licensing practices—all of which he does "extensively from [his] residence in Austin, TX." *See* ECF 30-2 (Yudell Decl.). This factor is at least neutral.

### III. CONCLUSION

Databricks has failed to demonstrate that NDCA is clearly more convenient than EDTX, and this Court should deny Databricks' motion.

---

[4] Contrary to Databricks' unsubstantiated assertion, Kirsten Hoover is not an officer of R2. And though Marc Booth is an officer of R2, he is not involved with R2's day-to-day operations.

5

Dated: June 28, 2024

Respectfully submitted,

*/s/ Edward R. Nelson III*
EDWARD R. NELSON III
State Bar No. 00797142
ed@nelbum.com
BRENT N. BUMGARDNER
State Bar No. 00795272
brent@nelbum.com
CHRISTOPHER G. GRANAGHAN
State Bar No. 24078585
chris@nelbum.com
JOHN P. MURPHY
State Bar No. 24056024
murphy@nelbum.com
CARDER W. BROOKS
State Bar No. 24105536
carder@nelbum.com
**NELSON BUMGARDNER CONROY PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111

**COUNSEL FOR PLAINTIFF
R2 SOLUTIONS LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served via electronic mail upon all counsel of record on this the 28th day of June, 2024.

*/s/ Edward R. Nelson III*

## CERTIFICATE OF MOTION TO SEAL

Pursuant to Local Rule CV-5(a)(7), I hereby certify that an unopposed motion to seal was electronically filed with the Clerk of Court using the CM/ECF filing system on this the 28th day of June, 2024 to file under seal this Sur-Reply.

*/s/ Edward R. Nelson III*