# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| R2 SOLUTIONS LLC, § <br> *Plaintiff,* § <br> v. § <br> § <br> DATABRICKS, INC., § <br> *Defendant.* § <br> § <br> § | Civil Action No. 4:23-CV-1147 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the parties' Joint Motion for Entry of Disputed Protective Order (Dkt. #52). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part**.

## BACKGROUND

This case arises out of an alleged patent infringement by Defendant on U.S. Patent No. 8,190,610 (the "'610 Patent"), disclosing a method for improving MapReduce programming methodology by independently processing map data on at least two related but possibly heterogenous datasets (Dkt. #1 at p. 1; '610 Patent, Abstract). The parties agreed on all aspects of the Protective Order but one provision regarding the tools that will be available on the source code review computer (Dkt. #52 at p. 1). Specifically, the parties dispute whether Plaintiff should not only be able to review source code in native electronic format but also compile and execute the code (Dkt. #52 at p. 4).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

or expense." FED. R. CIV. P. 26(c)(1). The burden is upon the party seeking the protective order "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (internal quotation marks and citation omitted). Therefore, a protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Laundry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for protective order because it is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

## ANALYSIS

As an initial matter, the Court grants all mutually agreed-upon provisions in the Protective Order (*See* Dkt. #52-1; Dkt. #52-2). As to the disputed provision regarding source code compilation and execution (*See, e.g.*, Dkt. #52-1 at p. 9, ¶ 12(g)), the Court finds that Defendant need not provide software to compile and execute source code to meet its discovery obligation—source code in its electronic native format suffices. *See GeoTag, Inc. v. Frontier Comm'ns Corp.*, No. 2:10-CV-569, 2013 WL 12134192, at *4 (E.D. Tex. Jan. 8, 2013) ("Generally, a party need not produce source code in any other format than electronic native form.").

Plaintiff contends that the Court should order Defendant to provide software capable of executing source code because compiling and executing the code would streamline Plaintiff's review process (Dkt. #52 at p. 3). There is no risk in doing so, according to Plaintiff, because "any compiled/executed code would be confined to the stand-alone, non-networked computer just like

2

all of the un-compiled source code" (Dkt. #52 at p. 3). That Defendant has offered a customer-facing version of its platform to Plaintiff is insignificant because it does not allow Plaintiff to determine which code segments are responsible for a particular feature (Dkt. #52 at p. 4).

In response, Defendant first asserts that it has no obligation to simplify Plaintiff's source code review (Dkt. #52 at p. 5) (citing *Gree, Inc. v. Supercell Oy.*, No. 2:19-CV-311-JRG-RSP, ECF No. 134 at 1–3 (E.D. Tex. Dec. 17, 2020)) (rejecting a request for the producing party to "build[] a game environment" for an executable file to run correctly). Defendant further contends that the Protective Order does not permit the loading of mock datasets for processing onto the non-networked review computer (Dkt. #52 at p. 6). Even if the Protective Order did, Defendant presents two concerns that allegedly warrant denying Plaintiff's request to run executable code. First, executing the code would require producing "an incredibly voluminous amount of source code, which would span features, functionalities and other components of the Databricks platform that are completely irrelevant to any issue in this litigation" (Dkt. #52 at p. 6). Second, executing the code as it operates in the ordinary course of business "would require the computer to be connected to a larger environment, thereby creating a security risk" (Dkt. #52 at p. 7).

The Court agrees with Defendant. While reviewing source code in its native electronic format is less convenient for Plaintiff, the burden of producing voluminous, irrelevant code coupled with the security risk in executing the code in an atypical network environment would unduly prejudice Defendant. This is especially true given that Defendant has offered to exceed its discovery obligations by providing a customer-facing application (Dkt. #52 at p. 7). This, of course, does not demonstrate source code operation to the same degree that a code-executing environment would, but it provides more insight to Plaintiff than the rules require without incurring a significant

burden or security threat to Defendant. Requiring more would demand further investment by Defendant with little guarantee that any additional information Plaintiff obtained would uniquely affect Plaintiff's infringement theories in a way that native electronic code could not. In essence, the amount of information available for Plaintiff to review is the same irrespective of the source code's executability; under Plaintiff's preferred approach, however, Defendant would incur risk and expenses to reduce the effort necessary for Plaintiff to substantiate its infringement theory. Furthermore, the Protective Order does not even allow mock-data sets to be used (Dkt. #52 at p. 6). That is, even if Plaintiff had access to executable code, any effort to replicate the accused functionality as it operates in the real world would be futile because code without data is simply a set of instructions with nothing to instruct. Consequently, the Court adopts the mutually agreed-upon provisions of the Protective Order submitted by the parties and Defendant's position on the disputed provision (Dkt. # 52-2 at p. 9, ¶ 12(g)).

## CONCLUSION

It is therefore **ORDERED** that the parties' Joint Motion for Entry of Disputed Protective Order (Dkt. #52) is hereby **GRANTED in part**. The Court will separately enter a Protective Order in this case.

**IT IS SO ORDERED.**

**SIGNED this 12th day of November, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE