# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| R2 SOLUTIONS LLC, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | Civil Action No. 4:23-CV-1147 |
| § | | Judge Mazzant |
| DATABRICKS INC., § | | |
| *Defendant.* § | | |

## MEMORANDUM OPINION AND ORDER

Pending before this Court is Defendant Databricks Inc.'s Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Dkt. #20). Having considered the Motion and relevant pleadings, the Court finds that the Motion should be **DENIED**.

### BACKGROUND

On December 28, 2023, Plaintiff filed a Complaint alleging that Defendant infringed U.S. Patent No. 8,190,610 ("the '610 Patent") (Dkt. #1 at p. 12). The '610 Patent, entitled "MapReduce for Distributed Database Processing," issued to Plaintiff on May 29, 2012 (Dkt. #1 ¶ 13). Plaintiff alleges in its Complaint that Defendant knew of and directly or indirectly infringed on the '610 Patent (Dkt. #1 ¶ 43).

On May 21, 2024, Defendant filed its Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Dkt. #20). In its Motion, Defendant claimed that the Northern District of California ("NDCA") is a more convenient venue to litigate this case than this district because the patented technology was designed and developed in NDCA, the material witnesses are in NDCA, and Plaintiff has multiple connections to California (Dkt. #20 at

pp. 9–10). On June 10, 2024, Plaintiff filed a Response in Opposition to Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. #30). On June 25, 2024, Defendant filed its Reply (Dkt. #36). On June 28, 2024, Plaintiff filed a Sur-Reply (Dkt. #38). On September 4, 2024, the Court subsequently held a hearing regarding the Motions (*See* Dkt. #49). On November 8, 2024, Defendant filed a Notice of Supplemental Evidence in support of its Motion (Dkt. #58).

## LEGAL STANDARDS

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404 "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen*, 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

In a patent case, a motion to transfer under 28 U.S.C. § 1404(a) is governed by the law of the regional circuit, in this case the Fifth Circuit. *In re TS Tech U.S. Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has

held that the determination of convenience turns on eight factors, where "[n]o factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The four private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The four public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*; *TikTok*, 85 F.4th at 358. The plaintiff's choice of venue is generally not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting

*Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). "[A] district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318). A district court also "abuses its discretion by denying a motion to transfer when 'virtually all of the events and witnesses regarding the case . . . are in the transferee forum.'" *Id.* at 366 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013)).

## ANALYSIS

The threshold inquiry on a § 1404(a) motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d 201 at 203. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, the Court finds—and the parties do not dispute—that venue would have been proper in NDCA. Indeed, Defendant is headquartered in Northern California, and the accused instrumentalities were designed and developed there (Dkt. #20 at p. 11).

The Court's decision to deny Defendant's motion turns on a multi-factor transfer analysis. After reviewing each factor, the Court has determined that two favor transfer, two disfavor transfer, and the remaining are neutral. The Court is apprised of this circuit's approach to avoid a mere tallying of the factors in resolving this dispute. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."); *see also SQIP, LLC v. Cambria Co., LLC*, No. 4:23-CV-202-SDJ, 2024

4

WL 1346498, at *2 (E.D. Tex. Mar. 29, 2024) ("[C]ourts are not to merely tally the factors on each side."). To that end, the Court considered not only each factor's outcome but also its weight to determine whether the actual convenience of NDCA as a forum is "clearly more convenient" than that of this district. *In re Chamber of Commerce of United States of Am.*, 105 F.4th 297, 310 (5th Cir. 2024) (quoting *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024)) (establishing that a venue is "clearly more convenient" when "the marginal gain in convenience will be *significant*" and "evidence makes it plainly obvious . . . that those marginal gains will *actually* materialize in the transferee venue."). While the Court acknowledges that this case represents a close call, transferring such a case to NDCA would yield minor, if any, gains at best, rather than the *significant* gain required to *actually* materialize in NDCA to warrant transfer. *See id.* Thus, the Court finds that the motion should be **DENIED** and explains its rationale as to each factor in turn below.

