# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| R2 SOLUTIONS LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>DATABRICKS, INC.,<br><br>              Defendant. | Civil Action No. 4:23-cv-01147-ALM<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT DATABRICKS, INC.'S MOTION TO COMPEL PLAINTIFF R2 SOLUTIONS, LLC TO PRODUCE FINANCIAL DOCUMENTS

Defendant Databricks, Inc. ("Databricks") respectfully moves to compel Plaintiff R2 Solutions, LLC ("R2") to produce its 2020-2024 financial statements. These financial statements are highly relevant to R2's claim for damages in the form of a reasonable royalty. Such a claim requires the parties and this Court to consider the specific parties to the hypothetical negotiation, including their financial conditions and relative bargaining positions—information reflected in R2's financial statements. Moreover, there is minimal burden on R2 to produce just five financial statements, and R2's unilateral belief that such financial statements are not relevant to damages—based on its unproven contention regarding the appropriate hypothetical negotiation date, and R2's unfounded argument that the financial condition of a party to the hypothetical negotiation is irrelevant—should be rejected. Given the inadequacy of R2's objections, and the relevance and proportionality of Databricks' requests, Databricks respectfully asks the Court to compel R2 to produce its 2020-2024 financial statements.

I.  **BACKGROUND**

In this case, R2 accuses of infringement Databricks' products that utilize Apache Spark.[1] (Dkt. 1 (Complaint), ¶ 7.). Apache Spark is an open-source software project, which continues to be actively developed, with new features and new releases multiple times per year. (*See* https://spark.apache.org/news/index.html.)   Important to this motion, R2's infringement contentions repeatedly identifies as part of the allegedly infringing functionality the source code "SortMergeJoinEvaluatorFactory" (*see, e.g.*, Kaempf Decl., Ex. A at e.g., 40, 50, 58-59, 61-64,

---

[1] The parties have stipulated that "for the purposes of this litigation, the open-source Apache Spark source code files identified in R2's First Supplemental Infringement Contentions is representative of Databricks' corresponding internal Apache Spark source code files in the Databricks Data Intelligence Platform." (Dkt. 73.)

67)—which was introduced no earlier than July 2023. In other words, R2's infringement contentions indicate that the earliest possible date of alleged infringement is July 2023.

R2 seeks an unspecified amount of damages in the form of a reasonable royalty. (R2's Resp. to Interrog. No. 14.) While R2 acknowledges that the "reasonable royalty may be determined by a variety of factors, such as those set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970)" (*see id*.), it has not provided the factual bases underlying its *Georgia-Pacific* analysis. Instead, R2's interrogatory responses merely indicate that "Plaintiff requires discovery to determine the full extent of the Defendant's infringements, to weigh the various factors, and to compute the appropriate amount of the reasonable royalties for infringement of the asserted patent," and that "Plaintiff's damages expert will opine on the factors relating to reasonable royalties." (*Id.* at 32-35 (R2's Resp. to Interrog. Nos. 14, 15, seeking the factual basis of R2's damages claim and description of financial statements).) Relevant to this motion, Databricks also specifically requested R2's financial statements for purposes of the damages analysis, which R2 has refused to provide.

## II.     **LEGAL STANDARD**

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" including information that may not ultimately be admissive as evidence. Fed. R. Civ. P. 26(b)(1). The Local Rules of the Eastern District of Texas specifically provide for example, that any "information that is likely to have an influence on or affect the outcome of a claim or defense" or that "deserves to be considered in the preparation, evaluation, or trial of a claim or defense" is discoverable under this District's view of discovery. E.D. Tex. L. Civ. R. 26(d); *see Wapp Tech Ltd. P'ship v. Wells Fargo Bank, N.A.*, No. 4:21-CV-00671, 2022 WL 2784468, at *1 (E.D. Tex. June 28, 2022) (J. Mazzant). If the

2

moving party shows that requested materials are properly within this scope of discovery, then the party opposing discovery bears the burden of showing "why the discovery is irrelevant, overly broad, unduly burdensome or oppressive." *Id.*

