## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| R2 Solutions LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Databricks, Inc.,<br><br>    Defendant. | Civil Action No. 4:23-cv-01147-ALM<br><br>Jury Trial Demanded<br><br>█████████████████ |

## PLAINTIFF R2 SOLUTIONS LLC'S
## MOTION TO COMPEL DISCOVERY AND AMEND THE SCHEDULING ORDER

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   RELEVANT CASE HISTORY ......................................................................... 2

III.  THE COURT SHOULD COMPEL DATABRICKS TO PRODUCE RELEVANT
      SOURCE CODE AND TECHNICAL DOCUMENTS ....................................... 8

IV.   THE COURT SHOULD AMEND THE SCHEDULING ORDER TO GIVE R2 TIME
      TO ADDRESS THE NEW MATERIALS IN AMENDED INFRINGEMENT
      CONTENTIONS AND EXPERT REPORTS ................................................... 10

V.    CONCLUSION .............................................................................................. 11

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Cases**

*Edward D. Ioli Tr. v. Avigilon Corp.*,
  No. 2:10-cv-605-JRG, 2012 U.S. Dist. LEXIS 164425 (E.D. Tex. Nov. 16, 2012)................... 9

*Forterra Sys. v. Avatar Factory*,
  No. C-05-04472 PVT, 2006 U.S. Dist. LEXIS 63100 (N.D. Cal. Aug. 22, 2006) ..................... 9

*Infernal Tech., LLC v. Microsoft Corp.*,
  No. 2:18-CV-00144-JRG, 2019 U.S. Dist. LEXIS 186444 (E.D. Tex. May 3, 2019)................ 8

*Reliance Ins. Co. v. La. Land & Expl. Co.*,
  110 F.3d 253 (5th Cir. 1997)..................................................................................................... 10

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*,
  315 F.3d 533 (5th Cir. 2003)..................................................................................................... 10

*SSL Servs., LLC v. Citrix Sys., Inc.*,
  No. 2:08-cv-158-TJW, 2010 U.S. Dist. LEXIS 11470  (E.D. Tex. Feb. 10, 2010). ................... 8

**Rules, Statutes, and Authorities**

Fed. R. Civ. P. 16(b)(4)............................................................................................................... 10

Fed. R. Civ. P. 26........................................................................................................................ 10

Fed. R. Civ. P. 26(b)(1)................................................................................................................. 8

Fed. R. Civ. P. 30(b)(6)................................................................................................................. 6

Local Civil Rule 26(d). .................................................................................................................. 8

Local Patent Rule 3-1(g). .......................................................................................................... 4, 5

Local Patent Rule 3-4.................................................................................................................. 4, 5

Local Patent Rule 3-4(a) ............................................................................................................... 9

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Plaintiff R2 Solutions LLC ("R2") hereby moves the Court to compel Defendant Databricks, Inc. ("Databricks") to produce relevant source code and accompanying technical documentation that R2 learned of less than two weeks ago. Relatedly, and reluctantly, R2 also seeks an order amending the case schedule giving R2 and its experts the time required to examine the new materials and elucidate them in R2's infringement contentions and expert reporting.

## I.      INTRODUCTION

This is an unusual case. Throughout discovery, Databricks has tried to force R2 to accept that the sole infringing functionality of the accused Databricks platform is open-source. This is for two reasons. One is to attempt to establish an open-source license defense that, if dignified, would end the case. The other is to obfuscate the fact that Databricks implements wholly-proprietary infringing technology that it has hidden from R2 at all costs—until now—when its existence slipped from the lips of a Databricks Founder at deposition. Despite the unearthing of infringing functionality that should have been disclosed months ago, Databricks refuses to produce the code (and attendant technical documentation) hoping that the late stage of this case will shield it from disclosure; thus keeping the nuclear nature of its disputed license defense in play.

