▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| R2 Solutions LLC, | Civil Action No. 4:23-cv-01147-ALM |
| Plaintiff, | |
| v. | Jury Trial Demanded |
| Databricks, Inc., | ▮▮▮▮▮▮▮▮▮▮ |
| Defendant. | |

**PLAINTIFF R2 SOLUTIONS LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON DATABRICKS' LICENSE
<u>DEFENSE BASED ON APACHE CONTRIBUTIONS</u>**

████████████████████████

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT .................................. 2

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 2

    A.   Facts Pertaining to the Background of This Litigation .............................................. 2

    B.   Facts Pertaining to the '610 Patent ............................................................. 3

    C.   Facts Pertaining to Apache and Apache Spark ........................................... 3

IV.    LEGAL STANDARD ................................................................................ 9

V.     ARGUMENT ........................................................................................ 10

    A.   The Court Should Grant Partial Summary Judgment on Databricks' License
        Defense Based on Contributions to Apache Because There Is No License to the
        '610 Patent Signed by Yahoo. .................................................................. 11

        1.   California law, and the California statute of frauds, applies to the purported
            patent license. ................................................................................. 11

        2.   California law requires the purported license to the '610 patent to be in a
            writing signed by Yahoo, and Databricks has no evidence of any such
            writing. ....................................................................................... 144

    B.   The Court Should Grant Partial Summary Judgment on Databricks' License
        Defense Based on Contributions to Apache Because Databricks Can Adduce No
        Evidence of a Contribution That Triggered a License to the '610 Patent. ................ 16

VI.    CONCLUSION ........................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AlexSam, Inc. v. Aetna, Inc.*,
  119 F.4th 27 (Fed. Cir. 2024) .......................................................................... 9

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................... 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................ 9

*Hall v. Uipath, Inc.*,
  123 F.4th 419 (5th Cir. 2024) ....................................................................... 10

*Lamle v. Mattle, Inc.*,
  394 F.3d 1355 (Fed. Cir. 2005) ..................................................................... 14

*Lindsey v. Sears Roebuck & Co.*,
  16 F.3d 616 (5th Cir. 1994) ........................................................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...................................................................................... 10

*Osmose, Inc. v. Arch Chems., Inc.*,
  Case No. 2:10-cv-108, 2010 U.S. Dist. LEXIS 147584 (E.D. Va. Aug. 2, 2010) ................... 14

*SPBS, Inc. v. John D. Mobley & Intermed Grp. Servs., Inc.*,
  Case No. 4:18-cv-00391, 2018 U.S. Dist. LEXIS 148881 (E.D. Tex. Aug. 31, 2018) ........... 11

*Sun Studs, Inc. v. Applied Theory Assocs.*,
  772 F.2d 1557 (Fed. Cir. 1985) ................................................................. 14, 15

*Wisdom v. Experian Info. Sols., Inc.*,
  Case No. 4:23-cv-93-ALM-KPJ, 2023 U.S. Dist. LEXIS 231545 (E.D. Tex. Nov. 30, 2023). 12

*Yesh v. Lakewood Church*,
  Case No. 4:11-cv-03095, 2020 U.S. Dist. LEXIS 19030 (S.D. Tex. Feb. 14, 2012)............... 11

**Rules, Statutes, and Authorities**

17 U.S.C. § 302 .............................................................................................. 15

28 U.S.C. § 1331 ............................................................................................ 11

28 U.S.C. § 1338(a) ....................................................................................... 11

35 U.S.C. § 154(a)(2) ................................................................................................ 15

Cal. Civ. Code § 1624(a)(1) ............................................................................ 1, 10, 14

Cal. Civ. Code § 2309 ........................................................................................... 1, 16

Fed. R. Civ. P. 56 .................................................................................................... 1, 9

Local Rule CV-56 ....................................................................................................... 1

Restatement (Second) of Conflict of Laws § 188 .................................................... 12

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule CV-56, Plaintiff R2 Solutions LLC moves the Court for partial summary judgment on Defendant Databricks, Inc.'s license defense based on contributions to the Apache Software Foundation. Databricks' license defense fails as a matter of law for two different reasons. First, under California law, which applies to this issue, the instruments by which Databricks contends Yahoo (the former owner of the patent-in-suit) granted a license must be signed by Yahoo, or its duly authorized agent, because such an agreement cannot be performed within one year of its making. Cal. Civ. Code § 1624(a)(1). Databricks can adduce no evidence of a license in writing and signed by Yahoo. And while R2 expects Databricks to point to certain agreements with Apache entered into by Yahoo employees, Databricks can adduce no writing giving these employees authority to enter into a patent license agreement on behalf of Yahoo itself. Cal. Civ. Code § 2309 ("An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."). The Court should therefore grant partial summary judgment in R2's favor on Databricks' license defense based on Apache contributions.

