**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| R2 SOLUTIONS LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>DATABRICKS, INC.,<br><br>        Defendant. | Civil Action No. 4:23-cv-01147-ALM<br><br>**JURY TRIAL DEMANDED** |

**DATABRICKS, INC.'S MOTION FOR**
**SUMMARY JUDGMENT IN SUPPORT OF**
**DAMAGES *DAUBERT* MOTION AND INVALIDITY**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................1

II.   STATEMENT OF THE ISSUES.............................................................................1

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................2

      A.    The asserted patent................................................................................2

      B.    R2 admitted that Hadoop meets the requirements of the asserted claims...............2

IV.   ARGUMENT ..............................................................................................................3

      A.    The Court should grant partial summary judgment that Hadoop
            practices the asserted claims in support of Databricks' *Daubert* motion ...............3

      B.    The Court should grant summary judgment of invalidity based on R2's
            admissions that Hadoop is prior art and that it meets the asserted claims...............7

V.    CONCLUSION.........................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Leader Techs., Inc. v. Facebook, Inc.*,
770 F. Supp. 2d 686 (D. Del. 2011) *aff'd*, 678 F.3d 1300 (Fed. Cir. 2012) .........................8, 9

*Oyster Optics, LLC v. Alcatel-Lucent USA, Inc.*,
816 F. App'x 438 (Fed. Cir. 2020) ....................................................................................6

*R2 Solutions LLC v. JP Morgan Chase & Co.*,
No. 21-cv-00174 (E.D. Tex.) ...................................................................................2, 3, 8, 9

*Vanmoor v. Wal-Mart Stores, Inc.*,
201 F.3d 1363 (Fed. Cir. 2000)........................................................................................6, 9

**TABLE OF EXHIBITS[1]**

| No. | Exhibit |
|-----|---------|
| 1 | U.S. Patent No. 8,190,610 (the "'610 patent") |
| 2 | Excerpts of the Expert Report of William Davis Concerning Infringement of U.S. Patent No. 8,190,610 ("Davis Op.") |
| 3 | Excerpts of the Rebuttal Expert Report of William Davis Concerning the Validity of U.S. Patent No. 8,190,610 ("Davis Reb.") |
| 4 | Excerpts of *R2 Solutions LLC v. JP Morgan Chase & Co.*, No. 21-cv-00174 (E.D. Tex.), Dkt. 1 ("JP Morgan Complaint") |
| 5 | Infringement contentions served by R2 in *R2 Solutions LLC v. JP Morgan Chase & Co.*, No. 21-cv-00174 (E.D. Tex.) (R2_DB_065074 - R2_DB_065093) ("JP Morgan Contentions") |
| 6 | Excerpts of Transcript of the March 27, 2025 Deposition of Bill Davis ("Davis Dep. (Day 2)") |
| 7 | |
| 8 | |
| 9 | |
| 10 | Excerpts of Expert Report of Jim W. Bergman ("Bergman Rep.") |
| 11 | Excerpts of Opening Expert Report of Dr. Jon Weissman. ("Weissman Op.") |
| 12 | Excerpts of Transcript of the March 25, 2025 Deposition of Bill Davis ("Davis Dep. (Day 1)") |

---

[1] Each of the exhibits listed in this table, Exhibits 1-12, is attached to the Declaration of Vigen Salmastlian.

## I.     INTRODUCTION

Databricks files this motion for summary judgment in support of Databricks' concurrently filed *Daubert* motion, and in support of invalidity.  As explained in Databricks' *Daubert*, R2's damages expert Jim Bergman's apportionment analysis compares the accused Spark functionality in the Databricks Data Intelligence Platform to what he identifies as the "next-best alternative"— an open-source framework called Apache Hadoop ("Hadoop").  Mr. Bergman argues that Spark has certain benefits over Hadoop because Spark purportedly uses the asserted patent in this case— U.S. Patent No. 8,190,610 ("'610 patent")—and Hadoop does not.  But Mr. Bergman's analysis is flawed because R2 admitted in a previous case against JP Morgan that Hadoop practices the asserted claims of the '610 patent.  As explained in Databricks' *Daubert*, because R2 contends that both Spark and Hadoop practice the '610 patent, any benefits Spark has over Hadoop cannot be a result of the '610 patent, and thus, Mr. Bergman's opinions should be excluded.  In this motion, Databricks asks that the Court grant partial summary judgment that Hadoop practices the asserted claims based on R2's admissions that Hadoop meets the requirements of the asserted claims. Additionally, the asserted claims are invalid in view of Hadoop version 0.1.0, which was released April 1, 2006, before the earliest priority date of the '610 patent.  R2's technical expert, Mr. Davis, admits that Hadoop 0.1.0 is prior art. And he does not dispute that Hadoop 0.1.0 includes all the same functionality that R2 relied on to allege infringement based on Hadoop in the JP Morgan case.  Thus, the Court should also grant summary judgment of invalidity.

