IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| R2 Solutions LLC, <br><br> Plaintiff, <br><br> v. <br><br> Databricks, Inc., <br><br> Defendant. | Civil Action No. 4:23-cv-01147-ALM <br><br> Jury Trial Demanded |

**PLAINTIFF R2 SOLUTIONS LLC'S RESPONSE IN OPPOSITION TO DATABRICKS' MOTION FOR SUMMARY JUDGMENT IN SUPPORT OF DAMAGES *DAUBERT* AND INVALIDITY**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. RESPONSE TO DATABRICKS' STATEMENT OF ISSUES ......................................... 1

III. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ...................... 1

IV. ARGUMENT .................................................................................................................. 2

    A. Legal Standard .................................................................................................... 3

    B. Fact Issues Exist Regarding Whether Hadoop Practices or Anticipates the Asserted Claims ................................................................................................... 4

        1. Databricks cannot rely on the *Vanmoor* exception, and it failed to establish by clear and convincing evidence that Hadoop practices or anticipates the asserted claims .................................................................................................... 4

        2. There is, at the very least, a genuine issue of fact regarding whether Hadoop practices or anticipates the asserted claims. ...................................................... 6

V. CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Leader Techs., Inc. v. Facebook, Inc.*,
  770 F. Supp. 2d 686 (D. Del. 2011) *aff'd*, 678 F.3d 1300 (Fed. Cir. 2012) ............................... 9

*Metaswitch Networks, Ltd. v. Genband US LLC*,
  No. 2:14-cv-744-JRG-RSP, 2016 U.S. Dist. LEXIS 25420 (E.D. Tex. Mar. 1, 2016) ........... 3, 4

*Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*,
  No. 2:20-cv-00428-DGE, 2024 U.S. Dist. LEXIS 167536 (W.D. Wash. Sep. 17, 2024) .. 3, 4, 6

*NobelBiz, Inc. v. Glob. Connect, L.L.C.*,
  No. 6:12-cv-244 (Lead), 2015 U.S. Dist. LEXIS 179377 (E.D. Tex. July 16, 2015) ............. 3, 6

*Vanmoor v. Wal-Mart Stores, Inc.*,
  201 F.3d 1363 (Fed. Cir. 2000) .................................................................................... 3, 4, 5, 6

## I. INTRODUCTION

Databricks' Motion is convoluted. It purports to ask the Court for two separate rulings: first, that Hadoop *practices* the asserted claims; and second, that Hadoop *invalidates* the asserted claims. *See* Mot. at 3, 7. While Databricks splits up these two seemingly related questions, Databricks makes the same basic argument for each—that R2 somehow admitted that Hadoop meets all limitations of the asserted claims. Databricks' argument misapplies case law and ignores the considerable factual record. Whether Hadoop practices or anticipates the claims is an issue for the jury, and the Court should deny summary judgment.

## II. RESPONSE TO DATABRICKS' STATEMENT OF ISSUES

Databricks' statement of the issues places the burden on the wrong party. Databricks bears the burden of proving invalidity by clear and convincing evidence. Thus, the issues are actually:

1. Whether Databricks has established by clear and convincing evidence that Hadoop practices asserted claims 1, 5, 17, and 21 of the '610 patent as a matter of law.

2. Whether Databricks has established by clear and convincing evidence that asserted claims 1, 5, 17, and 21 of the '610 patent are anticipated by Hadoop as a matter of law.

## III. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1. R2 does not dispute the facts that Databricks set forth in paragraph 1. But the remainder of Databricks' "undisputed facts" section twists the record and misstates or omits several key facts.

2. [redacted]

1



3. R2 also served infringement contentions in a previous case, *R2 Solutions LLC v. JP Morgan Chase & Co.*, No. 21-cv-00174 (E.D. Tex.). The contentions specifically alleged that "Chase has and continues to make, use, sell, offer for sale, and/or import the Big Data Analytics system built on the Apache Hadoop framework … that practices the steps of the methods described in the claims of [the '610 patent]." Ex. 7 (JP Chart) at 1. For support, the contentions cited documents and information available on JP Morgan's website, publicly-available information about Apache Spark, and publicly-available information about Apache Hadoop. *See id*.

IV.   **ARGUMENT**

Databricks' argument with respect to all asserted claims fails for two reasons. First, Databricks cannot rely on what is known as the "*Vanmoor* exception." In a typical invalidity analysis, a defendant shows anticipation by proving that an item of prior art discloses each and every element of a patent claim. Under the *Vanmoor* exception, a defendant may discharge its burden of proving invalidity simply by showing an identity between the accused product and prior

2

art. Databricks cannot make such a showing, and it has not otherwise shown that Hadoop practices each element of any asserted claim. Second, even if Databricks can rely on the *Vanmoor* exception, there is still a genuine issue of material fact that precludes summary judgment.

