**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| R2 Solutions LLC, | Civil Action No. 4:23-cv-01147-ALM |
| Plaintiff, | |
| v. | Jury Trial Demanded |
| | ██████████████████████ |
| Databricks, Inc., | █████████████ |
| Defendant. | |

**PLAINTIFF R2 SOLUTIONS LLC'S**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF**
**NO PRE-SUIT DAMAGES OR WILLFUL INFRINGEMENT**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................ 1

II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................... 1

III.   RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ...................... 1

IV.   LEGAL STANDARD.................................................................................................... 4

V.    ARGUMENT................................................................................................................ 4

        A.    Fact Issues Exist as to Whether the Databricks Subpoena Provided Actual Notice to Databricks of Its Infringements. ........................................................................ 4

        B.    Fact Issues Preclude Summary Judgment of No Willful Infringement. ................ 6

VI.   CONCLUSION............................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986). ................................................................................................ 4

*Bayer Healthcare LLC v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021) .................................................................................. 7

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001) ................................................................................ 6

*Georgetown Rail Equip. Co. v. Holland L.P.*,
  867 F.3d 1229 (Fed. Cir. 2017) ................................................................................ 8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) ........................................................................................... 7, 8

*Koshar v. Tigi Linea Corp.*,
  Civil Action No. 4:21-cv-280-SDJ-KPJ, 2022 U.S. Dist. LEXIS 49931 (E.D. Tex. Feb. 4, 2022)................................................................................................................ 2

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
  475 U.S. 574 (1986) .................................................................................................. 4

*Minton v. NASD*,
  336 F.3d 1373 (Fed. Cir. 2003)................................................................................. 4

*Polara Eng'g, Inc. v. Campbell Co.*,
  894 F.3d 1339 (Fed. Cir. 2018)................................................................................. 7

*R2 Solutions LLC v. American Airlines, Inc.*,
  Case No. 4:22-cv-00353 (E.D. Tex. Apr. 28, 2022) ................................................. 2

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
  127 F.3d 1462 (Fed. Cir. 1997)........................................................................... 4, 5, 6

*SRI Int'l, Inc. v. Cisco Sys.*,
  14 F.4th 1323 (Fed. Cir. 2021).............................................................................. 7, 8

*United States v. Diebold*,
  369 U.S. 654 (1962) .................................................................................................. 4

*Vulcan Eng'g Co. v. Fata Aluminum, Inc.*,
  No. 98-74495, 2000 U.S. Dist. LEXIS 22742 (E.D. Mich. Aug. 1, 2000) ............... 5

*WCM Industries, Inc. v. IPS Corporation*,
  721 Fed. Appx. 959 (Fed. Cir. 2018) ................................................................ 7, 8

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
  837 F.3d 1358 (Fed. Cir. 2016) ............................................................................ 8

*Wokas v. Dresser Indus.*,
  978 F. Supp. 839 (N.D. Ind. 1997) ...................................................................... 5

**Rules, Statutes, and Authorities**

35 U.S.C. § 287(a). ......................................................................................... 1, 3, 4, 5

Fed. R. Civ. P. 56(c) ............................................................................................. 4

## I.    INTRODUCTION

Databricks is not entitled to summary judgment of no pre-suit damages or no willful infringement. As to pre-suit damages, Databricks' argument fails because it had actual notice of its infringements under § 287(a). Databricks was served with a subpoena in connection with R2's previous litigation against American Airlines, Inc. The subpoena sought extensive technical information regarding the Databricks platform that is now accused in this lawsuit, inquired into Databricks' use of the accused platform, and requested licenses from Databricks covering the accused platform. Further, Databricks' corporate representative indicated in deposition that Databricks reviewed briefing in the American Airlines litigation which explicitly stated that R2 accused Databricks' systems and products of infringing the asserted patent. These are sufficient facts to put the question of pre-suit damages to the jury.

Regarding willful infringement, the aforementioned subpoena and Databricks' testimony make clear that that Databricks knew of its infringements. Nevertheless, in wanton disregard of R2's rights, Databricks generated hundreds of millions of revenue thereafter by intentionally and deliberately infringing the asserted patent. Indeed, the evidence shows that Databricks made no effort to investigate alternatives or otherwise avoid infringing acts.

## II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.      Whether there is a genuine dispute of material fact that R2 is entitled to pre-suit damages under 35 U.S.C. § 287(a).

2.      Whether there is a genuine dispute of material fact that Databricks willfully infringed or infringes the asserted patent.

## III.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Instead of providing a neutral explanation of the factual record, Databricks'

1

Statement of Undisputed Material Facts is argumentative and replete with mischaracterizations.

