# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| R2 Solutions LLC, <br><br> Plaintiff, <br><br> v. <br><br> Databricks, Inc., <br><br> Defendant. | Civil Action No. 4:23-cv-01147-ALM <br><br> Jury Trial Demanded |

## PLAINTIFF R2 SOLUTIONS LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE CERTAIN EXPERT OPINIONS

**TABLE OF CONTENTS**

I.   THE "PHOTON" OPINIONS SHOULD BE STRICKEN. ............................................... 1

    A.   R2 Did Not Withhold Any Infringement Theory. .......................................... 1

    B.   The "Photon" Opinions Violate the Parties' Joint Stipulation. ...................... 2

    C.   The "Photon" Opinions Should Be Stricken Under Rule 37(c). ................... 3

    D.   Dr. Weissman's and Dr. Macartney's "Photon" Opinions Are Unreliable. ................. 4

II.  DR. MACARTNEY'S LICENSE OPINIONS SHOULD BE STRICKEN. ....................... 4

III. CONCLUSION ................................................................................................................ 5

## **TABLE OF AUTHORITIES**

**Cases**

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   2016 U.S. Dist. LEXIS 191646 (E.D. Tex. Mar. 21, 2016) .......................................................... 2

**Rules, Statutes, and Authorities**

Fed. R. Civ. P. Rule 26(e) ................................................................................................................ 4

Fed. R. Civ. P. Rule 37(c) ................................................................................................................ 4

Databricks' Photon arguments are smoke and mirrors. Extricating fact from fiction, R2 caught Databricks playing discovery games and threatened Court intervention to compel Photon and other proprietary code. Knowing this would undercut its open-source license defense, Databricks made calculated representations to R2 about Photon—cemented in the parties' Joint Stipulation—to ensure that the case remained about open-source Apache Spark. It was only because of the Joint Stipulation that R2 dropped its request for additional code, including Photon. But then Databricks disclosed new theories in the form of improper expert opinions, which amount to: "Gotcha—we actually do not use the only code we produced; we use the proprietary code we stipulated we would not rely upon." And now, in responding to R2's motion, Databricks fabricates a story about a "new" infringement theory in R2's expert report (which, notably, Databricks did not move to strike). But Databricks cannot run from its stipulations; it cannot explain away its failure to disclose its recent Photon theories in discovery; and it cannot justify expert opinion that Photon does not infringe when no expert looked at Photon code.

Relative to Databricks' addled arguments regarding Dr. Macartney's opinions on past licenses, one salient point emerges: Databricks does not contest that Dr. Macartney performed no comparability analysis. Despite this failure, Dr. McCartney relied on past licenses to disparage R2's expert damages reporting. Such is improper, and his opinions should be excluded.

## I.     THE "PHOTON" OPINIONS SHOULD BE STRICKEN.

### A.     R2 Did Not Withhold Any Infringement Theory.

The gravamen of Databricks' response is that its conduct is excusable because R2 hid its infringement theory. This is absurd. Mr. Davis's report elucidates the exact same infringement theory that R2 set forth in its contentions, namely, that Databricks' platform infringes via the Apache Spark sort-merge-join functionality invoked, for example, in response to a join query. *Compare, e.g.,* ECF 139-10, ¶¶ 85-110, 130-195 *with, e.g.*, ECF 143-2 at slides 46, 58-68. Indeed,

all Mr. Davis did in his expert report was demonstrate this functionality by drafting a run-of-the-mill query against run-of-the-mill exemplary data sets and running it on an out-of-the-box version of Databricks' platform with the "Photon acceleration" box unchecked.[1] *See* ECF 139-10, ¶¶ 85-110; Opp. at 4. R2's contentions, then, certainly put Databricks on notice of R2's theory, which is all that is required. *See, e.g., Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 U.S. Dist. LEXIS 191646, at *10 (E.D. Tex. Mar. 21, 2016). If this code from R2's contentions (*which is the only code Databricks produced*) does not actually execute, as Databricks now argues, Databricks should have disclosed as much in discovery, as discussed below. Or, if Databricks wanted to rely on Photon for a non-infringement position, it should have foregone the Joint Stipulation and produced Photon code. But Databricks did neither of these things. Nor did Databricks move to strike Mr. Davis's opinions. It could not, because the infringement theory has never changed.

