# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| R2 Solutions LLC, | Civil Action No. 4:23-cv-01147-ALM |
| Plaintiff, | |
| v. | Jury Trial Demanded |
| Databricks, Inc., | |
| Defendant. | |

**PLAINTIFF R2 SOLUTIONS LLC'S
REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON
DATABRICKS' LICENSE DEFENSE BASED ON APACHE CONTRIBUTIONS**

**TABLE OF CONTENTS**

I. R2 TIMELY DISCLOSED ITS RELIANCE ON THE STATUTE OF FRAUDS. ............ 1

II. THE STATUTE OF FRAUDS APPLIES. ............................................................................ 1

    A. The Apache 2.0 License and ICLAs Cannot Be Performed in Less than a Year. ........ 1

    B. Equitable Estoppel Does Not Bar Reliance on the Statute of Frauds. ........................ 2

    C. The Statute of Frauds Is Not Satisfied Through the ICLAs. ....................................... 4

III. DATABRICKS HAS NOT PROVIDED ANY EVIDENCE THAT IT HAS A LICENSE TO THE '610 PATENT. ................................................................................................... 5

IV. CONCLUSION ................................................................................................................ 7

# TABLE OF AUTHORITIES

**Cases**

*Blaser v. State Teachers' Retirement Sys.*,
  86 Cal. App. 5th 507 (Cal. App 2022) ............................................................................... 2

*Factor Mut. Ins. Co. v. Alon USA L.P.*,
  705 F.3d 518 (5th Cir. 2013) ............................................................................................. 3

*GTX Corp. v. Kofax Image Prods.*,
  571 F. Supp. 2d 742 (E.D. Tex. 2008) .............................................................................. 4

*Mytee Products, Inc. v. H.D. Products, Inc.*
  Case No. 05-cv-2286, 2006 U.S. Dist. (S.D. Cal. June 22, 2007) ……………………….. 2

*Schertzer v. Bank of Am., NA*,
  109 F.4th 1200 (9th Cir. 2024) .......................................................................................... 5

*TCB Auto Detailing & Cleaning Servs. v. Ins. Auto Auctions, Inc.*,
  Case No. 2:21-cv-03185, 2023 U.S. Dist. (C.D. Cal. Nov. 14, 2023) .......................... 2, 3

*Worldwide Sorbent Prods. v. Invensys Sys.*,
  Case No. 1:13-cv-252, 2014 U.S. Dist. (E.D. Tex. Oct. 29, 2014) .................................. 3

**Rules, Statutes, and Authorities**

Cal. Civ. Code § 2309 ................................................................................................................... 4

Fed. R. Civ. P. 37(c)(1) ................................................................................................................. 1

Fed. R. Evid. 1002 ........................................................................................................................ 5

Fed. R. Evid. 611(c) ...................................................................................................................... 3

## I. R2 TIMELY DISCLOSED ITS RELIANCE ON THE STATUTE OF FRAUDS.

R2 did not withhold its reliance on the Statute of Frauds during discovery. In its interrogatory response, R2 stated that Databricks "has neither identified nor produced any written agreement, or even any documents, notes, or memoranda," from Yahoo granting a license to the '610 patent, nor has it identified "any written record(s)" giving any individuals that signed an ICLA authority to grant a license to the '610 patent. ECF 145-24 (MSJ Opp. Ex. 23) at 4. This is the same argument that R2 made in its MSJ. It was thus properly disclosed.

Even if R2 had failed to disclose its theory, the Court should not exclude it. Exclusion is unwarranted if "the failure [to disclose] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). There is no evidence of harm to Databricks. Databricks was able to provide a fulsome response to R2's MSJ with forty-six exhibits, including documents obtained from Apache and extensive testimony from former Yahoo employees. Databricks alleges that it would have "conducted additional discovery" and "included additional analysis in its expert reports" had it known about R2's theory. Opp. at 6. Yet it has made no attempt to identify what it would have done differently or what an expert could possibly say about the application of the Statute of Frauds.