**I.      The Private Interest Factors**

   **A.      The "Relative Ease of Access to Sources of Proof" Factor Is Neutral**

Defendant argues that this factor favors transfer because the allegedly relevant documents relating to the preliminary research, testing, design, and implementation of the accused product—Apache Spark—were "generated and are currently maintained in the NDCA" (Dkt. #20 at p. 8). Further, key document custodians reside in NDCA, including Reynold Xin, Defendant's co-founder and Chief Architect (Dkt. #20 at p. 8). Although Defendant maintains thirteen employees in the Plano office, which is located in the Sherman division of this District, Defendant claims that these employees are irrelevant because they work in customer support, not in research or development (Dkt. #20 at p. 8). Defendant further asserts that Plaintiff's relevant documents and custodians are also "likely maintained" in California (Dkt. #30 at p. 9).

Plaintiff does not dispute that relevant documents are primarily generated and stored in NDCA (Dkt. #30 at pp. 7–8). Instead, Plaintiff emphasizes that "where documents are 'primarily generated' has no bearing on where those documents are accessible from" (Dkt. #30 at p. 8). Plaintiff also points out that "substantially all (if not all) of [its] documents are presently located on servers at the offices of its outside counsel in Fort Worth" (Dkt. #30 at p. 9).

This factor is neutral because the bulk of the relevant evidence is equally accessible in either venue. "[W]hen 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis." *Tik Tok*, 85 F.4th at 358 (citing *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)). Here, Defendant admits that "the majority of documents in this case are . . . electronically maintained" (Dkt. #49 at p. 19; Dkt. #49 at p. 40). Defendant also claims that relevant evidence is stored "either on the cloud or on individual servers," and that there "might be" evidence stored in "notebooks" in NDCA. Yet, the mere possibility that relevant physical evidence *might be* stored in NDCA cannot outweigh the fact that the overwhelming bulk of evidence is digital and, therefore, as accessible in this district as it is in NDCA (Dkt. #49 at p. 46). Thus, this factor is neutral.

### B. The "Availability of Compulsory Process to Secure Witness Attendance" Factor Is Neutral

Defendant argues that this factor favors transfer for three reasons. First, multiple non-party witnesses—namely, two of three inventors listed in the asserted patent—reside in NDCA and, therefore, are subject to the court's subpoena powers (Dkt. #20 at p. 9). Second, those powers extend to two witnesses knowledgeable about the asserted patent's foundational technology (Dkt. #20 at p. 10). Third, those powers also extend to six individuals knowledgeable about relevant prior art systems (Dkt. #20 at p. 10).

Plaintiff contends that this factor should carry "no weight" because Defendant has not shown that any of the third-party witnesses would be unwilling to testify (Dkt. #30 at p. 9). Plaintiff also contends that Defendant can only speculate as to what constitutes "relevant prior art" because invalidity contentions have not yet been served in this case (Dkt. #30 at p. 9).[1] In Plaintiff's view, allowing Defendant to "consider prior art witnesses without requiring [Defendant] to actually use the references invites substantial gamesmanship in identifying references to inflate the number of relevant prior art witnesses" (Dkt. #30 at pp. 13–14) (citing *Lionra Tech. Limited v. Apple Inc.*, No. W-22-CV-351-ADA, slip. op. at 39 (W.D. Tex. May 9, 2023)). Plaintiff further clarifies that compulsory process is available in this district but not NDCA for at least one relevant third-party witness: Paul Reidy, a Texas resident who negotiated licensing agreements for the patent-in-suit and, consequently, has information relevant to Plaintiff's damages case (Dkt. #30 at p. 10).