Where, as here, a patentee-plaintiff seeks damages in the form of a reasonable royalty, the appropriate royalty may be determined by considering a hypothetical negotiation. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). The hypothetical negotiation analysis "must begin with the proper parties in mind." *Opticurrent, LLC v. Power Integrations, Inc*., No. 17-CV-03597-WHO, 2018 WL 6727826, at *9 (N.D. Cal. Dec. 21, 2018) (citing *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *see also Daedalus Blue LLC v. SZ DJI Tech. Co.*, No. W-20-CV-00073-ADA, 2022 WL 831619, at *8 (W.D. Tex. Feb. 24, 2022) (striking damages expert report that "analyzed a negotiation that involved the wrong parties entirely").

Courts must consider the specific parties, including the parties' "relative bargaining strength" and "any other economic factor that normally prudent businessmen would, under similar circumstances, take into consideration in negotiating the hypothetical license." *Georgia-Pac.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971), *cert. dismissed*, 404 U.S. 870 (1971).

### III.   ARGUMENT

R2's financial statements are relevant to damages and specifically, R2's claim for a reasonable royalty, and they thus must be produced. As courts have held, the hypothetical negotiation analysis must consider the specific parties in mind, including their relevant bargaining strength and any other economic factors that would affect negotiating the hypothetical license. *See Georgia-Pac.*, 318 F. Supp. at 1121. R2's financial statements will provide such information. They will contain information probative of R2's relative bargaining strength, including its financial

condition, its financial obligations, and the relative benefit it would gain from different royalty amounts proposed during any hypothetical negotiation. Such information bears on R2's bargaining power at the hypothetical negotiation table. Databricks is entitled to discover this basic financial information, which any "normally prudent businessmen would, under similar circumstances, take into consideration in negotiating the hypothetical license." *See id.*

Moreover, Databricks' request for financial statements is proportional to the needs of this case. Indeed, Databricks has limited its request to just the five financial statements for the time period during which R2 owned the patent (2020 through 2024). R2 has not, and cannot, identify any legitimate burden associated with Databricks' limited discovery request.

R2's only argument for refusing to produce these financial statements is that they are allegedly not relevant. Specifically, R2 claims that they are not relevant because, first, R2 is not a party to the hypothetical negotiation, and second, even if it were a party to the hypothetical negotiation, its statements are not relevant because it does not sell products or services. Neither claim has merit.

*First*, R2's claim that it is not a party to the hypothetical negotiation is disputed and unproven, and does not excuse R2 from complying with its discovery obligations. "[T]he date of the hypothetical negotiation is the date that the infringement began." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75-76 (Fed. Cir. 2012); *see also Touchstream Techs., Inc. v. Charter Commc'ns, Inc.*, No. 2:23-CV-00059-JRG-RSP, 2024 WL 5247151, at *3 (E.D. Tex. Dec. 30, 2024) (noting and agreeing with plaintiff's argument that the hypothetical negotiation is deemed to "occur at 'the start of infringement, *i.e.*, when both a patent had issued and accused products were sold.'"). Here, R2 argues that the first alleged infringement occurred in 2015, at a time when another entity owned the asserted patent—but such an argument belies R2's own

contentions, which fail to provide any allegation regarding the date of first infringement, let alone prove infringement in 2015.  For example, throughout its supplemental infringement contentions, R2 cites to code called "SortMergeJoinEvaluatorFactory," which was introduced no earlier than July 2023.  R2 has not explained why or how its infringement theory does not require the cited "SortMergeJoinEvaluatorFactory" code.  In other words, on their face, R2's own contentions indicate that the earliest date of infringement would be no earlier than July 2023.  And, if R2 continues to fail to prove infringement at any time period before it acquired the patent (in 2020), then R2 would be the party to the hypothetical negotiation.[2]  Accordingly, R2's financial statements for the years 2020-2024 are relevant.