It bears noting here that R2 has needed to threaten Court intervention on numerous occasions to elicit even the most basic discovery from Databricks. For instance, Databricks only yesterday released relevant damages-related data with the discovery deadline eight days away. The parties have conducted countless meet-and-confers in which Databricks laboriously required needless explanations of relevance, pressed baseless objections, and finally agreed to supplementation. Yet, even then, Databricks failed to deliver as agreed, postponed further meet and confers due to lead and local availability, and claimed that issues were not ripe for discovery conference (let alone motion practice) because the dialogue requirements had not been properly

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

exhausted. It is an endless loop with no purpose but delay while Databricks awaits the fate of its mandamus petition.

Specific to this motion, less than two weeks ago, Databricks' discovery tactics proved worse than what R2 imagined—Databricks has been dishonest. During the January 24, 2025 deposition of one of Databricks' founders, R2 learned for the first time that ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ Ex. 1[1] (Xin Depo.) at 276:19-21. In other words, Databricks insisted that only Spark was relevant in this case while concealing that it has a ████████████████████████████, which Databricks acknowledges is at the "heart of this case." ECF 35 at 1. Databricks should be compelled to produce the code and documents for this ██████, and R2 asks that the Court allow appropriate amendments to the case schedule permitting R2 the time necessary to include these materials in its infringement case.

## II.    RELEVANT CASE HISTORY

R2 filed this case on December 28, 2023, accusing of infringement the "Databricks Data Intelligence Platform/Databricks Lakehouse Platform, and any other platform(s) offered or provided by Databricks that utilize Apache Spark or any other similar functionality." ECF 1, ¶ 7. R2 subsequently served its preliminary infringement contentions on June 21, 2024 identifying certain Spark functionality as exemplifying Databricks' infringing functionality. In turn, Databricks served its invalidity contentions and asserted compliance with P.R. 3-4 by producing publicly-available, open-source Apache Spark code.[2] *See, e.g.*, Ex. 2 at 44. In other words,

---

[1] Numbered exhibits cited in this motion are included with the declaration of Carder W. Brooks, which is Exhibit A to this motion.

[2] "Open source software is software developed and maintained through open collaboration. It is made available for anyone to use, examine, alter and redistribute however they like, typically at no cost." https://www.ibm.com/think/topics/open-source. The Apache Software Foundation was

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Databricks downloaded Apache Spark code from the internet and produced it as its own as the lone accused instrumentality in this case.

Shortly thereafter, R2 sent a letter to Databricks asking that it make its own code (as opposed to simply the open-source code) available for inspection. *See* Ex. 3 at 1. Databricks responded that it had complied with P.R. 3-4 by producing "all versions of source code for the accused Apache Spark functionality." Ex. 4 at 1. Databricks also refused to produce any additional code until R2 identified "with specificity the accused functionality for which source code has not been produced, what specific source code R2 is now requesting, and how that source code is purportedly proportional to the needs of the case." *Id*. In that same communication, Databricks raised for the first time that it required a new protective order before it would produce any of its own code. *Id*. R2 sent a draft protective order for this purpose and explained that Databricks' demand that R2 identify what code was missing was unworkable because "R2 obviously has no way of knowing how Databricks' products use Spark, what code integrates Spark into Databricks' products, what modifications Databricks has made to Spark within its products, what code (i.e., Spark or custom) Databricks actually uses to perform infringing functionality, how the Databricks' product interfaces with data storage, or really anything about the code that constitutes Databricks' Data Intelligence Platform or Lakehouse Platform." Ex. 5 at 3.