Second, under the terms of the Apache agreements that Databricks relies on, for a contribution to Apache to grant a license to the '610 patent, the contribution must necessarily infringe the '610 patent either alone or in combination with the work to which the contribution was submitted. And, even then, the resulting patent license is only for the Apache work to which the contribution was made. Databricks cannot adduce any evidence of any contribution by Yahoo or one of its employees that would necessarily infringe the '610 patent alone or by its combination with any Apache work, let alone Apache Spark, the work at issue in this case. Thus,

1

for this independent reason, the Court should grant partial summary judgment on Databricks' license defense based on contributions to Apache.

## II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

R2'S Motion for Partial Summary judgment raises two issues:

1.    Whether Databricks' alleged patent license is subject to the California statute of frauds and, if so, whether Databricks has adduced any evidence of a writing signed by Yahoo, or an authorized agent on Yahoo's behalf, granting such a license.

2.    Whether Databricks has adduced any evidence of a contribution by Yahoo to Apache Spark that necessarily infringes the '610 patent, either alone or by combining it with Apache Spark.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Facts Pertaining to the Background of This Litigation

1.    R2 filed its Complaint on December 28, 2023, asserting that Databricks has infringed and continues to infringe U.S. Patent No. 8,190,610 ("the '610 patent"). ECF 1.

2.    Databricks filed its Answer to the Complaint on March 8, 2024. ECF 16. Databricks alleged, among other defenses, that "R2's claims against Databricks are barred, in whole or in part, by express or implied licenses to the Patent-in-Suit, and/or under the doctrines of patent exhaustion, first sale and/or the single recovery rule." *Id.* at 9.

3.    R2 asserts that Databricks infringes, directly and indirectly, claims 1, 5, 17, and 21 of the '610 Patent by its making, using, selling, and offering for sale the Databricks Data Intelligence Platform / Databricks Lakehouse Platform, and any other platform provided by Databricks, that utilizes Apache Spark. ECF 97; Ex. 2 at ¶ 36. R2 contends in relevant part that it is the Databricks Data Intelligence Platform / Databricks Lakehouse Platform's implementation

2

of Apache Spark that infringes the '610 Patent. Ex. 2 at ¶¶ 36, 68-69.[1]

### B.    Facts Pertaining to the '610 Patent

4.    The application for the '610 patent was filed on October 5, 2006, and issued to Yahoo! Inc. ("Yahoo") in Sunnyvale, California on May 29, 2012. Ex. 1.

5.    The '610 patent lists Ali Dasdan of San Jose, California, Hung-Chih Yang of Sunnyvale, California, and Ruey-Lung Hsiao of Los Angeles, California as inventors. *Id.*

6.    Yahoo assigned the '610 patent to Excalibur IP, LLC on April 18, 2016. Ex. 3 at R2_DB_000471, 495.

7.    The '610 patent expires on October 14, 2029. Ex. 1; 35 U.S.C. § 154.

### C.    Facts Pertaining to Apache and Apache Spark

8.    The Apache Software Foundation ("Apache") is a non-profit organization that, according to its website, "provide[s] software for the public good." Ex. 4 at ¶ 70; Ex. 5 at R2_DB_126617. Apache claims that "[s]ince 1999," it has "provided an established framework for intellectual property and financial contributions that enables millions of people around the world to collaborate and deliver freely available software." *Id.* at R2_DB_126618; *see also* Ex. 6 at 39:12-19 ("Q. Can you explain at a high level what the Apache Software Foundation is? A. It's a foundation to support and encourage open-source software to benefit everyone. So they coordinate the – all of the subprojects for people who are interested in contributing, as well as have guidelines and regulations for managing projects and members.").

9.    Apache makes all software developed by its projects, including Apache Spark, available without charge from Apache's websites. Ex. 7 at R2_DB_126732. It "uses various

---

[1] There is yet other source code and related technical evidence sought by R2 via pending motion to compel that R2 believes will evidence additional infringements. *See* ECF 82 (and related briefing).

R

licenses to distribute software and documentation, and to accept regular contributions from individuals and corporations and larger grants of existing software products." Ex. 8 at R2_DB_127078; Ex. 4 at ¶ 71. According to Apache, the Apache 2.0 license is Apache's current license for the use of any of Apache's projects and applies to Apache Spark. Ex. 8 at R2_DB_127078; Ex. 9 at R2_DB_126741.

10.    The document that Databricks contends is the operative Apache 2.0 license[2] contains both a copyright license and a patent license. Ex. 10 at Databricks_R2_00090072.

11.    The copyright license in the Apache 2.0 license states as follows:

> 2. Grant of Copyright License. Subject to the terms and conditions of this License, each Contributor hereby grants to You a perpetual, worldwide, non-exclusive, no-charge, royalty-free, irrevocable copyright license to reproduce, prepare Derivative Works of, publicly display, publicly perform, sublicense, and distribute the Work and such Derivative Works in Source or Object form.