## II.     STATEMENT OF THE ISSUES

1.     Whether R2 has any evidence sufficient to raise a genuine dispute of material fact that Apache Hadoop does not practice asserted claims 1, 5, 17, and 21 of the '610 patent given R2's admissions that it meets each of the asserted claims.

2. Whether R2 has any evidence sufficient to raise a genuine dispute of material fact that Apache Hadoop version 0.1.0 renders asserted claims 1, 5, 17, and 21 of the '610 patent invalid given R2's admissions that it is prior art and that Hadoop meets each of the asserted claims.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The asserted patent

1. R2 asserts claims 1, 5, 17, and 21 of the '610 patent (Ex. 1).  (Ex. 2, Davis Op., ¶¶ 36-37.)  The '610 patent has a priority date of October 5, 2006.  (Ex. 3, Davis Reb., ¶ 45.)

2. The '610 patent is entitled "MapReduce for Distributed Database Processing," and relates to an "enhanced MapReduce programming methodology."  (Ex. 1, '610 patent, at Title, 1:42-43.)  MapReduce is a prior art "programming methodology to perform parallel computations over distributed (typically, very large) data sets" using two functions, map and reduce.  (*Id.* at 1:6-7, 1:17-20.)  As the patent explains, a "'map' function maps key-value pairs to new (intermediate) key-value pairs" and a "'reduce' function represents all mapped (intermediate) key-value pairs sharing the same key to a single key-value pair or a list of values."  (*Id.* at 1:17-20.)  In prior art MapReduce, it was purportedly "impractical to perform joins over two relational tables that have different schemas" such as "'Employee' table 302 and [] 'Department' table 304" of Figure 3.  (*Id.* at 3:19-25.)  And in the purportedly improved MapReduce of the '610 patent, "an input data set is treated as a plurality of grouped sets of key/value pairs" which allows "map processing [to be] carried out independently on two or more related datasets (e.g., related by each being characterized by a schema with a key in common)" and "intermediate results of the map processing (key/value pairs)…are processed together in a single reduce function."  (*Id.* at 1:31-40.)

### B. R2 admitted that Hadoop meets the requirements of the asserted claims

3. In *R2 Solutions LLC v. JP Morgan Chase & Co.*, No. 21-cv-00174 (E.D. Tex.), R2's complaint alleged that JP Morgan's "big data analytics system built on the Apache Hadoop

███████████████████████████████████

framework" infringed claims 1–5, 17–21, 33–34, and 40–41 of the '610 patent. (Ex. 4, JP Morgan Complaint, ¶ 40.) And R2's infringement contentions in that case relied exclusively on Hadoop documents as evidence that asserted claims 1 and 17 were infringed. (Ex. 5, JP Morgan Contentions; Ex. 6, Davis Dep. (Day 2), 66:2-10.)

4.    █████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

5.    The JP Morgan Contentions and ████████████ do not accuse a specific version of Hadoop of meeting the asserted claims. (Exs. 5, 7-9.) The vast majority of cited Hadoop documents do not identify any Hadoop version number, while others refer to Hadoop 2.8.0. (*Id.*)

## IV.    ARGUMENT

### A.    The Court should grant partial summary judgment that Hadoop practices the asserted claims in support of Databricks' *Daubert* motion

R2's damages expert Mr. Bergman argues that the Spark functionality R2 accuses has certain benefits over Hadoop because Spark purportedly uses the '610 patent, while Hadoop does not. (Ex. 10, Bergman Rep., ¶¶ 107-108.) But as explained below, R2 previously accused Hadoop of practicing each of the asserted claims. Thus, based on R2's admissions, the Court should grant partial summary judgment that Hadoop meets the requirements of the asserted claims.