### A. Legal Standard

"To prove that a claim is anticipated ..., defendants must present clear and convincing evidence that a single prior art reference discloses, either expressly or inherently, each limitation of the claim." *Metaswitch Networks, Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 U.S. Dist. LEXIS 25420, at *20 (E.D. Tex. Mar. 1, 2016) (cleaned up). This generally requires "compar[ing] each element of the patentee's claims with the alleged prior art reference to produce clear and convincing evidence of anticipation." *Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, No. 2:20-cv-00428-DGE, 2024 U.S. Dist. LEXIS 167536, at *28 (W.D. Wash. Sep. 17, 2024) (citing *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000)); *see also NobelBiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-cv-244 (Lead), 2015 U.S. Dist. LEXIS 179377, at *12 (E.D. Tex. July 16, 2015) ("[T]o establish invalidity, Defendants must do more than merely compare the prior art and the accused products. Defendants must show that each element of the challenged claims is present in the prior art systems.").

However, "[t]here is a narrow exception," known as the *Vanmoor* exception. *Metaswitch*, 2016 U.S. Dist. LEXIS 25420, at *20. "When the defendant contends the patent is invalidated by the accused product itself, the patentee's infringement allegations operate as a concession that the accused product meets the limitations of the asserted claims." *Id.* (citing *Vanmoor*, 201 F.3d at 1366). This exception is "narrowly construed to require the defendant to allege and prove an identity between the accused product and the prior art," because not doing so "would impermissibly allow defendants to sidestep the rigorous standard of proof for invalidity—clear

3

and convincing evidence that the prior art discloses each limitation of the claim." *Id*. at *21 (internal quotations omitted).

      **B.    Fact Issues Exist Regarding Whether Hadoop Practices or Anticipates the Asserted Claims.**

           **1.    Databricks cannot rely on the *Vanmoor* exception, and it failed to establish by clear and convincing evidence that Hadoop practices or anticipates the asserted claims.**

Databricks is trying to "sidestep" its "rigorous standard of proof for invalidity" by misapplying the *Vanmoor* exception. *Id*.; *see also* Mot. at 6. Instead of "compar[ing] each element of the [asserted] claims with the alleged prior art reference [Hadoop] to produce clear and convincing evidence of anticipation" (*Nat'l Prods. Inc.*, 2024 U.S. Dist. LEXIS 167536, at *28), Databricks alleges that R2 conceded that Hadoop practices the asserted claims, relying solely on past claim charts from different cases and different negotiations involving different products. *See* Mot. at 6, 8. Databricks then cites *Vanmoor* and alleges that its job is done. *See id*. at 6. This fails for two reasons.

First, it is undisputed that Hadoop is not the accused product in this case, so the *Vanmoor* exception is inapplicable on its face. *See Metaswitch*, 2016 U.S. Dist. LEXIS 25420 at *21 ( "The *Vanmoor* exception . . . require[s] the defendant to allege and prove an identity between the accused product and the prior art) (emphasis added); *see also Nat'l Prods. Inc.*, 2024 U.S. Dist. LEXIS 167536 at *28 ("Unless the allegedly anticipating products are *also* the products accused of infringement ... the caselaw is clear that a defendant must compare each element of the patentee's claims with the alleged prior art reference to produce clear and convincing evidence of anticipation.") (emphasis in original). Databricks has not shown that there is an identity between its platform and Hadoop.

Second, even if the *Vanmoor* exception were expanded to encompass products accused in

4

other cases (which, to R2's knowledge, no court has done), R2 has never accused prior art Hadoop. The charts upon which Databricks relies cite *only* documents that *post*-date the '610 patent, and thus cannot constitute admissions that prior art Hadoop practices the asserted claims. In any event, the charts do not accuse Hadoop at all. In the JP Morgan contentions, R2 explicitly accused JP Morgan's "Big Data Analytics system" of infringement and indicated that it was "built on the Apache Hadoop framework," making clear that R2 was accusing something more than Hadoop (i.e., the system that was built on the Hadoop framework). Ex. 7 at 1. R2 then cited public Hadoop-related documents (which post-dated the patent) as evidence of R2's good faith basis to allege infringement, because R2 did not yet have JP Morgan's internal source code or documents. Ex. 7 at 1-17; Ex. 6 (Davis Reb.) at ¶ 86. And in the marketing charts, R2 made no accusations of infringement and identified a wide range of different functionalities for each potential licensee, including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See supra* Section III, ¶ 2; Ex. 1; Ex. 2; Ex. 3; Ex. 6 (Davis Reb.) at ¶¶ 85-86; Ex. 8 (Davis Depo., Day 2) at 204:20-205:11; *see also* Ex. 4 (Wooley Depo.) at 28:7-15, 29:2-19, 30:12-32:19, 122:4-123:15; Ex. 5 (Yudell Depo.) at 93:12-94:6; 138:12-25; 152:10-153:12. Put another way, even the evidence put forth by Databricks makes clear that Hadoop is not, and has never been, an accused product, so the *Vanmoor* exception is inapposite.