2.      On April 28, 2022, R2 filed suit against American Airlines, Inc. ("AA") styled *R2 Solutions LLC v. American Airlines, Inc.*, Case No. 4:22-cv-00353 (E.D. Tex. Apr. 28, 2022) (the "AA Litigation"), alleging infringement of the '610 patent. *See* ECF 1 at ¶24. On January 10, 2023, R2 served Databricks with a subpoena in connection with the AA Litigation (the "Databricks Subpoena"). Ex. 1. The subpoena specifically identified the '610 patent and sought materials and testimony regarding Databricks' systems and products that are now accused in this lawsuit. ECF 1 at ¶25; Ex. 1. The subpoena defined the term "Data Analytics Instrumentalities" to include "Databricks Lakehouse Platform, Delta Lake, Apache Spark, MLflow, Redash, [and] Delta Sharing," among other things. Ex. 1 at 6 and 31.

3.      On February 3, 2023, R2 filed a sealed motion to compel discovery in the AA Litigation, with a redacted, public version following on February 10, 2023. *See* Ex. 2. On February 17, 2023, AA filed a sealed opposition, with a redacted public version following on February 24, 2023. Ex. 3.[1] AA's public opposition specifically stated that "R2 argues American should have known that ***usage of Azure Databricks was accused*** because the infringement contentions accuse all instrumentalities associated with mapping and/or reducing functionalities, merging and/or joining data having different schemas, and any other similar functionality, plus the data analytics systems utilizing … Spark … and/or similar functionality." *Id.* at 8-9 (internal quotations omitted) (emphasis added).

---

[1] Exhibits 2 and 3 are documents that were filed in the public docket of this Court in *R2 Solutions LLC v. American Airlines, Inc.*, No. 4:22-cv-00353 (E.D. Tex.). R2 hereby requests the Court to take judicial notice of these filings to establish the fact of, and statements made in, such filings. *Koshar v. Tigi Linea Corp.*, Civil Action No. 4:21-cv-280-SDJ-KPJ, 2022 U.S. Dist. LEXIS 49931, at *7 (E.D. Tex. Feb. 4, 2022) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice") (internal citation omitted).

4.      R2 has maintained since the outset of this case that the Databricks Subpoena served as actual notice to Databricks of its infringements, substantiating both pre-suit damages and willful infringement. *See* ECF 1, ¶¶ 23-26. In its original Complaint, R2 alleged, "On January 10, 2023, R2 served Databricks with a subpoena in connection with [the AA Litigation]. The subpoena specifically identified the '610 patent and sought materials and testimony regarding Databricks' systems and products that are now accused in this lawsuit." *Id.* at ¶ 25. R2 further alleged that "Databricks has had knowledge of the '610 patent and its infringements since shortly after April 28, 2022, when R2 filed the [AA Litigation]," or at least "since being served with" the Databricks Subpoena. *Id*. at ¶ 26.

5.      On October 25, 2024, Databricks served R2 with a first set of interrogatories. Ex. 4. Interrogatory No. 8 focused entirely on marking. R2 responded that it was "unaware of any products marked with the patent number of the asserted patent." *Id.* at 12; ECF 118-6 at 25.

6.      Contrary to Databricks' mischaracterizations, R2's response to the marking interrogatory was not a wholesale disclaimer of compliance with § 287(a), which is evident from R2's complaint (discussed above) and other discovery responses. *See* Mot. at ¶ 2. For example, R2 made clear in the same set of responses that Databricks has been on notice of its infringements since being served with the Databricks Subpoena. Specifically, Interrogatory No. 16 sought "all facts supporting any contentions that Defendant had knowledge of the asserted patent and/or knowledge of alleged infringement." Ex. 4 at 15. R2 responded by recounting the facts related to the Databricks Subpoena. Ex. 5 at 14-15. R2 specifically alleged that the Databricks Subpoena identified "the '610 patent and sought materials and testimony regarding Databricks' systems and products that are now accused in this lawsuit." *Id*. R2 further alleged that based on the Databricks Subpoena, "Databricks has had knowledge of the '610 patent and ***its infringements*** since shortly

after April 28, 2022, when R2 filed the [AA Litigation]," or at least since being served with the Databricks Subpoena. *Id.* at 15 (emphasis added). Databricks is thus wrong that R2 made "no contention" of compliance with § 287(a). *See Id.* at 14-15; ECF 1 at ¶¶ 23-26.

## IV.    LEGAL STANDARD

Summary judgment is only appropriate when there is no genuine issue of material fact. *See Minton v. NASD*, 336 F.3d 1373, 1375-76 (Fed. Cir. 2003) (applying Fifth Circuit standards and citing Fed. R. Civ. P. 56(c)). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuinely disputed when "the evidence 'is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. When ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574. 587 (1986) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)).