        B.        The "Photon" Opinions Violate the Parties' Joint Stipulation.

Databricks makes a number of unavailing arguments attempting to explain its violation of the Joint Stipulation.[2] First, Databricks alleges that "the stipulation makes clear that 'Databricks' proprietary code files' refers [only] to 'Databricks' corresponding internal Apache Spark source code files" mentioned earlier in the stipulation. Opp. at 7. This is irrational. The plain language of the Stipulation reveals that "Databricks' proprietary code files" are not limited to Databricks' internal Spark files. Had the parties meant that, then the Stipulation would have read, "Databricks agrees that it will not use the fact that R2 relies on such open-source Apache Spark source code files, as opposed to *Databricks' [corresponding internal Apache Spark source] code files*…." But

---

[1] To be sure, the only reason the "Photon acceleration" box was unchecked was because of Databricks' stipulations. *See* ECF 73; Mot. at 1-3; ECF 82 at 2-8.

[2] It bears mention that Databricks' arguments here are almost verbatim from its Response to R2's Notice of Supplemental Evidence. *See* ECF 103. And there, Databricks did not allege that Mr. Davis's report contains a new infringement theory.

2

such is not what the Stipulation says. R2 insisted on the general "Databricks proprietary code files" language for a reason—to prevent the current situation. Indeed, it defies comprehension that R2 would forgo additional source code discovery just to let Databricks rely on it to avoid liability.

Second, Databricks alleges that "Dr. Weissman *never* opined that open-source Apache Spark source code does not represent Databricks' internal Spark code." Opp. at 7 (emphasis in original). But this is deceptive. As R2 explained in summary judgment briefing, Dr. Weissman confirms that Databricks' proprietary Spark code works differently from the open-source code base because Databricks' proprietary version apparently invokes entirely different functionality. *See, e.g.*, ECF 139 at 5-6. In this vein, Databricks also alleges that Dr. Weissman "relied on the same Apache Spark source code as R2's expert" for his rebuttal report. Opp. at 7. But this is belied by the rebuttal report itself, in which Dr. Weissman relies on Photon (which is not the code that R2's expert relied on) to disparage R2's infringement read. *See, e.g.*, ECF 115-5, ¶¶ 214, 216.

Third, Databricks claims that its experts "did not refer to 'Databricks proprietary *code files* … as the basis for its defense.'" Opp. at 7 (emphasis in original). This argument is just a word game. Photon is *implemented* in proprietary code files, so by relying on Photon, Databricks is relying on proprietary code files. *See, e.g.*, ECF 115-10 at 95:21-96:23.

C. The "Photon" Opinions Should Be Stricken Under Rule 37(c).

Databricks does not dispute that it failed to disclose its Photon-based non-infringement and damages theories in discovery. Its only counterargument to striking its experts' opinions is that R2's infringement theory is new. But as discussed above, this is wrong. R2's theory has never changed. R2 formulated its contentions based on code Databricks produced and that Databricks represented to be the only relevant code. Mr. Davis's report elucidated this exact theory, in turn. Neither the contentions nor the report mention Photon because, per the Joint Stipulation, R2 was entitled to rely on Apache Spark without fear of Databricks claiming it uses proprietary code

3

instead. To be sure, R2's infringement theory is, and always has been, that Databricks infringes with Apache Spark sort merge join code. If Databricks' platform does not actually use that code, Databricks certainly should have said so at some point before rebuttal expert reports. But it did not, so its new opinions violate Rule 26(e) and should be stricken under Rule 37(c). Mot. at 6-8.

### D. Dr. Weissman's and Dr. Macartney's "Photon" Opinions Are Unreliable.

Dr. Weissman opined that Photon is "non-infringing" but admitted at deposition that he does not know whether such is actually true. *See* Mot. at 8-9. Dr. Macartney then relied on the unsubstantiated opinion to conclude that R2 did not prove infringement and exclude all serverless compute offerings from his damages calculation. *See id*. at 9. Neither expert should be permitted to tell the jury that Photon and related offerings do not infringe when they have no basis for it.