## II. THE STATUTE OF FRAUDS APPLIES.

### A. The Apache 2.0 License and ICLAs Cannot Be Performed in Less than a Year.

Databricks contends that the Statute of Frauds does not apply to the Apache 2.0 license and the ICLAs because the license period is indefinite and, accordingly, it is possible for the agreements to be performed within one year. Databricks is wrong for two reasons. *First*, Databricks ignores the copyright licenses. As R2 explained in its MSJ, the copyright license necessarily lasts more than one year. MSJ at 15. Databricks has no response. *Second*, Databricks' argument that the term of the patent license is indefinite because the "duration of the license is not tied to the '610 patent alone" is incorrect. Opp. at 9. To be sure, the Apache 2.0 license and the

1

ICLAs do not list the patents they apply to. But they do apply to "those patent claims licensable by [the] Contributor," and Databricks claims that the '610 patent, which Yahoo applied for well before any of the ICLAs or contributions that Databricks relies on, is a patent that was licensable by Yahoo and its employees. If, as Databricks contends, the patent license included a license to the '610 patent, it was impossible for it to be performed within one year, even if the full scope of the license grant is not known.

*Mytee Products, Inc. v. H.D. Products, Inc.* is not to the contrary. In *Mytee*, which concerned an oral trademark license, there was evidence the defendant was told not to "use [the trademark] forever" and that there was "no express time limit or other limitations" on the license. No. 05-cv-2286, 2006 U.S. Dist. LEXIS 96385, at *15 (S.D. Cal. June 22, 2007). In other words, it was possible that the contract in *Mytee* could have been performed within one year—it depended on the terms of the oral contract. Here, if the Apache 2.0 license and ICLAs include a perpetual license to the '610 patent, as Databricks asserts, they cannot be performed within a year.

### B.     Equitable Estoppel Does Not Bar Reliance on the Statute of Frauds.

Databricks bears the burden of showing that equitable estoppel bars reliance on the Statute of Frauds. *Blaser v. State Teachers' Retirement Sys.*, 86 Cal. App. 5th 507, 528 (Cal. App 2022). While Databricks accurately identifies the elements of equitable estoppel, it omits important context. Equitable estoppel requires that "the party to be estopped make some misleading 'representation,' by word, conduct, or silence, on which it intends the other party to rely, and that the other party does rely to its detriment." *TCB Auto Detailing & Cleaning Servs. v. Ins. Auto Auctions, Inc.*, No. 2:21-cv-03185, 2023 U.S. Dist. LEXIS 234647, at *10 (C.D. Cal. Nov. 14, 2023). "To support estoppel, the representation must be 'plain, not doubtful or [a] matter of questionable inference.'" *Id.* Databricks cannot invoke equitable estoppel because it has not provided any evidence of a representation about a license to the '610 patent. Databricks points to

2

documents and testimony about Yahoo's engagement with, and contributions to, the open-source community.[1] Opp. at 10-13. But this evidence has two problems. First, it is not evidence that *R2*, as the party that Databricks is seeking to estop, has made some representation that Databricks is relying on. Second, the evidence has nothing to do with the '610 patent or a license thereto. The evidence at best shows that Yahoo intended to embrace and contribute to the open-source community, including Apache Spark. It does not show that Yahoo represented that it intended to provide a license to the '610 patent to Spark users. The closest Databricks gets is testimony from a former Yahoo employee (through an improper leading question, Fed. R. Evid. 611(c)) that Yahoo was aware "that by contributing to the Apache Open Source Spark project that it would be granting to the Open Source community a license to its patents that covered Spark." ECF 145-13 (Opp. Ex. 12) at 20:20-25. But Yahoo's awareness of an (incorrect) fact is not the same as a specific representation about a license to the '610 patent that Databricks could rely on. And, without a specific representation, estoppel does not apply. *TCB*, 2023 U.S. Dist. LEXIS 234647, at *10.

Databricks also has not provided evidence that would permit a jury to find that Databricks relied on any representation made by Yahoo or R2 to its detriment. Databricks generically alleges that it and the open-source community were unaware of whether Yahoo approved its employees' contributions, that it relied on Yahoo's representations, and that it invested resources in reliance on those representations. Opp. at 12. But Databricks provides zero evidentiary support for these statements. They are just attorney argument and are insufficient to avoid summary judgment. *See*

---

[1] Databricks also relies on one of its expert's reports. *See* Opp. at 10 (citing ECF 145-15 (Opp. Ex. 14), ¶¶ 993-1013). The report itself is unauthenticated and is therefore inadmissible hearsay. *Worldwide Sorbent Prods. v. Invensys Sys.*, No. 1:13-cv-252, 2014 U.S. Dist. LEXIS 195932, at *11 (E.D. Tex. Oct. 29, 2014). In addition, the cited paragraphs only quote from or summarize documents or deposition testimony and are thus inadmissible. *Factor Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013).