As to the Plaintiff's proposed witnesses with damages-related knowledge, Defendant contends that any convenience to them must be weighed against the convenience of the Plaintiff's employees based in NDCA with the same knowledge (Dkt. #35 at p. 3). Defendant then argues that although less weight should be afforded to this factor if the witnesses are not shown to be unwilling, "no case law suggests that can be entirely discounted where proof of unwillingness is lacking" (Dkt. #35 at p. 3). As to Plaintiff's allegations that Defendant can only speculate about what constitutes prior art at this stage of litigation, Defendant explains that multiple parties relied on some of the cited prior art references in IPRs before the PTAB, and others were cited by the asserted patent itself (Dkt. #35 at p. 3). Accordingly, Defendant claims that the prior art can

---

[1] The Court recognizes that this deadline has since passed, but the Court evaluates the motion based on the facts existing at the time the parties briefed the issue. *See Abstrax, Inc. v. Hewlett-Packard Co.*, No. 2:14-CV-158-JRG, 2014 WL 5677834, at *5 (E.D. Tex. Nov. 4, 2014) (quoting *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013)) ("Motions to transfer venue are to be decided based on the situation which existed when suit was instituted.").

7

appropriately be considered relevant even though the parties have not yet served invalidity contentions (Dkt. #35 at p. 3).

This factor is neutral. Both parties dispute the appropriate effect and weight that unwilling witnesses should have in this case, but neither party asserts that any non-party witness is unwilling to attend trial (*See* Dkt. #30 at pp. 2, 9). Under these circumstances, the Federal Circuit maintains that "we cannot say that the district court commit[s] a clear abuse of discretion in holding that this factor is neutral when petitioners have failed to identify any unwilling non-party witness," as is the case here. *TikTok*, 85 F.4th at 361. As for the factor's weight, Plaintiff overstates the effect of unwillingness by claiming that the factor should carry "no weight" when no witness has demonstrated unwillingness to attend trial (Dkt. #30 at p. 13). More precisely, however, the Fifth Circuit states that, in such cases, this factor should only "receive *less* weight" in the analysis (Dkt. #35 at p. 7) (citing *Planned Parenthood*, 52 F.4th at 630–31) (emphasis added).

Separately, on the question of whether Defendant can appropriately determine what prior art—and, by extension, what inventor—is relevant, Plaintiff aptly points out that such determinations are premature before the invalidity contentions deadline (Dkt. #35 at p. 3). Defendant claims that IPRs can establish relevant prior art, but those petitions were drafted in a *different* case with *different* parties asserting *different* claims (Dkt. #35 at p. 3). An IPR's citation to prior art is no substitute for an independent analysis of the prior art's relevance to this case; an IPR can include irrelevant prior art, and it can equally omit art that Defendant determines is relevant while preparing invalidity contentions. Thus, the Court finds that this factor is neutral.

### C.   The "Cost of Attendance for Willing Witnesses" Factor Favors Transfer

Defendant argues that this factor favors transfer because several relevant individuals are based in NDCA. For example, Reynold Xin, a key witness with knowledge about the accused

product's design and development, resides in NDCA (Dkt. #20 at p. 11). So too does the Defendant's engineering team that designed and developed the accused instrumentalities (Dkt. #20 at p. 11). Thus, Defendant argues that NDCA is the more convenient venue for multiple, highly relevant party witnesses (Dkt. #20 at p. 11).

Conversely, Defendant asserts that this district is the wrong venue because none of Defendant's employees who worked on the accused product, nor custodians who created and maintain relevant documents, reside here (Dkt. #20 at p. 12). Some of the Defendant's thirteen Plano employees have titles that "denote engineering work" (e.g., Technical Solutions Engineers), but they support customers and allegedly did not work on the accused product (Dkt. #20 at p. 12). As for Plaintiff's witnesses, Defendant contends that they are also based in NDCA—particularly Eric Lucas, the Plaintiff's president, who knows about the asserted patent's sales and value (Dkt. #20 at p. 13). In sum, Defendant believes that the cost of trial attendance for willing witnesses on both sides would be lower in NDCA than in this district.