Second, R2 argues that even if it is a party to the hypothetical negotiation, its financial statements are irrelevant.  This, too, should be rejected.  As explained above, R2's financial statements provide basic financial information that shed light on its "relative bargaining strength" and "other economic factor[s] that normally prudent businessmen would, under similar circumstances, take into consideration in negotiating the hypothetical license." *Georgia-Pac.*, 318 F. Supp. at 1120.  Such information regarding a party's bargaining power affects the outcome of the hypothetical negotiation.  For example, a party in a weak financial condition at the time of the negotiation may be motivated to accept a lower royalty amount in order to get a cash infusion sooner.  Or, as another example, if acquisition of the asserted patent was a significant investment by the party relative to its other assets, it might be motivated to seek higher licensing values.

---

[2] Moreover, even if R2 proves infringement at an earlier date (it has not), the Book of Wisdom doctrine allows consideration of financial information dated after the hypothetical negotiation. *See, e.g.*, *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2009 WL 4723733, at *4 (E.D. Tex. Sept. 8, 2009) ("[T]he Federal Circuit does not automatically preclude the consideration of actual purchase prices and costs that were paid after the date of such a 'hypothetical' negotiation.").

5

Indeed, information regarding a party's bargaining strength is specifically contemplated in multiple *Georgia-Pacific* factors, including the fifth factor regarding "[t]he commercial relationship between the licensor and licensee," and the twelfth factor regarding "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions."  These factors allow for consideration of the financial condition of a party, including the revenue, costs, and profits of its business.  Even if R2 is not a direct competitor to Databricks and does not sell products that compete with those of Databricks, this financial information is probative of the relationship R2 (as the hypothetical licensor) would have with Databricks (as the hypothetical licensee), and the portion of profit it would expect from the hypothetical license. As this information is contained in R2's financial statements, Databricks should be afforded the opportunity to review it.

## IV.    CONCLUSION

Accordingly, Databricks respectfully requests that the Court grant this motion and compel R2 to provide its 2020-2024 financial statements.[3]

---

[3] In the alternative, Databricks requests R2's two financial statements for years 2023-2024, which is the time period following the introduction of the code cited in R2's contentions. *See supra* at 5.

Dated: February 10, 2025                              Respectfully submitted,

                                                                                                                          */s/ Jessica M. Kaempf*  
Michael J. Sacksteder  
CA Bar No. 191605 (Admitted E.D. Texas)  
Email: msacksteder@fenwick.com  
Gregory Sefian  
CA Bar No. 341802 (Admitted *Pro Hac Vice*)  
Email: gsefian@fenwick.com  
S. Emma Lee  
CA Bar No. 344074 (Admitted *Pro Hac Vice*)  
Email: emma.lee@fenwick.com  
**FENWICK & WEST LLP**  
555 California Street, 12th Floor  
San Francisco, CA 94104  
Telephone:     415.875.2300  
Facsimile:     415.281.1350  

Dargaye Churnet  
CA Bar No. 303659 (Admitted E.D. Texas)  
Email: dchurnet@fenwick.com  
**FENWICK & WEST LLP**  
730 Arizona Ave, 1st Floor  
Santa Monica, CA 90401  
Telephone:     310.434.5400  
Facsimile:     650.938.5200  

Vigen Salmastlian  
CA Bar No. 276846 (Admitted E.D. Texas)  
Email: vsalmastlian@fenwick.com  
**FENWICK & WEST LLP**  
801 California Street,  
Mountain View, CA 94041  
Telephone:     650.988.8500  
Facsimile:     650.938.5200

Jessica M. Kaempf
WA Bar No. 51666 (Admitted E.D. Texas)
Email: jkaempf@fenwick.com
Jonathan G. Tamimi
WA Bar No. 54858 (Admitted E.D. Texas)
Email: jtamimi@fenwick.com
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:     206.389.4510
Facsimile:     206.389.4511

*Attorneys for Defendant*
*Databricks Inc.*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Defendant has complied with the meet and confer requirements in L.R. 7(h) and FRCP 37(a)(1) regarding this opposed motion. Counsel for both parties met and conferred as required. Counsel for both parties participated in a telephonic hearing with the Court, at which the Court authorized this filing.

*/s/ Jessica M. Kaempf*
Jessica M. Kaempf

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2025, I electronically filed the foregoing Motion to Compel with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jessica M. Kaempf*
Jessica M. Kaempf

9