This led to a weeks-long dispute regarding the terms of the protective order and Databricks' source code that Databricks drew out as long as possible while its motion to transfer venue was pending. Critically, during this period, Databricks committed (after significant prodding from R2)

---

formed to "provide a foundation for open, collaborative software development projects" and oversees a multitude of open source software projects, including Apache Spark. *See*, *e.g.*, https://www.apache.org/foundation/how-it-works/. Databricks has grown into one of the largest privately-held companies in the country on the back of Apache Spark (that its personnel were instrumental in developing).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

to produce "Databricks code showing how Spark is implemented within Databricks' platform and *code in the accused instrumentalities similar to the accused Spark functionalities*." Ex. 6 at 14 (emphasis added); *see also id.* at 13 (confirming the scope of expected source code); 1 (confirming Databricks' commitment on a meet and confer to produce the agreed scope of source code). In other words, Databricks confirmed that it would produce its internal source code with functionality similar to Apache Spark (as it should have done months before). Shortly thereafter, out of an abundance of caution, R2 served first supplemental infringement contentions with citations to the already-produced open-source Spark. *See generally* Ex. 7.[3]

A few weeks later, Databricks served its first supplemental response to R2's Interrogatory No. 2 regarding how the accused platform performs the functions identified in R2's contentions. *See* Ex. 8 at 11. Databricks explained only that the platform ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ *Id*. Ultimately, the parties could not agree to source code provisions in the protective order. The Court ruled on the parties' dispute and entered a new protective order on November 12, 2024. *See* ECF 60, 61.

████████████████████████████████████████████████

████████████████████████████████    ████████████████

████████████████████████████████████████████████

████████████████████████    *See, e.g.*, Ex. 9 at 1. This was problematic for two reasons.

---

[3] While R2 understood that Databricks would be producing additional code, Databricks had already produced Apache Spark code and represented that such code was sufficient to show how the platform functions. Thus, while R2 certainly disagreed that Databricks had complied with P.R. 3-4, R2 nevertheless provided supplemental contentions to ensure that there could be no question that R2 complied with P.R. 3-1(g).

4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER



See Ex. 10 (Rosen Depo.) at 112:17-114:19; Ex. 11 (Davis Depo.) at 27:5-18; 31:13-33:5.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

and that ███████████████████████████████████████████. *See id*; *see also* Ex. 10

(Rosen Depo.) and Ex. 11 (Davis Depo.) as footnoted below.[6]

Based on these representations, and with the end of fact discovery approaching,[7] R2 agreed

that it would forego seeking relief from the Court if Databricks would stipulate that the open-

source Apache Spark files cited in R2's supplemental contentions are representative of Databricks'

internal modified versions of those same files. Counsel for Databricks also indicated they would

consider in good faith similarly stipulating as to any other open-source Apache Spark code that R2

may include in later amended contentions. Ex. A, ¶ 22. The parties entered into a stipulation filed

with the Court on December 19. *See* ECF 73. This solidified for R2 that Databricks was being

truthful that Apache Spark told the whole story and that ███████████████████████

███████, ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████. It also bears mention that Databricks was intent on

including in the stipulation that R2 would not be entitled to further source code discovery absent

a showing of good cause.

But then, a few weeks after the stipulation, on January 24, 2025, R2 deposed Databricks'

co-founder and 30(b)(6) designee, Reynold Xin. In discussing the functionality of the accused

platform, Mr. Xin explained that ███████████████████████████████████

███████████████████ and he identified ███████████████████████████████

---

[6] Testimony from Databricks' 30(b)(6) witness also indicated that ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████ Ex. 10 (Rosen Depo.) at 146:17-24; *see also* Ex. 11 (Davis
Depo.) at 34:5-11 ("[Photon] is aimed to improve performance on top of Spark.")
[7] At this point in time, fact discovery was set to close on January 20, 2025. *See* ECF 74.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

███████████████████ Ex. 1 (Xin Depo.) at 271:13-16 (emphasis added). Pressed further, he explained that ████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* at 276:19-21. He confirmed ██████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* at 278:11 – 280:11. He then explained that to

██████████████████[^8]██████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████ Lastly, he confirmed unequivocally that ████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████[^9] *Id.* at 281:13-21.

At bottom, Mr. Xin's testimony revealed two discrete misrepresentations by Databricks. First, Apache Spark does not tell the whole story. ████████████████████████

██████████████████████████████████████████ Second, ████████████

███████████████████████████████████████████████████████████

██████████████████████████████ R2 sent a letter to Databricks on January 27

---

[^8]: At a high level, the patent-in-suit deals with merging data, and a join query is a basic example discussed in R2's contentions of how infringing functionality is invoked.