*Id.*

12.    The patent license in the Apache 2.0 license states as follows:

> 3. Grant of Patent License. Subject to the terms and conditions of this License, each Contributor hereby grants to You a perpetual, worldwide, non-exclusive, no-charge, royalty-free, irrevocable (except as stated in this section) patent license to make, have made, use, offer to sell, sell, import, and otherwise transfer the Work, where such license applies only to those patent claims licensable by such Contributor that are necessarily infringed by their Contribution(s) alone or by combination of their Contribution(s) with the work to which such Contribution(s) was submitted. If You institute patent litigation against any entity (including a cross-claim or counterclaim in a lawsuit) alleging that the Work or a Contribution incorporated within the Work constitutes direct or contributory patent infringement, then any patent licenses granted to You under this License for that Work shall terminate as of the date such litigation is filed.

---

[2] R2 does not concede the authenticity or the admissibility of the document that Databricks contends to be the Apache 2.0 license. However, this motion for partial summary judgment does not raise the issue of authenticity or admissibility. Any references to the contents of the "Apache 2.0 license" herein are based on the document that Databricks asserts to be the operative Apache 2.0 license agreement.

███████████████████████

*Id.*

13.     The Apache 2.0 license defines "Contributor" as "Licensor and any individual or Legal Entity on behalf of whom a Contribution has been received by Licensor and subsequently incorporated within the Work." *Id.* at Databricks_R2_00090071-72. It defines "Contribution" as "any work of authorship, including the original version of the Work and any modifications or additions to that Work or Derivative Works thereof, that is intentionally submitted to Licensor for inclusion in the Work by the copyright owner or by an individual or Legal Entity authorized to submit on behalf of the copyright owner." *Id.* It defines "Licensor" as "the copyright owner or entity authorized by the copyright owner that is granting the License." *Id.* And it defines "Work" as "the work of authorship, whether in Source or Object form, made available under the License, as indicated by a copyright notice that is included in or attached to the work (an example is provided in the Appendix below). In other words, as relevant here, Spark is the "Work," Apache is the "Licensor," Apache's and Yahoo's employees are "Contributors," and their submissions to Spark are "Contributions."

14.     The Apache 2.0 license does not have a choice of law provision. *See* Ex. 10.

15.     The Apache 2.0 license that Databricks relies on is unsigned. *See id.*

16.     In addition to the Apache 2.0 license, which grants rights to users of Apache projects (like Apache Spark), Apache requires Contributors to Apache projects to execute Individual Contributor License Agreements ("ICLAs") before contributing code to a project. Ex. 8 at R2_DB_127079; Ex. 6 at 138:15-141:12; Ex. 11; Ex. 7 at R2_DB_126737 ("Committers must sign an ICLA.").

17.     Like the Apache 2.0 License, each document that Databricks contends is an

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Apache ICLA[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, Ex. 11 at ASF_R2-DB_0000015.

18. ▮▮▮▮▮▮▮▮▮▮▮▮



*Id.*

19. ▮▮▮▮▮▮▮▮▮▮▮



*Id.* at ASF_R2-DB_0000015 – 016.

20. The Apache ICLA defines ▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] R2 does not concede the authenticity or the admissibility of the documents that Databricks asserts to be Apache ICLAs. However, this motion for partial summary judgment does not raise the issue of authenticity or admissibility. Any references to the contents of the "Apache ICLA" or "Apache ICLAs" herein are based on the documents that Databricks asserts to be the Apache ICLAs that grant Databricks a license to the '610 patent.

████████████████████████████████████████████

████████████████████████████████████████████[4]

*Id.* at ASF_R2-DB_0000014 – 015. Like the Apache 2.0 License, the Apache ICLA defines

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ *Id.* at

ASF_R2-DB_0000015.

21.    ████████████████████████████████████

████████████████████

████████████████████████████████████████████

Ex. 11 at ASF_R2-DB_0000016.

22.    ████████████████████████████ *See, e.g.*, Ex. 11.

23.    Apache makes clear that the ICLAs do not necessarily provide all rights necessary to use the code contributed by the individual signing the ICLA. According to Apache, contributors "make an individual claim that the code that they contribute is theirs to license." Ex. 7 at R2_DB_126737. However, Apache cautions that "[r]eviewing their ICLA against their employer's ownership interests, applicable state and national law, and specific aspects of their employment contract and business policies will reveal that they can or cannot make that claim regarding any particular commit to whichever particular project they are committing in." *Id.*

24.    ████████████████████████████████████

_____

[4] ████████████████████████████████████████████

25.     There are no writings giving any ████████ employees (or any other Yahoo employees) authority to grant licenses to Yahoo's patents. Indeed, one of these employees, Thomas Graves, testified that he did not sign his ICLA on behalf of Yahoo, was not purporting to bind Yahoo by his signature, does not know what patents he was permitted to license, and does not have any document evidencing his right to grant patent licenses on behalf of Yahoo. Ex. 6 at 213:15-214:18, 215:15-217:18.