In the *JP Morgan* case, R2's complaint accused JP Morgan's "big data analytics system built on the Apache Hadoop framework" of infringing certain claims of the '610 patent, including claims 1, 5, 17, and 21 that R2 asserts in this case. (Ex. 4, JP Morgan Complaint, ¶ 40.) R2 then alleged in its infringement contentions that Hadoop met every requirement of claims 1 and 17. (Ex. 1, '610 patent, claims 1, 17.) For example, as shown below, R2 alleged that the Hadoop Distributed File System (HDFS) met the requirements of claim 1 of "processing data of a data

set" and performing "mapping and reducing operations" over "a distributed system." (Ex. 5, JP

Morgan Contentions, R2_DB_065079, 5087.) R2 alleged that Hadoop's ability to "split[] the input

data-set in to independent chunks" met the "partitioning" step of claims 1 and 17. (*Id.* at

R2_DB_065080, 5091.) R2 alleged that Hadoop's "Mapper" met the "map" step required by

claims 1 and 17. (*Id.* at R2_DB_065081, 5091.) And R2 alleged that Hadoop's "Reducer" met the

"reduce" step required by claims 1 and 17. (*Id.* at R2_DB_065084-5086, 5092-5093.)

Chase Big Data System

Apache Hadoop, software which Chase uses, runs on a distributed system. Thus, Chase performs a method of processing data across a distributed system.

The Apache Hadoop framework is composed of the following modules

1. Hadoop Common: contains libraries and utilities needed by other Hadoop modules
2. Hadoop Distributed File System (HDFS): a distributed file-system that stores data on the commodity machines, providing very high aggregate bandwidth across the cluster
3. Hadoop YARN: a resource-management platform responsible for managing compute resources in clusters and using them for scheduling of users' applications
4. Hadoop MapReduce: a programming model for large scale data processing

All the modules in Hadoop are designed with a fundamental assumption that hardware failures (of individual machines, or racks of machines) are common and thus should be automatically handled in software by the framework. Apache Hadoop's MapReduce

Sachin P. Bappalige, "An introduction to Apache Hadoop for big data," opensource.com (Aug. 26, 2014), *available at* https://opensource.com/life/14/8/intro-apache-hadoop-big-data.

Chase Big Data System

The Method performed by the Chase system includes partitioning the data of each one of the data groups into a plurality of data partitions that each have a plurality of key-value pairs and providing each data partition to a selected one of a plurality of mapping functions that are each user-configurable to independently output a plurality of lists of values for each of a set of keys found in such map function's corresponding data partition to form corresponding intermediate data for that data group and identifiable to that data group.

In Chase's MapReduce framework, the input data is partitioned into independent chunks (i.e., a plurality of data partitions), which are processed by Mapper functions.

A MapReduce *job* usually splits the input data-set into independent chunks which are processed by the *map tasks* in a completely parallel manner. The framework sorts the outputs of the maps, which are then input to the *reduce tasks*. Typically both the input and the output of the job are stored in a file-system. The framework takes care of scheduling tasks, monitoring them and re-executes the failed tasks.

MapReduce Tutorial, *available at* http://hadoop.apache.org/docs/current/hadoop-mapreduce-client/hadoop-mapreduce-client-core/MapReduceTutorial.html.

4

███████████████████████

> **Chase Big Data System**
>
> The Method performed by the Chase system includes partitioning the data of each one of the data groups into a plurality of data partitions that each have a plurality of key-value pairs and ==providing each data partition to a selected one of a plurality of mapping functions== that are each user-configurable to independently output a plurality of lists of values for each of a set of keys found in such map function's corresponding data partition to form corresponding intermediate data for that data group and identifiable to that data group.
>
> As key-value pairs are read from the RecordReader they are passed to the configured ⊙ Mapper. The user supplied Mapper does whatever it wants with the input pair and calls ⊙ OutputCollector.collect with key-value pairs of its own choosing. The output it generates must use one key class and one value class. This is because the Map output will be written into a SequenceFile which has per-file type information and all the records must have the same type (use subclassing if you want to output different data structures). The Map input and output key-value pairs are not necessarily related typewise or in cardinality.
>
> ASF Infrabot, "HadoopMapReduce," Dashboard (July 9, 2019), *available at* https://cwiki.apache.org/confluence/display/HADOOP2/HadoopMapReduce.
> The Mapper function maps the key-value pairs to form intermediate key-value pairs.