Even if Databricks could satisfy the *Vanmoor* exception via R2's claim charts, it could only do so for claims 1 and 17. Of the four asserted claims, the charts Databricks relies on map to only claims 1 and 17. They do not even *mention* claims 5 and 21.[1] R2 cannot possibly have "admitted"

---

[1] R2's JP Morgan contentions only map Chase's Big Data Analytics system against claims 1-2, 4, and 17-18; R2's marketing charts only address claim 1. *See generally* Exs. 1, 2, 3, and 7.

5

that Hadoop practices or invalidates claims 5 and 21 via its claim charts when it never charted them. *See generally* Exs. 1, 2, 3, and 7. Databricks attempts to bridge this evidentiary gap by arguing that R2 initially asserted claims 5 and 21 in its complaint against JP Morgan. *See* Mot. at 3 (citing ECF 116-6). But R2 *dropped* these claims and never mapped them. *See generally* Ex. 7.

Because Databricks cannot satisfy the *Vanmoor* exception, Databricks is required to do an element-by-element comparison of Hadoop with the asserted claims "to produce clear and convincing evidence of anticipation." *Nat'l Prods. Inc.*, 2024 U.S. Dist. LEXIS 167536, at *28. It has not done so. Indeed, Databricks failed to explain how Hadoop meets entire limitations, including, as just a few examples, "data groups," "different lists of values," "corresponding different intermediate data," and "processing the intermediate data for each data group in a manner that is defined to correspond to that data group." *See* Mot. at 3-10. Databricks also failed to consider the Court's constructions at all. At bottom, Databricks failed to do an element-by-element comparison of Hadoop with the asserted claims, or explain why each element is met.[2] It thus failed to prove invalidity by clear and convincing evidence. *NobelBiz, Inc.*, 2015 U.S. Dist. LEXIS 179377, at *12; *Nat'l Prods. Inc.*, 2024 U.S. Dist. LEXIS 167536, at *28.

### 2. There is, at the very least, a genuine issue of fact regarding whether Hadoop practices or anticipates the asserted claims.

Even assuming that Databricks has provided evidence to invoke the *Vanmoor* exception, R2 has nevertheless provided significant evidence that Hadoop does not practice or anticipate the asserted claims, which raises fact issues and precludes summary judgment. Mr. Davis dedicates over three-dozen paragraphs of his rebuttal report to explaining precisely why Databricks' Hadoop-based theories do not invalidate each of the asserted claims. *See* Ex. 6 (Davis Reb.) at ¶¶

---

[2] It bears mention that if Databricks truly believed that Hadoop anticipates the claims as a matter of law, it would have made an actual attempt to show how Hadoop teaches all claim limitations.

64-104. For example, he explains that Hadoop fails to teach the "different lists of values" limitation because it "requires that only a *single* list of values be output from the mapping phase to form a *single* intermediate set of data." *Id*. at ¶ 67. This is buttressed by his testimony, where he stated that "[t]he Hadoop System outputs a single list as you can kind of see from the output collector which only takes in a key-value pair. The way the patent talks about that, as in figure 1, is through a single consolidated list of key-value pairs that is called the intermediate data." Ex. 8 (Davis Depo., Day 2) at 203:10-15; *see also id*. at 203:18-22. As another example, Mr. Davis explains that intermediate data in Hadoop is "combined into a single list and processed identically in the reduce phase as one stream of data," and thus fails to teach the "processing the intermediate data for each data group in a manner that is defined to correspond to that data group" limitation. *Id*. at ¶¶ 74-78. Moreover, Mr. Davis dedicates several paragraphs of his opening report to explaining how the '610 patent overcomes issues with traditional MapReduce (e.g., Hadoop) to provide "performance, scalability, and reliability benefits" that are not available in "systems like Hadoop." Ex. 9 (Davis Op.) at ¶ 239; *see also id*. at ¶¶ 236-239, 41-57. Mr. Davis even expressly addresses the claim charts Databricks relies on, explaining how the charts never accused Hadoop of infringement or alleged that Hadoop meets any of the limitations of the asserted claims. *See* Ex. 6 (Davis Reb.) at ¶¶85-86; Ex. 8 (Davis Depo., Day 2) at 204:20-205:11. Put simply, there is significant evidence that Hadoop does not practice or anticipate the asserted claims.

The only evidence of anticipation that Databricks brings to bear is R2's past charts[3] and cherry-picked portions of Mr. Davis's testimony. With respect to the charts, Databricks repeats *ad nauseum* what "R2 alleged" therein. *See, e.g.*, Mot. at 3-5, 7-9. But, as discussed above, Databricks misstates what the charts actually say. The charts do not accuse prior art Hadoop of infringement.