## V.    ARGUMENT

### A.    Fact Issues Exist as to Whether the Databricks Subpoena Provided Actual Notice to Databricks of Its Infringements.

The Databricks Subpoena was sufficient to put Databricks on actual notice of its infringements. This has been R2's contention from the beginning. It has never been a requirement that notice under § 287(a) must make an unqualified charge of infringement. *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469-70 (Fed. Cir. 1997) (rejecting a defendant's argument that the notice was insufficient because the plaintiff failed to make "an unqualified charge of infringement and did not threaten [the defendant] with suit."). "[T]he purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer." *Id*.; *see also Vulcan*

4

*Eng'g Co. v. Fata Aluminum, Inc.*, No. 98-74495, 2000 U.S. Dist. LEXIS 22742, at *11 (E.D. Mich. Aug. 1, 2000) (quoting *Wokas v. Dresser Indus.*, 978 F. Supp. 839, 845 (N.D. Ind. 1997)).

The Databricks Subpoena readily satisfies the Federal Circuit's requirement under *SRI*. It defined the term "Data Analytics Instrumentalities" to include the same Databricks systems and products that are now accused in this suit, i.e., the Databricks platform and Databricks' products and systems that implement Apache Spark. Ex. 1 at 6, 31. The Databricks Subpoena included document requests and deposition topics seeking extensive materials (including source code) regarding the operation, functionality, and components of the "Data Analytics Instrumentalities." *See*, *e.g.*, *id*. at 8-9 (Topics 2, 4, and 8). Specifically, Topic 4 sought "[d]ocuments sufficient to show how the Data Analytics Instrumentalities process data having different schema, such as to accomplish merger or joining of such data having different schema," and Topic 8 sought "[a]ll source code related to the Data Analytics Instrumentalities." The Databricks Subpoena also sought information about how AA *and Databricks* used the Data Analytics Instrumentalities, as well as relevant licenses in Databricks' possession. *Id*. at 9 (Topics 13 and 15). It is undisputed that Databricks reviewed the subpoena in its entirety—it substantively responded. Ex. 6. Put simply, the Databricks Subpoena explicitly sought technical information about the platform and functionality now accused in this case, information about how Databricks used the platform and functionality now accused in this case, and Databricks' licenses (if any) covering the platform and functionality now accused in this case. A reasonable jury could conclude from the Databricks Subpoena that R2 believed Databricks to be an infringer, and Databricks was sufficiently notified, accordingly. *See SRI*, 127 F.3d at 1469-70.

Additional facts bolster R2's position that the Databricks Subpoena provided Databricks adequate notice under § 287(a). *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345-47 (Fed. Cir.

5

2001) (holding that a letter constitutes adequate notice under § 287(a) considering the context of other communications and events). Shortly after serving the Databricks Subpoena, R2 filed a motion to compel in the AA litigation, to which AA responded. *See* Exs. 2, 3. Databricks and its counsel reviewed the public filings in the AA Litigation, (*see* Ex. 7 at 59:24-60:14, 63:3-64:3, 80:21-82:4), including the redacted version of AA's response to the motion to compel which stated that "R2 argues American should have known that ***usage of Azure Databricks was accused*** because the infringement contentions accuse … data analytics systems utilizing, at least in part, Apache Hadoop, Hive, Spark, Teradata Vantage, and/or similar functionality." Ex. 3 at 8-9. This language unequivocally shows that R2 believed the Databricks system and products infringe. *See SRI Int'l, Inc.*, 127 F.3d at 1470.

In its motion, Databricks dismisses the Databricks Subpoena (and corresponding circumstances) because it involved "a case pending against *another* party" and because it "did not allege any infringement by Databricks or its products." Mot. at 5-6 (emphasis in original). But this is tantamount to arguing R2 was required to make an unequivocal accusation of infringement, which is not the law. *See SRI Int'l, Inc.*, 127 F.3d at 1469-70. Particularly in view of Databricks' corporate testimony, the Databricks Subpoena and accompanying information provided actual notice to Databricks of its infringements. At the very least, this presents a fact issue.