## II. DR. MACARTNEY'S LICENSE OPINIONS SHOULD BE STRICKEN.

Databricks does not dispute that Dr. Macartney failed to perform any comparability analysis; it also does not dispute that he used the subject licenses to "correct" R2's expert's damages assessment. *See* Mot. at 2-3, 9-10. This should end the inquiry. Striking impermissible expert opinions for failure to perform comparability analysis is the issue presented in R2's motion. Anything else is superfluous. Since Databricks offers no rebuttal to suggest otherwise, R2's motion should be granted and the noted portions of Dr. Macartney's report struck.

Nevertheless, rather than contravene R2's arguments, Databricks offers obfuscating, irrelevant points. First, it argues that Dr. Macartney's opinions should be allowed because certain agreements relate to Databricks' license defenses. But regardless of whether the ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ relate to Databricks' license defenses—and irrespective of whether Dr. Macartney may properly offer any opinion as relates to the license defenses—Dr. Macartney may not (as he has done) use the license agreement amounts to opine that Mr. Bergman's damages analysis is, among other things, "inflated" and "exaggerated." *See, e.g.*, ECF 115-9 at ¶¶ 206-210.

4

The same goes for the ▮▮▮ that further ▮▮▮. Whether it is otherwise permissible for Databricks to discuss the ▮▮▮ at trial when there is no ▮▮▮ at issue in this case is a different question than the one addressed by R2's motion.

Further, Databricks argues that Dr. Macartney's past license opinions are relevant to Mr. Bergman's discussion of ▮▮▮. *See* Opp. at 12. But Dr. Macartney never uses past licenses in response to this point by Mr. Bergman. Rather, he only discusses ▮▮▮ in the context of ▮▮▮ (none of which R2 seeks to strike by its motion). *See, e.g.*, ECF 115-9 at ¶¶ 212-213, 215-217.[3]

Lastly, Databricks attempts to turn its response into its own (untimely) motion to exclude, purporting to affect Mr. Bergman's testimony relative to ▮▮▮ and R2 licenses. To be clear, Mr. Bergman does not use any past licenses as a basis for his royalty determinations. But Databricks does not limit its request to such use. Databricks seeks to exclude the agreements for *any* purpose or else it "should be permitted to provide context that ▮▮▮." Opp. at 13. This position is preposterous. Referring to licensing or licensing practices for an appropriate purpose does not, in turn, bless Databricks to offer improper testimony explicitly made the subject of this motion.

### III. CONCLUSION

The Court should grant R2's motion and strike the subject reporting and testimony.

---

[3] In its response, Databricks says, "Dr. Macartney opined that ▮▮▮ the '610 patent for significant value *because* they covered a large portfolio that ▮▮▮ and were for ▮▮▮" Opp. at 5. This is false. Databricks cites to Dr. Macartney's report at ¶¶ 206-10 for this proposition. But there is no discussion of ▮▮▮ in those paragraphs, and a simple reading reflects only Dr. Macartney's misguided attempt to dispute R2's damages using royalties from licenses for which there is no comparability analysis. Those paragraphs (and attendant schedules) are the essential target of R2's motion.

5

Dated: May 15, 2025                                     Respectfully Submitted,

                                                                           By: */s/ Carder W. Brooks*
                                                                           Edward R. Nelson III
                                                                           State Bar No. 00797142
Christopher G. Granaghan
State Bar No. 24078585
John P. Murphy
State Bar No. 24056024
Carder W. Brooks
State Bar No. 24105536
NELSON BUMGARDNER CONROY PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111
ed@nelbum.com
chris@nelbum.com
murphy@nelbum.com
carder@nelbum.com

COUNSEL FOR
PLAINTIFF R2 SOLUTIONS LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2025, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

*/s/ Carder W. Brooks*

**CERTIFICATE OF AUTHORIZATION**

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Carder W. Brooks*