3

*GTX Corp. v. Kofax Image Prods.*, 571 F. Supp. 2d 742, 747 (E.D. Tex. 2008).

Finally, a word about Databricks' hyperbolic allegations that R2 is seeking to destabilize an industry. The fact that the Statute of Frauds applies does not call into question every Apache agreement. In many cases, the Statute of Frauds is likely to be satisfied. Apache makes available a form Corporate Contributor License Agreement, which would ameliorate the very problem that exists here. MSJ at 8; ECF 107-17 (MSJ Ex. 18). The purpose of the CCLA is to eliminate ambiguities between "conflicting laws, contracts, policies and job assignments." ECF 107-6 at 126737. Moreover, a Statute of Frauds problem could be avoided with a writing evidencing the authority of an employee executing an ICLA. That is not a big ask, and the requirement for a writing has long been the law. There is no reason to countenance Databricks' doomsday story.

### C. The Statute of Frauds Is Not Satisfied Through the ICLAs.

Databricks spends several pages arguing that the ICLAs satisfy the Statute of Frauds because the Yahoo employees that signed them had either actual authority or ostensible authority to bind Yahoo. Databricks' argument ignores that "authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." Cal. Civ. Code § 2309.

Databricks cites three types of evidence, none of which is sufficient. First, Databricks cites testimony that Yahoo understood the Apache 2.0 license, hired engineers to contribute to Apache Spark, had open-source policies, and approved Spark contributions. *See, e.g.*, Opp. at 14-16 (citing ECF 145-13, -14, -17, -18, -19). This is not evidence of a writing conferring authority to license the '610 patent. Second, Databricks contends that each Yahoo employee who executed an Apache ICLA attested in the ICLA that they had the authority to bind Yahoo. Opp. at 15. But the issue is whether the Yahoo employees had authority to enter into these ICLAs in the first place. The employees' own representations that they have authority is not a written instrument *from Yahoo* conveying that authority. Finally, Databricks cites testimony from ▮▮▮▮ that he received an email

4

authorizing him to provide his ICLA to Apache. Opp. at 15 (citing ECF 145-14). ▆▆▆▆'s testimony about the contents of a writing, however, is inadmissible. Fed. R. Evid. 1002. And, even if it were, it would only establish ▆▆▆▆ authority. Databricks thus fails to provide evidence to show that Yahoo authorized any Yahoo employees to grant a license to the '610 patent.

### III. DATABRICKS HAS NOT PROVIDED ANY EVIDENCE THAT IT HAS A LICENSE TO THE '610 PATENT.

Putting aside the Statute of Frauds, Databricks' opposition fails to show that there is a genuine issue of material fact as to whether it has a license to the '610 patent under the Apache 2.0 license or the ICLAs for two reasons. First, Databricks misinterprets the license grant. Second, Databricks fails to provide evidence of a contribution to Spark that would trigger a license.

As Databricks recognizes, the Apache 2.0 license ▆▆▆▆ grant a license to patent claims that are (1) necessarily infringed by a contribution alone, or (2) necessarily infringed by "combination of [a contributor's] Contribution(s) with the Work." ECF 145-2 at 2. In Databricks' view, the second scenario "will result in granting a license to a party's patents that cover the underlying work when a party contributes to the work," even if the contribution plays no role in infringement. Opp. at 18. Databricks' interpretation is overbroad. Under the language of the second scenario, it is the *combination* of a contribution with the Work (i.e., Spark) that must necessarily infringe to trigger a license. ECF 145-3, ¶ 3. In other words, the contribution must play some role in infringement. Databricks' interpretation cannot be correct because accepting it would render the reference to contributions in both scenarios superfluous—the license could simply grant a license to claims "that are necessarily infringed by the Work." *Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1209 (9th Cir. 2024) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.").