In response, Plaintiff argues that this factor is "at least neutral" because multiple relevant witnesses that could testify on behalf of either party reside in this district (Dkt. #30 at p. 11). As to the Defendant's witnesses, Plaintiff asserts that Defendants can only speculate that Reynold Xin, Defendant's co-founder, will attend trial (Dkt. #30 at p. 11). Plaintiff further asserts that Defendant's Director of Technical Solutions, a potential witness who leads the accused product's solutions team, lives in Texas, not in NDCA (Dkt. #30 at p. 11). Moreover, Plaintiff claims that over one hundred of Defendant's employees are "located in the DFW area and this District," including twenty employees in Texas with knowledge of the accused products, each of whom "touts expertise" in the accused products or "holds a title indicating expertise in that area" (Dkt.

9

#30 at p. 11). As to the Plaintiff's witnesses, Plaintiff states that its president is willing to testify at trial and knows about Plaintiff's patent portfolio, company structure and financials, and asserted patent licensing (Dkt. #30 at p. 11).

This factor favors transfer. As Defendant notes, relevant potential witnesses reside in NDCA, including Defendant's Chief Architect of the accused product and engineers aiding with design and development (Dkt. #20 at p. 11). Plaintiff claims that witnesses for both parties reside in this district, but that raises two issues. First, the only witness in this district that the Court can be reasonably certain has relevant technical information is Defendant's Director of Technical Solutions (Dkt. #30 at p. 11). Plaintiff claims that twenty other Texas employees have relevant technical knowledge, but Defendant alleges that each employee named in that list focused on customer support and did not work on the accused product (Dkt. #35 at p. 4). Second, Plaintiff identifies a Director of Technical Solutions as a potential witness, but it is unclear whether this witness knows as much about the accused product's research, design, and development as the product's Chief Architect. The Director may, in some sense, have technical knowledge because he understands the accused product's implementation, customer application integration, and sales, but those are aspects of the product one degree removed from the focus of patent infringement (i.e., how the accused product's design and function compare to the asserted claims). Thus, the Court finds that this factor favors transfer.

### D. "All Other Practical Problems that Make Trial of a Case Expeditious" Disfavor Transfer

Defendant believes that this factor is neutral because this case "is in its early stages and no related co-pending litigation [exists] in this District" (Dkt. #20 at p. 13). Defendant also believes

that transferring this case to NDCA will generally minimize costs and other practical, travel-related logistics, as both parties' witnesses are in or near NDCA (Dkt. #20 at p. 13).

Plaintiff believes that this factor weighs against transfer because it would "create significant diseconomies" by stripping this case from this Court—one that has experience with this patent based on sixteen prior cases, two of which involved "claim construction hearing[s] and lengthy opinions" related to the same asserted patent (Dkt. #30 at p. 12). To avoid any inefficiency associated with forcing another court to "start from scratch," Plaintiff argues that this case should stay in this district (Dkt. #30 at p. 12).

In Defendant's view, while cases involving the same asserted patent have come before this Court, those cases involved different parties, claims, and factual issues (Dkt. #35 at p. 5). Consequently, Defendant claims that Plaintiff overstates the judicial inefficiency that transferring this case to NDCA would create (Dkt. #35 at p. 5).

This factor weighs against transfer, but only slightly. Both parties acknowledge that this Court has handled prior litigation involving the same asserted patent, including a *Markman* hearing (*See, e.g.*, Dkt. #49 at p. 17). The parties differ, however, on whether the Court's prior experience is significant enough to warrant keeping this case for fear of imposing inefficiency on an NDCA court (*See, e.g.*, Dkt. #49 at p. 18). This Court's experience is a "permissible consideration[]" in "ruling on a motion to transfer venue," but it does not carry much weight. *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). Defendant cites a Federal Circuit case stating that this alone is "too tenuous a reason to support a denial of transfer," but the district court in that case used a "previous claim construction in a case that settled more than five years before the filing of th[e] lawsuit," whereas, here, the earliest claim construction order issued on January 4, 2022 (Dkt. #30,

11

Exhibit 36; Dkt. #30, Exhibit 37). *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011). In the interest of maximizing judicial economy, however limited that may be, the Court is compelled to leverage its past experience in handling this litigation and finds that this factor weighs against transfer.