[^9]: More specifically, the patent-in-suit deals with merging data having different schema in a distributed system, and a "binary join" refers to joining two different tables (e.g., two tables with different schemas). R2's infringement contentions point out that in the Databricks platform, the "left" and "right" data groups are treated differently in the processing, including via group-specific iterators, which is an explicit embodiment identified and claimed by the patent-in-suit. Xin's confirmation that ██████████████████████████████████████████████████████████
██████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

detailing all of this. *See generally* Ex. 12. The parties met and conferred on January 29. Databricks refused to produce ██████████████████████ The parties engaged in additional email correspondence in which Databricks reiterated its positions. *See* Ex. 13 at 1-5.

## III. THE COURT SHOULD COMPEL DATABRICKS TO PRODUCE RELEVANT SOURCE CODE AND TECHNICAL DOCUMENTS

This Court has observed that "[t]he rules of discovery "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials." *Infernal Tech., LLC v. Microsoft Corp.*, No. 2:18-CV-00144-JRG, 2019 U.S. Dist. LEXIS 186444, at *3 (E.D. Tex. May 3, 2019); Fed. R. Civ. P. 26(b)(1). The Local Rules provide further guidance on relevance, instructing that information is "relevant to any party's claim or defense" if, among other things, "it is information that is likely to have an influence on or affect the outcome of a claim or defense; … that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; or … that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense." L.R. CV-26(d). It is also relevant even if "it includes information that would not support the disclosing parties' contentions." *Id.* "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted." *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-158-TJW, 2010 U.S. Dist. LEXIS 11470, at *3 (E.D. Tex. Feb. 10, 2010).

The Court should require Databricks to produce all source code and related technical documentation for ████████████. As discussed above, Databricks' (very technically inclined) co-founder confirmed that ████████████████████████████████████ ████████████████████████████████████████████ R2 had no way of knowing that ████████████ until the deposition. It is not publicly-available, and Databricks hid it

8

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

from R2. R2 also had no way of knowing ████████████████████████████████ As

discussed above, Databricks led R2 to believe that ██████████████████████████

████████████ R2 discovered Databricks' misrepresentations less than two weeks ago, and Mr.

Xin's testimony leaves no doubt that the undisclosed Databricks code and documents are relevant.

Code and related technical documentation for ██████████████ are also critically

important for R2. Indeed, the apparent reason for Databricks' conduct is that it hopes to sustain an

open-source license defense that would end the case. While R2 disputes the license defense, there

is no question that the defense is inapplicable to the undisclosed proprietary functionality. This is

what Databricks fears and is exactly why discovery into ██████████ is important.

Databricks induced R2 to enter the source code stipulation by misrepresenting its accused

platform. Indeed, as discussed above, Databricks intentionally concealed this functionality from

R2 despite being obligated to disclose it many months ago. *See Edward D. Ioli Tr. v. Avigilon*

*Corp.*, No. 2:10-cv-605-JRG, 2012 U.S. Dist. LEXIS 164425, at *8-9 (E.D. Tex. Nov. 16, 2012)

("[Defendant's] bare minimum production shirks this responsibility and its attempt to use a

grammatically technical reading of P.R. 3-4(a) as a shield to avoid production of its source

code offends the discovery principles driving this District's patent rules. P.R. 3-4(a) requires

[Defendant] to produce more than the bare minimum of what it believes is sufficient, including

but not limited to any and all source code, specifications, schematics, flow charts, artwork,

formulas, or other documentation in its possession."); *see also Forterra Sys. v. Avatar Factory*,

No. C-05-04472 PVT, 2006 U.S. Dist. LEXIS 63100, at *4 (N.D. Cal. Aug. 22, 2006) ("[T]he

entire source code is relevant under Rule 26 … . Because the source code is at the heart of the

dispute, [plaintiff's] expert must have access to the entire source code."). The Court should thus

compel such discovery.

9

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**IV.    THE COURT SHOULD AMEND THE SCHEDULING ORDER TO GIVE R2 TIME TO ADDRESS THE NEW MATERIALS IN AMENDED INFRINGEMENT CONTENTIONS AND EXPERT REPORTS**

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." To establish good cause, the moving party must demonstrate that it cannot reasonably meet the scheduling order's deadlines despite diligent efforts. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). Courts apply a four-part test in determining if good cause exists: "'(1) the explanation for the failure to [timely amend contentions and serve expert reports]; (2) the importance of the [amended contentions and expert reports]; (3) potential prejudice in allowing the [amended contentions and expert reports]; and (4) the availability of a continuance to cure such prejudice.'" *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

Under the current scheduling order, fact discovery closes on February 13, and opening expert reports are due on February 20. If the Court grants R2's motion to compel, there is no time for R2 to review the materials and address them in opening expert reports, let alone garner relevant testimony. Indeed, it is unlikely Databricks could even produce the materials before the reporting deadline. The Court should therefore amend the scheduling order by moving all deadlines back by sixty days to permit R2 the time necessary to address the new materials.[10]

Good cause supports this amendment. First, R2 has acted diligently. The only reason R2 needs more time is that it uncovered less than two weeks ago the proprietary and previously-undisclosed functionality going to the heart of R2's infringement case. R2 is also filing this motion prior to the deadline for motions to compel set forth in the Scheduling Order. *See* ECF 75. Second, the requested evidence is potentially critical to R2's case, as it could demonstrate another way in

---

[10] If the Court is inclined to amend the scheduling order, R2 is willing to meet and confer with Databricks to propose a new scheduling order consistent with the Court's ruling.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

which Databricks infringes the patent-in-suit without the use of Apache Spark. If R2 does not have more time to conduct discovery on this newly-revealed functionality, R2 will be limited to pursuing infringement by Apache Spark, which Databricks is vying to eliminate from the case via implied license. Third, giving R2 time to address the materials is not prejudicial to Databricks. Databricks had an affirmative obligation to produce these materials with its invalidity contentions almost seven months ago, and amending the schedule would simply give R2 enough time to address materials it could have already addressed absent Databricks' gamesmanship. Databricks would also be able to fully respond to R2's amended infringement contentions and its expert reporting.

In sum, R2 just discovered new evidence that is material to its infringement claims because Databricks hid it throughout discovery. R2 has acted promptly in seeking to adjust the case schedule to allow it to address this evidence. Given the importance of the new evidence and R2's diligence, good cause exists to extend the schedule.

## V.    CONCLUSION

For the reasons set forth above, R2's motion should be granted, and Databricks should be ordered to comply with its discovery obligations and produce the ███████████ code and related technical documentation. The Court should also amend the scheduling order to allow R2 time to address this evidence in its infringement case.

11

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated: February 5, 2025                    Respectfully Submitted,

                                       By: */s/ Carder W. Brooks*
EDWARD R. NELSON III
STATE BAR NO. 00797142
CHRISTOPHER G. GRANAGHAN
STATE BAR NO. 24078585
JOHN P. MURPHY
STATE BAR NO. 24056024
CARDER W. BROOKS
STATE BAR NO. 24105536
NELSON BUMGARDNER CONROY PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111
ed@nelbum.com
chris@nelbum.com
murphy@nelbum.com
carder@nelbum.com

COUNSEL FOR
PLAINTIFF R2 SOLUTIONS LLC

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that counsel for R2 Solutions has complied with the meet and confer requirements in Local Rule CV-7(h) and FRCP 37(a)(1) and that the accompanying motion is opposed. Counsel for the parties conducted the necessary formal meet and confers and participated in a telephonic hearing with the Court, at which the Court authorized this filing.

*/s/ Carder W. Brooks*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2025, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Carder W. Brooks*

## CERTIFICATE OF AUTHORIZATION

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Carder W. Brooks*