26.     In addition, Apache has a form corporate contributor license agreement ("CCLA"). Ex. 7 at R2_DB_126737. According to the form CCLA, its purpose is to ████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████ Ex. 18 at ASF_R2-DB_0000017. The form CCLA contains ████████████████████ ██████████████████████ *Id*. at ASF_R2-DB_0000018.

27.     Schedule A to the form Apache CCLA is a ████████████████████ ████████████████████████████████ *Id.* at ASF_R2-DB_0000019; *see also id.* at ASF_R2-DB_0000018 ("████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ ").

28.     However, Apache does not require that Contributors' employers sign a CCLA before contributions are permitted. Ex. 7 at R2_DB_126737 ("The CCLA is a backup document

██████████████████████████████████

that the committer/ICLA signer may use to eliminate ambiguity between all these conflicting laws, contracts, policies and job assignments. We've never required it; many committers are confident of their individual representations under the ICLA, many other committers find it reassuring that their company has backed up their own ICLA with this umbrella document.").

29.    Yahoo did not sign an Apache CCLA. Ex. 12 at ¶ 995 (Databricks' expert recognizing that "Yahoo did not execute a corporate contributor license agreement with Apache"); Ex. 19 at 47:16-48:11 (former Yahoo employee and creator of Hadoop stating that he does not recall whether Yahoo submitted a CCLA); ████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████

## IV.    LEGAL STANDARD

This motion relates to Databricks' allegation that it has a license to practice the '610 patent. "As patent infringement is the practice of a patent claim without consent of the patentee, the existence of a license, express or implied, provides an affirmative defense to infringement." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 36 (Fed. Cir. 2024). Databricks therefore bears the burden of proving its license defense.

Summary judgment is appropriate when no genuine dispute exists as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When (as here) the nonmovant bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rather, the moving party's initial burden of establishing the absence of genuine issue of material fact "may be discharged by 'showing'—

that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has demonstrated an absence of material fact, the burden shifts to the non-movant to "'demonstrat[e] by competent summary judgment proof that there is an issue of material fact warranting trial.'" *Hall v. Uipath, Inc.*, 123 F.4th 419, 422 (5th Cir. 2024) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). If the nonmoving party cannot do so, the Court must grant summary judgment.

## V.    ARGUMENT

The Court should grant summary judgment in R2's favor on Databricks' license defense based on the Apache 2.0 license for two reasons. First, the California statute of frauds, which applies to this issue under conflicts-of-law principles, requires any purported license to the '610 patent to be in writing and signed by Yahoo. *See* Cal. Civ. Code § 1624(a)(1) ("The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: . . . (1) An agreement that by its terms is not to be performed within a year from the making thereof."). There is no evidence of a writing signed by Yahoo or one of its agents that grants a license to the '610 patent.

Second, even if the statute of frauds is satisfied, Databricks has no evidence that a license to the '610 patent was ever triggered. Under the Apache 2.0 license and the Apache ICLAs,

███████████████████████████████

which Databricks relies on for its defense, a license is only granted to patent claims "licensable by [a] Contributor that are necessarily infringed by their Contribution(s) alone or by combination of their Contribution(s) with the Work to which such Contribution(s) was submitted." Ex. 10 at Databricks_R2_00090072.[5] And, even then, such a license is only to "make, have made, use, offer to sell, sell, import, and otherwise transfer *the Work*" to which the Contribution was made. *Id.* (emphasis added). While Databricks and its expert identify certain contributions to Apache Spark purportedly made by Yahoo employees, they have no evidence that any such contributions infringe the '610 patent alone or by combination with Spark. Accordingly, Databricks cannot show that Yahoo granted a license to the '610 patent.

> **A.    The Court Should Grant Partial Summary Judgment on Databricks' License Defense Based on Contributions to Apache Because There Is No License to the '610 Patent Signed by Yahoo.**

> **1.    California law, and the California statute of frauds, applies to the purported patent license.**

California law applies to Databricks' license defense based on contributions to Apache. Because this is a patent case, the Court has federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1338(a). "'Where federal question jurisdiction is invoked . . . , federal courts generally apply federal common law principles to resolve choice of law disputes.'" *SPBS, Inc. v. John D. Mobley & Intermed Grp. Servs., Inc.*, Case No. 4:18-cv-00391, 2018 U.S. Dist. LEXIS 148881, at *32 (E.D. Tex. Aug. 31, 2018) (quoting *Yesh v. Lakewood Church*, Case No. 4:11-cv-03095, 2020 U.S. Dist. LEXIS 19030 (S.D. Tex. Feb. 14, 2012)). "'Federal common law follows the approach

---

[5] Because the Apache ICLAs are signed by contributors, they ████████████████████████
███████████████████████████ *See, e.g.*, Ex. 11 at ASF_R2-DB_0000015. ██████████
████████████████████████████████████████████████████████
For simplicity, this motion quotes from the Apache 2.0 license.

████████████████████

of the Restatement (Second) of Conflicts of Laws.'"[6] *Id.* (internal quotation marks omitted).

Databricks license defense is rooted in the Apache 2.0 license applied to Spark and Apache ICLAs signed by Yahoo employees who contributed to Spark. Neither the Apache 2.0 license nor the Apache ICLAs contain a choice-of-law provision. Thus, Section 188 of the Restatement (Second) of Conflict of Laws applies. Under Section 188, the "law of the state which . . . has the most significant relationship to the transactions and the parties" applies. Restatement (Second) of Conflict of Laws § 188; *see also Wisdom v. Experian Info. Sols., Inc.,* Case No. 4:23-cv-93-ALM-KPJ, 2023 U.S. Dist. LEXIS 231545, at *9 (E.D. Tex. Nov. 30, 2023). "The most significant relationship is determined by the following contacts: '(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.'" *Wisdom,* 2023 U.S. Dist. LEXIS 231545, at *9-10 (quoting Restatement (Second) of Conflicts of Laws § 188(2)).

California has the most significant relationship to Databricks' purported license to the '610 patent, and thus its law applies. Every single factor supports the application of California law. Databricks' theory is that Yahoo granted a license to Databricks to the '610 patent via

---

[6] While courts generally apply federal common law choice-of-law principles in federal-question cases, there is at least one case applying the forum state's choice-of-law rules when the determining the validity of a contract in a federal question case. *See Fintech Fund, F.L.P. v. Horne,* 836 F. App'x 215, 223 (5th Cir. 2020) (unpublished). Because Texas law, like federal law, applies the Restatement (Second) of Conflict of Laws, the analysis in this case is the same regardless of whether federal common law or Texas choice-of-law principles apply. *See id.* ("Texas courts look to the Restatement (Second) of Conflict of Laws '[i]n deciding which state's law should govern the construction of contractual rights.'"); *J&J Sports Prods. v. Kirkpatrick,* Case No. 4:18-cv-310, 2020 U.S. Dist. LEXIS 166381, at *14-15 (E.D. Tex. Sep. 11, 2020) ("Texas courts use the 'most significant relationship' test when resolving choice-of-law questions in contract cases. . . . In those cases, courts will apply the Restatement (Second) of Conflict of Laws § 188.").

██████████████████████████

Yahoo's contributions to Apache. Both parties to the purported license, Yahoo and Databricks, were, or are, based in California. Yahoo was based in Sunnyvale, California when it owned the '610 patent and purportedly made contributions to Apache. Ex. 1 ('610 patent showing it issued to Yahoo!, Inc. in Sunnyvale, California); ECF 20 at 2 (Databricks arguing in its motion to transfer that "[t]he three named inventors on the asserted patent developed the claimed invention during their employment with Yahoo! Inc., a company that was headquartered in Sunnyvale, California at the time of the invention"). And Databricks is based in California. ECF 16, ¶ 2 ("Databricks admits that it is a corporation organized under the laws of the state of Delaware, with a principal place of business of 160 Spear Street, Suite 1300, San Francisco, CA 94105.").

████████████████████████████████████████████

██████████████████████████  Thus, based on the location of the parties, at least factor (a) (the place of contracting), factor (b) (the place of negotiation), factor (c) (the place of performance), and factor (e) (the domicil, residence, nationality, place of incorporation and place of business of the parties) support applying California law.

        In addition, the location of the subject matter of the purported license, the '610 patent and Spark, were developed in California. The three inventors of the '610 patent were based in California at the time of the invention. Ex. 1 ('610 patent listing the inventors' locations as San Jose, California, Sunnyvale, California, and Los Angeles, California). And Spark was initially developed at the University of California, Berkeley's AMPLab by the founders of Databricks. Ex. 21 at ¶ 87. Because every factor supports the application of California law to Databricks' license defense based on the Apache 2.0 license and the Apache ICLAs, the Court should apply California law.

███████████████████████████████

**2.    California law requires the purported license to the '610 patent to be in a writing signed by Yahoo, and Databricks has no evidence of any such writing.**

The California statute of frauds requires the Apache 2.0 license and the Apache ICLAs, which Databricks claims are the instruments granting it a license to the '610 patent, to be signed by Yahoo for them to be enforceable against Yahoo. Under California law, "[a]n agreement that by its terms is not to be performed within a year from the making thereof" is invalid unless it, "or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged or by the party's agent." Cal. Civ. Code § 1624(a)(1). The statute of frauds applies to patent licenses that last more than a year. *See Sun Studs, Inc. v. Applied Theory Assocs.*, 772 F.2d 1557, 1563 (Fed. Cir. 1985) ("Moreover, the Supreme Court and the Ninth Circuit have applied the Statute of Frauds to oral agreements which grant a license under a patent whose remaining term is more than one year."); *Osmose, Inc. v. Arch Chems., Inc.*, Case No. 2:10-cv-108, 2010 U.S. Dist. LEXIS 147584, at *3 (E.D. Va. Aug. 2, 2010) ("Both case law and the terms of the draft license agreement, which was <u>authored by defendants</u>, reveal that the instant <u>multi-year</u> patent licensing agreement falls within the statute of frauds, and any oral commitments made by plaintiff are therefore unenforceable." (emphasis in original)); *see also Lamle v. Mattle, Inc.*, 394 F.3d 1355, 1360-61 (Fed. Cir. 2005) (applying California statute of frauds).

The Apache 2.0 license and the Apache ICLAs contain two terms that prevent their performance within one year, triggering the statute of frauds. First, the Apache 2.0 license and the Apache ICLAs both grant a ██████████████████████████████ ██████. Ex. 10 at Databricks_R2_00090072; *see also*, *e.g.*, Ex. 11 at ASF_R2-DB_0000015. Databricks contends that Yahoo granted a license to the '610 patent via contributions to Apache made prior to Yahoo's divestment of the patent in 2016. *See*, *e.g.*, Ex. 12, ¶ 1079 (Databricks' expert opining that "Yahoo made these contributions during the time it owned the '610 patent—

14

██████████████████████████████████████

i.e., between the October 5, 2006 filing date of the '610 patent and the April 18, 2016 assignment

to Excalibur, and thus, granted all users of open-source Apache Spark a license to the '610

patent."). The '610 patent expires on October 14, 2029, more than a decade after the purported

Yahoo contributions triggering a license to the '610 patent.[7] Because the '610 patent had more

than a year of life left when the license was purportedly granted, the statute of frauds applies and

requires the Apache 2.0 license and the Apache ICLAs to be signed by Yahoo. *See Sun Studs*,

772 F.2d at 1563 ("Moreover, the Supreme Court and the Ninth Circuit have applied the Statute

of Frauds to oral agreements which grant a license under a patent whose remaining term is more

than one year.").

Second, the Apache 2.0 license and the Apache ICLAs ████████████████████

████████████████████████████████████████████████████. Ex. 10 at

Databricks_R2_00090072; *see also*, *e.g.*, Ex. 11 at ASF_R2-DB_0000015. Databricks relies on

contributions that Yahoo purportedly made to Apache between the filing of the application

leading to the '610 patent in 2006 and Yahoo's divestment of the '610 patent in 2016. *See, e.g.*,

Ex. 12, ¶ 1079. The copyright for a work created after January 1, 1978, exists from the work's

creation until seventy years after the author's death. *See* 17 U.S.C. § 302(a).[8] Thus, just like the

patent license, the included copyright license of the Apache 2.0 license and the Apache ICLAs

could not be performed within one year, triggering the statute of frauds.

There is no evidence that the Apache 2.0 license or the Apache ICLAs were signed by

---

[7] The application for the '610 patent was filed on October 5, 2006. Ex. 1 ('610 patent).
Ordinarily, the patent would expire twenty years later, on October 5, 2026. 35 U.S.C.
§ 154(a)(2). However, the '610 patent received 1,105 days of patent term adjustment under 35
U.S.C. § 154(b), extending the expiration date to October 14, 2029.
[8] While the copyright term can be different based on the circumstances, it will never be less than
70 years. 17 U.S.C. § 302.

Yahoo. The Apache 2.0 license was not signed by *anyone*, let alone Yahoo. *See* Ex. 10. And while the Apache ICLAs were signed by persons employed by Yahoo, there is no evidence that these individuals had authority to grant intellectual property licenses on Yahoo's behalf. Under California law, "authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." Cal. Civ. Code § 2309. Databricks can adduce no evidence of a writing giving any Yahoo employee the authority to grant patent or copyright licenses on its behalf to Apache or users of Apache works. Indeed, one of the former Yahoo employees on which Databricks relies, Thomas Graves, when asked "what written document evidences your right to grant patent licenses on behalf of Yahoo!," responded: "I don't have any written documents, in my possession anyway." Ex. 6 at 217:12-18.

Because there is no evidence that the Apache 2.0 license or the Apache ICLAs were ever signed by Yahoo, Databricks' license defense based on contributions to Apache fails as a matter of law. The Court should therefore grant partial summary judgment in favor of R2 that Databricks does not have a license to the '610 patent via contributions to Apache.

**B.    The Court Should Grant Partial Summary Judgment on Databricks' License Defense Based on Contributions to Apache Because Databricks Can Adduce No Evidence of a Contribution That Triggered a License to the '610 Patent.**

Even if the Court holds that the statute of frauds does not apply to the Apache 2.0 license or the Apache ICLAs, or that the statute of frauds is satisfied, it should still grant partial summary judgment because Databricks cannot not show any contribution to Apache Spark that would trigger a license to the '610 patent. Under the Apache 2.0 license, a Contributor (here, Yahoo), only grants a patent license to patent claims that are "necessarily infringed by their Contribution(s) alone or by combination of their Contribution(s) with the work to which such Contribution(s) was submitted." Ex. 10 at Databricks_R2_00090072. The Apache ICLAs

16

████████████████████████████████████████████

████████████████████. Ex. 11 at ASF_R2-DB_0000015 – 016.[9] In other words, the Apache 2.0

license and Apache ICLAs only grant licenses to patent claims if those claims are infringed by

the contribution or if the contribution, when combined with the work to which the contribution is

submitted, causes infringement. If the work infringes a patent regardless of the presence or

absence of the contribution, then the contribution does not trigger a patent license.

This understanding of the patent license in the Apache 2.0 license and the Apache ICLAs

is consistent with Apache's own understanding. On its website, in response to a question about

the scope of the patent license, Apache states: "The only patent claims that are licensed to the

ASF are those that you own or have the right to license *that read on your contribution or the*

*combination of your contribution with the specific Apache product to which you contributed as it*

*existed at the time of your contribution*. . . . Note, however, that licensable patent claims include

those that you acquire in the future, *as long as they read on your original contribution as made*

*at the original time.*" Ex. 7 at R2_DB_126736 (emphasis added).

Databricks has no evidence of a contribution made by Yahoo or one of its employees that

necessarily infringed any claim of the '610 patent, either by itself or in combination with Apache

Spark. Databricks' expert, Dr. Robert Weissman, tries to show that Yahoo granted a license to

the '610 patent via contributions to Apache in his opening and rebuttal expert reports. *See*, *e.g.*,

Ex. 12, ¶¶ 1078-1212; Ex. 21 at ¶¶ 467-512. However, Dr. Weissman's opinions are legally

insufficient to meet Databricks' burden of showing its entitlement to a license.

In his opening report, Dr. Weissman provides two primary types of opinions relating to

Yahoo's purported contributions to Apache Spark. First, he identifies certain Spark files that R2

---

[9] As explained above, the Apache ICLAs ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

relied on in its infringement contentions and concludes that the file was present in Spark when Yahoo contributed to Spark. For example, Dr. Weissman states:

> 1084. I understand that R2 alleges org/apache/spark/rdd/RDD.scala allegedly meets the claimed partitioning functionality. (*See generally* R2 Infringement Contentions, Ex. A.) Such code was available in Apache Spark-1.0 as core/src/main/scala/org/apache/spark/rdd/RDD.scala prior to April 18, 2016, when Yahoo owned the '610 patent and was contributing to Apache Spark. (Databricks_R2_00116677; Databricks_R2_00117669).

Ex. 12 at ¶ 1084. This analysis says nothing, however, about whether any specific contribution necessarily infringes the '610 patent, either alone or in combination with Spark.

Second, Dr. Weissman identifies "[a]t least four Yahoo employees [who] contributed to Apache Spark on behalf of Yahoo between 2013 and 2016: Thomas Graves, Mridul Muralidharan, Andy Feng, and Yangbo Liang." *Id.* at ¶ 1183. He briefly identifies some of their purported contributions yet never explains how they infringe the '610 patent, either alone or in combination with Spark. *Id.* at ¶¶ 1183-1192. Many of the contributions have nothing to do with the functionality of the '610 patent. For example, one contribution Dr. Weissman points to (which is from none of the four individuals he calls out) relates to adding a cancel button to the Apache Spark user interface. *Id.* at ¶ 1188.

Dr. Weissman's rebuttal report is more of the same. Ex. 21, ¶¶ 467-512. Most of the "rebuttal" opinions on this issue are nothing more than identifying the Spark files or functionalities that R2's expert relies on in his opening report and concluding that those same files or functionalities were present in Spark when Yahoo employees made contributions to Spark. *See generally id.* For example, Dr. Weissman states:

> 475. Mr. Davis [R2's expert] alleges that "[e]ach DataFrame partition contains a plurality of key-value pairs," "[s]uch key-value pairs follow the schema of data groups," and "in this manner, the Databricks platform partitions the data of each one of the data groups into a plurality of data partitions that each have a plurality of key-value pairs." (Davis Rep. ¶ 143.)

18

> 476. While I disagree with Mr. Davis's allegations for at least the reasons discussed above in Section XI.B.1.b, as explained above, DataFrame was available in Apache Spark prior to April 18, 2016, when Yahoo owned the '610 patent and was contributing to Apache Spark.

*Id.*, ¶¶ 475-476. Dr. Weissman also generically identifies functionalities that Yahoo employees contributed to, but he performs no analysis of how any such contributions infringe the '610 patent, either by themselves or in combination with Apache Spark. *See, e.g.*, *id.*, ¶¶ 470-471.

This analysis is insufficient. The Apache 2.0 license and Apache ICLAs require more than mere contributions to Spark—they require a contribution that *necessarily infringes*, either by itself or when combined with Spark. Thus, to prevail on its license defense, Databricks must have provided evidence that a contribution by Yahoo meets every element of every asserted claim of the '610 patent, either by itself or when combined with Spark. Databricks has not done so. It is not enough to point to source code files that were present in Spark when Yahoo purportedly made contributions, or even to generically point to contributions that Yahoo employees made to Spark.

R2 anticipates that Databricks will also point to other contributions that Yahoo employees made to open-source projects besides Spark. While Databricks' arguments on this point are not clear, what is clear is that contributions made to *other* projects cannot provide a license for Apache Spark, which is the functionality at issue in this case. The Apache 2.0 license and the Apache ICLAs make clear that they only apply on a work-by-work basis. The patent license permits a licensee "to make, have made, use, offer to sell, sell, import and otherwise transfer *the Work*." Ex. 10 at Databricks_R2_00090072; Ex. 11 at ASF_R2-DB_0000015 – 016. Under the Apache 2.0 license, the "Work" to which the license applies is "the work of authorship . . . made available under the License, as indicated by a copyright notice that is included in or attached to the work." Ex. 10 at Databricks_R2_00090071. And under the Apache

███████████████████████████████████████

ICLAs, ████████████████████████████████. Ex. 11 at

ASF_R2-DB_0000015 ("'████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████" (emphasis added)). Databricks contends that Apache Spark is "the

Work." *See, e.g.*, Ex. 12, ¶ 992 ("The Apache Software Foundation hosts hundreds of Apache

projects, including, for example, Apache Hadoop, Apache Hadoop YARN (MapReduce 2.0),

Apache Pig (including Spark on Pig), Apache ZooKeeper, Apache Oozie, Apache Storm,

Apache Omid, Apache Hive, Apache HBase, *Apache Spark*, all released under the Apache 2.0

license."). A contribution to a *different* work can only trigger a patent license for the work to

which the contribution was made—it cannot trigger a license for Apache Spark. Thus,

Databricks' reliance on contributions to any other projects is misplaced and cannot avoid

summary judgment.

Because Databricks cannot adduce any evidence of any contribution to Apache Spark that

necessarily infringes the asserted claims of the '610 patent, either alone or in combination with

Spark, Databricks' license defense based on contributions to Apache Spark fails as a matter of

law. The Court should therefore grant partial summary judgment in favor of R2 that Databricks

does not have a license to the '610 patent via contributions to Apache.

**VI.     CONCLUSION**

Databricks' license defense based on contributions to Apache is a half-baked defense

concocted a decade after the purportedly relevant events. Under California law, Databricks must

show that the Apache 2.0 license and/or the Apache ICLAs were signed by Yahoo. It cannot do

so. Databricks has attempted in this case to suggestively compile documents and testimony a

decade later in an attempt to show that Yahoo must have agreed to grant a license to the '610 patent. But suggestion is no substitute for the law, and the statute of frauds exists to prevent a party from trying to muddle history. The Court should grant summary judgment that Databricks does not have a license to any claims of the '610 patent based on contributions to Apache.

Even if the Court disagrees on the statute of frauds, it should still grant summary judgment because Databricks cannot show any contribution to Apache Spark that triggered a license to any claim of the '610 patent. Databricks has the burden of showing that a Yahoo contribution to Apache Spark necessarily infringes the asserted claims of the '610 patent, by itself or in combination with Spark. It cannot do so. Its license defense based on contributions to Apache Spark thus fails as a matter of law, entitling R2 to judgment.

Dated: March 25, 2025                      Respectfully Submitted,


By: */s/ Edward R. Nelson III*
Edward R. Nelson III
State Bar No. 00797142
Christopher G. Granaghan
State Bar No. 24078585
John P. Murphy
State Bar No. 24056024
Carder W. Brooks
State Bar No. 24105536
Nelson Bumgardner Conroy PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111
ed@nelbum.com
chris@nelbum.com
murphy@nelbum.com
carder@nelbum.com

COUNSEL FOR
PLAINTIFF R2 SOLUTIONS LLC

███████████████████████

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2025, a true and correct copy of the foregoing

document was served via electronic mail upon all counsel of record.

*/s/ Edward R. Nelson III*

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under

seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Edward R. Nelson III*