> **Chase Big Data System**
>
> Chase's Big Data System further performs the step of ==reducing the intermediate data for the data groups to at least one output data group==, including processing the intermediate data for each data group in a manner that is defined to correspond to that data group, so as to result in a merging of the corresponding different intermediate data based on the key in common.
>
> The Reducer function reduces the intermediate values into a smaller set of values. This function operates in three phases: (1) Shuffle; (2) Sort; and (3) Reduce. The Shuffle and Sort phases operate on the output of various Mappers and group data before the final Reduce phase based on a common key.
>
> > **Reducer**
> >
> > Reducer reduces a set of intermediate values which share a key to a smaller set of values.
> >
> > The number of reduces for the job is set by the user via Job.setNumReduceTasks(int).
> >
> > Overall, Reducer implementations are passed the Job for the job via the Job.setReducerClass(Class) method and can override it to initialize themselves. The framework then calls reduce(WritableComparable, Iterable<Writable>, Context) method for each <key, (list of values)> pair in the grouped inputs. Applications can then override the cleanup(Context) method to perform any required cleanup.
>
> MapReduce Tutorial, *available at* http://hadoop.apache.org/docs/current/hadoop-mapreduce-client/hadoop-mapreduce-client-core/MapReduceTutorial.html.

(Ex. 5, JP Morgan Contentions, R2_DB_065079, 5080-81, 5084.)  R2's technical expert Mr. Bill Davis admitted that these JP Morgan Contentions identified only "Hadoop documentation [] as evidence" of infringing claims 1 and 17.  (Ex. 6, Davis Dep. (Day 2), 67:12-13.)  In fact, for claims 1 and 17, Mr. Davis "d[id]n't see any" "evidence that is not disclosed in Hadoop." (*Id.* at 70:24-71:3; *see also id.* at 78:17-21, 80:18-81:1 (each confirming same).)

Moreover, R2's ████████████████ confirmed that Hadoop meets the asserted claims. ████████████████████████████████████ Indeed, ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

5

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████  Mr. Davis admitted these "claim chart analys[e]s" "show[]" how aspects of Apache Hadoop meet elements of claim 1 of the '610 patent."  (Ex. 6, Davis Dep. (Day 2), 57:11-17; *id.* at 54:5-20, 58:15-22, 59:16-60:3.)

R2's prior infringement allegations and claim charts are admissions that Hadoop meets the requirements of the asserted claims. *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000).  In *Vanmoor*, the Federal Circuit affirmed the district court's grant of summary judgment of invalidity based on similar admissions.  Plaintiff in that case accused caulking cartridges of infringing its asserted patent, but the cartridges were manufactured, sold, and used before the patent's priority date.  201 F.3d at 1366. The Federal Circuit held that defendants' burden to prove invalidity was "satisfied by [plaintiff's] allegation that the accused cartridges infringe the [asserted] patent." *Id.*  As in *Vanmoor*, R2 accused Hadoop of infringing each of the claims it now asserts, and both R2 ████████████  prepared claim charts mapping Hadoop to the requirements of the asserted claims.  (Exs. 5, 7-9.)  It is therefore undisputed that Hadoop meets the asserted claims of the '610 patent.  *Vanmoor*, 201 F.3d at 1366; *see also Oyster Optics, LLC v. Alcatel-Lucent USA, Inc.*, 816 F. App'x 438, 445 (Fed. Cir. 2020) (the infringement contentions served by the plaintiff in a prior case alone "served to satisfy [the defendants'] burden of establishing that the [product at issue] substantially embod[ied] the patented invention by embodying its essential features").  The Court should therefore grant partial summary judgment that Hadoop meets the requirements of the asserted claims of the '610 patent.

R2 may argue that its JP Morgan Contentions "are not accusations of patent infringement against open-source Hadoop, but are contentions against JPMorgan's 'Big Data Analytics system'

based on publicly available information about the system some of which relates to Hadoop." (Ex. 3, Davis Reb., ¶ 86.)  But the JP Morgan Contentions *only* mapped open-source Hadoop and publicly available Hadoop documents to the asserted claims in this case. (Ex. 6, Davis Dep. (Day 2), 65:1-20; *id.* at 66:9-10, 70:24-71:3.)  The JP Morgan Contentions *did not* map any "Big Data Analytics system."  In fact, those contentions are so bereft of any disclosure unique to the "Big Data Analytics system" that Mr. Davis testified he had "no idea" what it is after reviewing the claim charts purportedly accusing it of infringement.[2]  (Ex. 6, Davis Dep. (Day 2), 66:9-12.)

### B.    The Court should grant summary judgment of invalidity based on R2's admissions that Hadoop is prior art and that it meets the asserted claims

R2's prior infringement allegations mapping Hadoop to the asserted claims also confirm that prior art Hadoop 0.1.0 meets each asserted claim.  Mr. Davis admits that "Hadoop was prior art to [the '610] patent" and, more specifically, that "Hadoop 0.1.0 [was] released April 1, 2006," before the October 5, 2006 priority date of the asserted patent.  (Ex. 6, Davis Dep. (Day 2), 19:24-20:4, 25:1-5.)  There is also no dispute that prior art Hadoop included all the same functionality that R2 ███████ admitted meets the asserted claims in the JP Morgan Contentions and the ████████████, including the "distributed system," "partitioning," "map," and "reduce" claim requirements.  (Ex. 1, '610 patent, claims 1, 17.)  Specifically, prior art Hadoop 0.1.0 (1) included the Hadoop Distributed File System that R2 ███████ admitted meets the "distributed system" requirements of claim 1  (Ex. 11, Weissman Op., ¶¶ 290-295, 473-475, 502); (2) "split" input data into a number of chunks as R2 ███████ admitted meet the "partitioning" step of

---

[2] R2 may also argue that the JP Morgan Contentions are not limited to Hadoop because they cite Spark documentation as well.  But the only non-Hadoop evidence cited is identified for only dependent claim 4—which is not asserted in this case—and "reference[d] Hadoop."  (Ex. 5, JP Morgan Contentions, R2_DB_065088-89; Ex. 6, Davis Dep. (Day 2), 70:1-23.)  As Mr. Davis admitted, for the asserted claims in this case, he "d[id]n't see any" "evidence that is not disclosed in Hadoop." (Ex. 6, Davis Dep. (Day 2), 69:9-12, 70:24-71:3.)

claims 1 and 17 (*id.* at ¶¶ 316-321, 505); (3) included the "Mapper" R2 ▮▮▮▮ admitted meets the "map" step of claims 1 and 17  (*id.* at ¶¶ 341-342, 360-361, 376-377, 395-397,418-419, 506-510); and included the "Reducer" R2 ▮▮▮▮ admitted meets the "reduce" step of claims 1 and 17 (*id.* at ¶¶ 443-444, 462-463, 511-512).  Because R2 admitted the same Hadoop functionality "practices the claimed invention," that "is sufficient to satisfy [Databricks'] burden that the product anticipates the claim."  *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 716 (D. Del. 2011) *aff'd*, 678 F.3d 1300 (Fed. Cir. 2012).

In *Leader*, plaintiff served interrogatory responses identifying its product as practicing the asserted claims, without limiting its response to any specific version of the product.  *Leader*, 678 F.3d at 1306.  During deposition, plaintiff's witness who verified both interrogatory responses "could not identify any iteration of the [] product that did not fall within the scope of the claims of the [asserted] patent."  *Id.*   The district court held that these admissions supported the jury's invalidity verdict that plaintiff's product practices the asserted claims.  *Id.* at 1306-07.  The Federal Circuit affirmed this ruling because plaintiff "did not qualify its interrogatory responses" by "specify[ing] any date ranges" or "identify[ing] [specific] versions or builds" of its product that it admitted practiced the patent, and plaintiff's witness who verified the interrogatory responses "could not identify a single instance" of the product that fell outside the scope of the patent's claims.  *Id.* at 1306.

R2's admissions similarly render the asserted claims of the '610 patent invalid.  As in *Leader*, R2's complaint in *JP Morgan* accused Hadoop of infringing claims 1, 5, 17, and 21 asserted in this case, and then R2's infringement contentions accused Hadoop of infringing asserted claims 1 and 17.  (Ex. 4, JP Morgan Complaint, ¶ 40; Ex. 5, JP Morgan Contentions.)  Also as in *Leader*, R2 did not limit its infringement claim to a specific version of Hadoop.  (Ex. 5, JP Morgan Contentions; Ex. 4, JP Morgan Complaint, ¶ 40.)  R2's expert Mr. Davis also admitted

that Hadoop 0.1.0 is prior art to the asserted patent.  And he has not identified even a single Hadoop feature accused in the *JP Morgan* case that was not present in prior art Hadoop 0.1.0.  (*See* Ex. 6, Davis Dep. (Day 2), 26:7-31:2; *see also* Ex. 12, Davis Dep. (Day 1), 242:23-249:13.)  Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮ confirm R2's admissions in the *JP Morgan* case. There is no material dispute of fact that prior art Hadoop 0.1.0 meets the requirements of the asserted claims in this case, and thus, the Court should grant summary judgment of invalidity. *Leader*, 678 F.3d at 1306-1308 (Fed. Cir. 2012); *see also Vanmoor*, 201 F.3d at 1366.

Any attempt by R2 to convince the Court to disregard its admissions in the *JP Morgan* case ▮▮▮▮▮▮▮ admissions in the ▮▮▮▮▮▮▮▮▮ should fail. Although Mr. Davis provides validity opinions in this case, that does not change the fact that he admitted that Hadoop meets requirements of the asserted claims. Indeed, Mr. Davis admitted that "Hadoop, before October 2006, could join the all employee and all department tables of Figure 3 of the '610 patent," which are data groups with different schema.  (Ex. 12, Davis Dep. (Day 1), 249:9-13.)

Thus, it is not surprising that Mr. Davis "do[es]n't dispute" that prior art Hadoop discloses the preambles of claims 1 and 17. (Ex. 6, Davis Dep. (Day 2), 26:17-23, 28:25-29:4.)  He "do[es]n't dispute" that prior art "Hadoop discloses partitioning the data of each one of the data groups into a plurality of data partitions that each have a plurality of key-value pairs" as required by claims 1 and 17.  (*Id.* at 26:25-27:5, 29:10-15; *see also* Ex. 12, Davis Dep. (Day 1), 243:15-23.)  Nor does Mr. Davis dispute that prior art Hadoop meets the "map" step of claims 1 and 17, which requires "providing each data partition to a selected one of a plurality of mapping functions that are each user configurable to independently output a plurality of lists of values for each of a set of keys found in such map function's corresponding data partition."  (Ex. 6, Davis Dep. (Day 2), 26:7-15, 29:17-25; *see also* Ex. 12, Davis Dep. (Day 1), 242:23-243:9.)  Mr. Davis "do[es]n't dispute" that prior art "Hadoop discloses the intermediate data identifiable to that data group" as claims 1 and

17 require.  (Ex. 6, Davis Dep. (Day 2), 27:17-21, 30:2-6.)  He "do[es]n't dispute" that prior art "Hadoop discloses the different schema and corresponding different intermediate data have a key in common."  (*Id.* at 27:23-28:2, 30:8-13; *see also* Ex. 12, Davis Dep. (Day 1), 246:2-16.)  He "do[es]n't dispute" that prior art "Hadoop discloses reducing the intermediate data for the data groups to at least one output data group" as the asserted claims require.  (Ex. 6, Davis Dep. (Day 2) at 28:4-8, 30:15-20; *see also* Ex. 12, Davis Dep. (Day 1), 245:2-4.)  And Mr. Davis "do[es]n't dispute" that the "reduce" step in prior art Hadoop "result[s] in a merging of the corresponding different intermediate data based on the key in common" as recited in the asserted independent claims.  (Ex. 6, Davis Dep. (Day 2), 28:10-15, 30:22-31:2; *see also* Ex. 12, Davis Dep. (Day 1), 245:9-13.)  "And for claim 1 [he] do[es]n't dispute that [prior art] Hadoop discloses wherein the mapping and reducing operations are performed by a distributed system."  (Ex. 6, Davis Dep. (Day 2), 28:17-21.)

Mr. Davis's attempts to distinguish Hadoop from the asserted claims rely on features that he admits are not recited in the claims.  For example, Mr. Davis opines that "Hadoop reducers don't meet claims 1 and 17 because they receive a single-output stream from the mapping phase." (Ex. 6, Davis Dep. (Day 2), 44:25-45:4; Ex. 3, Davis Reb., ¶ 75.)  But Mr. Davis conceded that the asserted claims do not "require any specific number of streams of processing."  (Ex. 12, Davis Dep. (Day 1), 199:4-14.)  Similarly, Mr. Davis opines that "Hadoop reducers don't meet claims 1 and 17 because [the] Hadoop reduce phase must take [a] *single iterator* of values per key." (Ex. 6, Davis Dep. (Day 2), 44:19-23; Ex. 3, Davis Reb., ¶ 75.)  But again Mr. Davis conceded that "[c]laim 1 doesn't require iterators at all," much less a specific "number of iterators."  (Ex. 12, Davis Dep. (Day 1), 198:23-199:7.)

## V.    CONCLUSION

For the foregoing reasons, Databricks respectfully requests that the Court grant this motion.

Dated: April 10, 2025                                    Respectfully submitted,

                                                        /s/ Michael J. Sacksteder
                                                        Michael J. Sacksteder
                                                        CA Bar No. 191605 (Admitted E.D. Texas)
                                                        Email: msacksteder@fenwick.com
                                                        Gregory Sefian
                                                        CA Bar No. 341802 (Admitted *Pro Hac Vice*)
                                                        Email: gsefian@fenwick.com
                                                        S. Emma Lee
                                                        CA Bar No. 344074 (Admitted *Pro Hac Vice*)
                                                        Email: emma.lee@fenwick.com
                                                        **FENWICK & WEST LLP**
                                                        555 California Street, 12th Floor
                                                        San Francisco, CA 94104
                                                        Telephone:    415.875.2300
                                                        Facsimile:    415.281.1350

                                                        Vigen Salmastlian
                                                        CA Bar No. 276846 (Admitted E.D. Texas)
                                                        Email: vsalmastlian@fenwick.com
                                                        **FENWICK & WEST LLP**
                                                        801 California Street,
                                                        Mountain View, CA 94041
                                                        Telephone:    650.988.8500
                                                        Facsimile:    650.938.5200

                                                        Dargaye Churnet
                                                        CA Bar No. 303659 (Admitted E.D. Texas)
                                                        Email: dchurnet@fenwick.com
                                                        **FENWICK & WEST LLP**
                                                        730 Arizona Ave, 1st Floor
                                                        Santa Monica, CA 90401
                                                        Telephone:    310.434.5400

Jessica M. Kaempf
WA Bar No. 51666 (Admitted E.D. Texas)
Email: jkaempf@fenwick.com
Jonathan G. Tamimi
WA Bar No. 54858 (Admitted E.D. Texas)
Email: jtamimi@fenwick.com
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:     206.389.4510
Facsimile:     206.389.4511

Jennifer Truelove
Texas Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: 903.923.9000
Facsimile: 903.923.9099

Derron R. Dacus
Texas Bar No. 00790553
Email: ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 32, Suite 430
Tyler, Texas 75701
Telephone: 903.705.1117

*Attorneys for Defendant*
*Databricks, Inc.*

**CERTIFICATE OF AUTHORIZATION TO SEAL**

Pursuant to Local Rule CV-5(a)(7)(B) that I am authorized to file the foregoing document under seal pursuant to Protective Order (Dkt. 61) because this document references Designated Material.

*/s/ Michael J. Sacksteder*
Michael J. Sacksteder

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 10, 2025, a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  Additionally, I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of these documents via electronic mail per Local Rule CV-5.

*/s/ Michael J. Sacksteder*
Michael J. Sacksteder