---

[3] As discussed above, none of the charts even address claims 5 and 21.

They rely on documentation that post-dates the '610 patent and accuse proprietary systems, not Hadoop. Furthermore, even if the charts could be said to accuse Hadoop, they do not explain how Hadoop teaches every limitation and thus cannot provide a basis for summary judgment. For example, not a single one of the charts purport to explain how the charted systems "form corresponding intermediate data for that data group and identifiable to that data group." To the contrary, the charts simply recognize that mapper functions create intermediate key value pairs, which falls short of what the claims require. Ex. 7 at 7-8; Ex. 1 at 10; Ex. 2 at 9; Ex. 3 at 9. As another example, none of the charts explain how the charted systems output "different lists of values … for the corresponding different intermediate data." The charts just recognize that each mapping function generates different intermediate results, which again falls short of the claim language. Ex. 7 at 8-10; Ex. 1 at 14; Ex. 2 at 12; Ex. 3 at 12. At bottom, none of the charts explain how Hadoop meets each and every limitation of the asserted claims.

As to Mr. Davis's testimony, Databricks presents one red herring after another. For example, Databricks alleges that Mr. Davis "admitted that Hadoop meets requirements of the asserted claims" because he admitted that Hadoop could join two different tables. Mot. at 9. But the entire purpose of the patent was to *more efficiently* accomplish such joinders; that Hadoop could do a join in a different and less efficient manner is irrelevant as to whether it anticipates the claims. Ex. 9 (Davis Op.) at ¶¶ 236-239, 41-57; ECF 1-2 at 3:9-34. Databricks also hyper-focuses on functionality that Mr. Davis does not dispute is in Hadoop, such as partitioning, mapping and reducing, but then ignores what Mr. Davis explicitly stated is not taught by Hadoop. *See* Mot. at 9-10; *see also, e.g.,* Ex. 6 (Davis Reb.) at ¶¶ 64-104; Ex. 8 (Davis Depo., Day 2) at 203:10-15, 203:18-22. Databricks then mischaracterizes Mr. Davis's opinion and states that his "attempts to distinguish Hadoop from the asserted claims rely on features that he admits are not recited in the

claims." Mot. at 10. But this takes testimony out of context and turns a blind eye to what he actually explained in his report and deposition, namely, that Hadoop does not teach key limitations. *See, e.g.*, Ex. 6 (Davis Reb.) at ¶¶ 64-104; Ex. 8 (Davis Depo., Day 2) at 203:10-15, 203:18-22.

Finally, Databricks is wrong that the *Leader* case supports its anticipation argument. *See* Mot. at 8 (citing *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 716 (D. Del. 2011) *aff'd*, 678 F.3d 1300 (Fed. Cir. 2012)). *Leader* in fact supports denying Databricks' motion. In *Leader*, the patentee-plaintiff stated unequivocally in an interrogatory response that its own product was "covered" by the asserted patent and did not specify any particular version of its product that it was referring to. *Id.* at 717. At trial, a plaintiff witness testified that the product as it existed before the patent's priority date did *not* practice the patent. *See id.* at 717-720. Despite this testimony, the jury found that the patent was anticipated by the plaintiff's product, and the court upheld the verdict because "the combination of [the witness's] trial testimony (which the jury found non-credible), plus his seemingly conflicting deposition testimony (presented to the jury at trial), plus the interrogatory responses (which can reasonably be interpreted as an admission that the invention as ready for patenting prior to the critical date)" were sufficient to uphold the verdict. *Id.* at 720. Unlike the plaintiff in *Leader*, R2 has not made any statements that could be interpreted as admissions that Hadoop practices the asserted claims. And, in any event, *Leader* did not grant judgment as a matter of law based on any perceived admission but instead deferred to a jury verdict reached after weighing all of the evidence. That is, at the very least, what the Court should do here.

## V.   CONCLUSION

There is a genuine issue of fact regarding whether Hadoop practices or anticipates the asserted claims. Databricks' Motion should be denied.

| | |
|---|---|
| Dated: May 1, 2025 | Respectfully Submitted, |

By: <u>/s/ Carder W. Brooks</u>
Edward R. Nelson III
State Bar No. 00797142
Christopher G. Granaghan
State Bar No. 24078585
John P. Murphy
State Bar No. 24056024
Carder W. Brooks
State Bar No. 24105536
Nelson Bumgardner Conroy PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111
ed@nelbum.com
chris@nelbum.com
murphy@nelbum.com
carder@nelbum.com

COUNSEL FOR
PLAINTIFF R2 SOLUTIONS LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2025, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

<u>/s/ Carder W. Brooks</u>

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

<u>/s/ Carder W. Brooks</u>