### B.    Fact Issues Preclude Summary Judgment of No Willful Infringement.

As a threshold matter, Databricks' motion conflates the willful infringement standard with the enhanced damages standard. *See, e.g.*, Mot. at 7 (alleging that "willful infringement" requires conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate") (internal citation omitted). Such is not the law. The Federal Circuit has made abundantly clear that the standards for willful infringement and enhanced damages are not the same. *See SRI Int'l, Inc. v. Cisco Sys.*, 14 F.4th 1323, 1329-30 (Fed. Cir. 2021)

(citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016)) (clarifying that the language "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate" in *Halo* refers to conduct warranting enhanced damages, not willful infringement); *see also Polara Eng'g, Inc. v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018). As the Court in *SRI* explained, "Under *Halo*, the concept of 'willfulness' requires a jury to find ***no more than deliberate or intentional infringement***." *Id*. at 1330 (internal citation omitted) (emphasis added).[2] Additionally, circumstantial evidence of intent is sufficient to establish deliberate or intentional conduct. *See WCM Industries, Inc. v. IPS Corporation*, 721 Fed. Appx. 959, 970 (Fed. Cir. 2018).

Applying the proper standard, R2 has put forth sufficient evidence to raise a fact issue regarding whether Databricks' infringements were deliberate or intentional. As discussed above, the Databricks Subpoena and surrounding circumstances demonstrate that Databricks had pre-suit knowledge of, not just the patent, but its infringements. And Databricks has presented no evidence that it endeavored to investigate or otherwise avoid infringing; in fact, the opposite is true. *See* Ex. 7 at 63:3-64:3 ("█████████████████████████████████████████████████████████ █████████████████████████████████████████"). Such allegations by R2 are not "garden-variety," as claimed by Databricks. *See* Mot. at 7-9.[3] Accordingly, there is at least a genuine issue of material fact as to whether Databricks willfully infringed the asserted patent, which precludes

---

[2] Databricks' reliance on *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964 (Fed. Cir. 2021) is misplaced. It pre-dated *SRI*, which clarified the willful infringement standard. *See SRI* 14 F.4th at 1329-30.

[3] Databricks' reliance on *Halo* to argue that R2's allegations are "garden-variety" is misleading, because the Supreme Court did not explain what constitutes "garden-variety" allegations. *Halo*, 136 S. Ct. at 1935. And the district court decisions Databricks relies on in this regard are inapposite because they all relate to an alleged infringer's post-suit, as opposed to pre-suit, knowledge and conduct. *See* Mot. at 8-9.

summary judgment. *See WCM Indus., Inc.*, 721 F. App'x at 971 (affirming a denial of summary judgment on willfulness when there was enough evidence for a jury to conclude that "[Defendant] knew of [the asserted patent …] and that the risk of infringement was known to [Defendant] or so obvious that it should have been known."); *see also Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1245 (Fed. Cir. 2017).

Lastly, it requires discussion that Databricks' motion requests summary judgment of no enhanced damages in its conclusion, though the issue is not argued substantively. *See* Mot. at 9. Nevertheless, Databricks' request for summary judgment of no enhanced damages should be denied. Databricks' conduct reflects a wanton disregard for the risk of infringement; "known or so obvious that it should have been known to" Databricks. *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), *reinstated*, 913 F.3d 1067, 1070 (Fed. Cir. 2019) (citing *Halo*, 136 S. Ct. at 1930). Moreover, Databricks' "behavior as a party to the litigation" (in addition to its size and financial condition) supports enhanced damages. *SRI Int'l, Inc.*, 14 F.4th at 1330. Indeed, Databricks has made numerous discovery misrepresentations and violated a jointly-filed stipulation of the parties, which has "created a substantial amount of work" for R2 and the Court, "much of which work was needlessly repetitive or irrelevant or frivolous." *Id*. at 1332 (internal citations omitted). Much of this conduct is detailed in briefing before the Court and includes R2 having to brief the joint stipulation breach no less than three times. *See, e.g.*, ECF 73; ECF 82; ECF 102; ECF 115; ECF 139. At a minimum, this raises a fact issue as to whether enhanced damages should be granted under § 284.

## VI.    CONCLUSION

For at least the foregoing reasons, R2 respectfully requests that Databricks' motion for summary judgment of no pre-suit damages and willful infringement be denied.

Dated: May 1, 2025                    Respectfully Submitted,


                                      By: */s/ Carder W. Brooks*
                                      Edward R. Nelson III
                                      State Bar No. 00797142
                                      Christopher G. Granaghan
                                      State Bar No. 24078585
                                      John P. Murphy
                                      State Bar No. 24056024
                                      Carder W. Brooks
                                      State Bar No. 24105536
                                      Nelson Bumgardner Conroy PC
                                      3131 West 7th Street, Suite 300
                                      Fort Worth, Texas 76107
                                      817.377.9111
                                      ed@nelbum.com
                                      chris@nelbum.com
                                      murphy@nelbum.com
                                      carder@nelbum.com

                                      COUNSEL FOR
                                      PLAINTIFF R2 SOLUTIONS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2025, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

*/s/ Carder W. Brooks*

## CERTIFICATE OF AUTHORIZATION

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Carder W. Brooks*