Databricks then identifies three types of contributions that it contends grant it a license to

5

the '610 patent. None are sufficient. It first contends that Mr. Davis, R2's expert, relies on various Spark functionalities and that either ▮▮▮▮▮▮▮▮▮▮ former Yahoo employees, contributed to these functionalities. Opp. at 19-20. But contributed what? Databricks identifies only that contributions were made—it does not explain how these contributions necessarily infringe, either alone or in combination in Spark. Indeed, Databricks provides *no evidence* that any contributions play any role in the actual infringement elucidated by Mr. Davis. To the contrary, the only evidence on this point comes from Mr. Davis, who confirmed that the contributions Databricks asked him about were irrelevant to his infringement read. Ex. 1 at 211:3-216:14. And no connection between the contributions and the infringing functionality is apparent. As a few examples, Databricks contends that "▮▮▮ contributed to Spark's RDD functionality," but does not then explain how such contribution is implicated in Mr. Davis's infringement opinion. Opp. at 19. It alleges that Mr. Davis relies on ShuffleExchangeExec, but then cites to testimony that ▮▮▮ contributed to some generic "shuffle" functionality. It contends that Mr. Davis relies on SortMergeJoinExec, but then alleges that ▮▮▮▮▮ contributed to *other* files besides SortMergeJoinExec. Opp. at 20. It contends that ▮▮▮▮ contributed to the DAGScheduler, but does not then explain how the contribution is implicated in infringement. At bottom, Databricks has failed to establish any nexus between subject contributions and the asserted claims.

Second, Databricks argues that it has a license for its use of Spark because Yahoo contributed YARN to Apache Spark, and R2 asserted in infringement contentions from prior cases that YARN meets certain claim elements. Opp. at 20. But to show that it has a license to use Spark, Databricks must show that contributions to *Spark* necessarily infringe, and Databricks has no evidence that R2 ever identified YARN as meeting a claim limitation with respect to *Spark's*

6

infringement.[2] Indeed, the only evidence of record indicates that YARN is unrelated to Spark's infringement. Ex. 2, ¶ 263 n.34. Furthermore, as with the other identified contributions, Databricks fails to demonstrate what the YARN contributions consisted of or how those contributions infringe, either alone or in combination with Spark. *See id.*, ¶¶ 263-264.

Third, Databricks contends that it has a license because Yahoo contributed "CaffeOnSpark." Opp. at 21. Notably, Databricks is *not* contending that Yahoo contributed CaffeOnSpark to the Apache Spark project itself. It instead contends that Yahoo contributed CaffeOnSpark as a separate work, and that Databricks has a license to Spark because CaffeOnSpark included the entirety of Apache Spark. *Id.* But no evidence supports Databricks' contention that CaffeOnSpark included Apache Spark. The document that Databricks relies on does not say so. *See* ECF 145-47 (Opp. Ex. 46) at 1. Databricks' expert never says so—he simply says that "Yahoo created the code to make Caffe's deep learning functionality work with Apache Spark." ECF 145-15, ¶ 1205. And ▬▬▬ doesn't say so—he merely says that CaffeOnSpark "wouldn't work without the underlying Apache Spark functionality." ECF 145-14 at 71:5-8; Ex. 3 at 70:21-71:3 (▬▬▬ stating that CaffeOnSpark ran "on top of Spark"). R2's expert explained that Yahoo did not contribute Spark code but, at best, contributed "non-Spark code that could interface with Spark if Spark was separately installed." Ex. 2 (Davis Rep.), ¶ 268. Databricks thus cannot show that it has a license to the '610 patent via Yahoo's contribution of CaffeOnSpark.

IV.  **CONCLUSION**

For the foregoing reasons, as well as those stated in R2's MSJ, the Court should grant summary judgment in R2's favor on Databricks' license defense based on contributions to Apache.

---

[2] As set forth in R2's Opposition to Databricks' MSJ on Invalidity, the subject infringement contentions were mapped against proprietary systems when R2 had no source code for those systems. ECF 138. R2 never "admitted" that functionality identified in those contentions met any claim limitations.

7

| | |
|---|---|
| Dated: May 15, 2025 | Respectfully Submitted, |

By: */s/ Edward R. Nelson III*
Edward R. Nelson III
State Bar No. 00797142
Christopher G. Granaghan
State Bar No. 24078585
John P. Murphy
State Bar No. 24056024
Carder W. Brooks
State Bar No. 24105536
Nelson Bumgardner Conroy PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111
ed@nelbum.com
chris@nelbum.com
murphy@nelbum.com
carder@nelbum.com

COUNSEL FOR
PLAINTIFF R2 SOLUTIONS LLC

### CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2025, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

*/s/ Edward R. Nelson III*

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Edward R. Nelson III*

8