II. **The Public Interest Factors**

   E. **"Administrative Difficulties Flowing from Court Congestion" Disfavor Transfer**

Defendant argues that this factor is neutral because the record does not indicate a basis to comparatively evaluate court efficiencies (Dkt. #20 at p. 13). Thus, according to the Defendant, any such comparison necessarily requires speculation (Dkt. #20 at p. 13). Plaintiff contends that this factor weighs against transfer because NDCA's average time to trial is "over sixteen months longer" that that of this district, citing Federal Court Management Statistics purporting to show this case "will almost certainly proceed to trial much quicker in this Court than NDCA" (Dkt. #30 at pp. 3–4) ("[s]tatistics show that the median time to trial in all civil cases in 21.4 months in EDTX and 48.9 months in NDCA."). Defendant cautions against relying merely on statistics just as the Federal Circuit has because "case-disposition statistics may not always tell the whole story" (Dkt. #35 at p. 5) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)).[2]

The Court finds that this factor weighs against transfer. Plaintiff attempts to substantiate its court congestion argument with statistics, but they are too general to be helpful (*See* Dkt. #30 at pp. 7–8). Rather than compare NDCA with the Court's docket specifically, for example, Plaintiff compares NDCA with the Eastern District of Texas docket generally (Dkt. #30 at p. 8). In any

---

[2] Defendant also cites to *In re Adobe Inc.* to argue that "solely" using statistics is improper, but that does not fairly describe what Plaintiff does in this case (Dkt. #35 at p. 9). 823 F. App'x 929, 932 (Fed. Cir. 2020). Here, Plaintiff does not state or even imply that this is "solely" a statistical issue; it merely uses statistics as a means to support its point that this district will resolve the case faster than NDCA.

case, the Federal Circuit makes clear that "to the extent docket efficiency can be reliably estimated, the district court is better placed to do so than this court." *Planned Parenthood*, 52 F.4th at 631. The Court's docket is notoriously busy, but by all indications, this case is proceeding to trial at the pace set out in the Scheduling Order and will likely conclude faster in this Court than in NDCA (Dkt. #28 at pp. 1–5) (setting the final pretrial conference for July 21, 2025, approximately eight months from now). Thus, this factor weighs against transfer.

### F. The "Local Interest in Having Localized Interests Decided at Home" Factor Favors Transfer

This factor favors transfer. Defendant rightly points out that this factor focuses on the location of the events giving rise to the suit, not the parties' connection to each forum. *See, e.g.*, *TikTok*, 85 F.4th at 364 ("We look not to 'the parties' significant connection to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit.") (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022)). Plaintiff alleges patent infringement, which imposes liability on a person or company that "makes, uses, offers to sell, or sells any patented invention, within the United States . . . ." 35 U.S.C. § 271(a). Here, Defendant designed and developed the accused product in the NDCA, which constitutes "making" and potentially "using" the accused product in an infringing way (Dkt. #20 at p. 14). By contrast, Plaintiff argues that this district has a stronger local interest because Defendant's infringing acts (i.e., providing an internet-based accused product used in an infringing manner by Texas customers) occurred in this district. While this creates a local interest in this district, it is outweighed by the NDCA's more significant interest stemming from the accused product's research, design, and development in Sunnyvale, California (*See* Dkt. #49 at pp. 9–10).

### G. The Remaining Factors are Neutral

The Court agrees that the factors uncontested by the parties are neutral: (1) the familiarity of the forum with the governing law; and (2) the avoidance of conflict of laws issues (*See* Dkt. #20 at p. 19; Dkt. #30 at p. 7).

After reviewing each factor and accounting for its weight, the Court finds that Defendant has not met its burden to show that NDCA is "clearly more convenient" than this district. Accordingly, the Court will respect Plaintiff's choice of venue and **DENY** the Motion.

### CONCLUSION

It is therefore **ORDERED** that Databricks, Inc.'s Motion to Transfer Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Dkt. #20) is hereby **DENIED**.

**SIGNED this 2nd day of December, 2024.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE