██████████████████████████████

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| R2 SOLUTIONS LLC,<br><br>             Plaintiff,<br><br>       v.<br><br>DATABRICKS, INC.,<br><br>             Defendant. | Civil Action No. 4:23-cv-01147-ALM<br><br>**JURY TRIAL DEMANDED** |

**DATABRICKS, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY
<u>JUDGMENT OF NON-INFRINGEMENT</u>**

██████████████████████████

**TABLE OF CONTENTS**

Page

I.    The Court Should Grant Partial Summary Judgment Because the Databricks Platform for Serverless Compute Cannot Infringe as a Matter of Law ...............................................1

II.    The Court Should Grant Partial Summary Judgment Because R2 Cannot Show That Any Databricks User Directly Infringes Asserted Method Claims 1 and 5 Under the Federal Circuit's Opinion in *Akamai* ...................................................................................2

III.    The Court Should Grant Partial Summary Judgment Because Databricks Classic Compute Does Not Directly Infringe Asserted System Claims 17 and 21 as a Matter of Law Under the Federal Circuit's Opinion in *Centillion* ......................................................4

IV.    R2 Cannot Show the Accused Functionality Meets the Claimed "Data Groups" ...............6

V.    R2 Cannot Show the Specialized "Mapping Functions" of the Claims are Met .................7

VI.    R2 Cannot Show the Accused Functionality Meets the Claimed "Reducing" ....................8

VII.    Conclusion .............................................................................................................................8

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
  501 F.3d 1307 (Fed. Cir. 2007)..................................................................................................4

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015)..................................................................................................2

*Biafora v. U.S.*,
  773 F.3d 1326 (Fed. Cir. 2014)..................................................................................................1

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
  631 F.3d 1279 (Fed. Cir. 2011)..........................................................................................4, 5, 6

*Ferring B.V. v. Barr Lab'ys, Inc.*,
  437 F.3d 1181 (Fed. Cir. 2006)..................................................................................................4

*Garrett v. TP-Link Rsch. Am. Corp.*,
  No. 20-cv-03491, 2020 WL 6873419 (N.D. Cal. Nov. 23, 2020) .............................................5

*L & W, Inc. v. Shertech, Inc.*,
  471 F.3d 1311 (Fed. Cir. 2006)..............................................................................................1, 2

*Lifetime Indus. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017)..................................................................................................5

*Linear Tech. Corp. v. Impala Linear Corp.*,
  379 F.3d 1311 (Fed. Cir. 2004)..................................................................................................3

## TABLE OF EXHIBITS[1]

| No. | Exhibit |
|---|---|
| 1 | U.S. Patent No. 8,190,610 (the "'610 patent") |
| 2 | Excerpts of 2024 Databricks customer-facing slide deck (Databricks_R2_00091426 – Databricks_R2_00091494) |
| 3 | Databricks webpage titled "What is Photon?" (GMacartney_00000892 – GMacartney_00000895) |
| 4 | Expert Report of William Davis Concerning Infringement of U.S. Patent No. 8,190,610 ("Davis Rep.") |
| 5 | Rebuttal Expert Report of Dr. Jon Weissman ("Weissman Rebut.") |
| 6 | Excerpts of Transcript of the March 25, 2025 Deposition of William Davis ("Davis Dep. (Day 1)") |
| 7 | Excerpts of Transcript of the December 13, 2024 Deposition of Cody Davis ("C. Davis. Dep.") |
| 8 | Excerpts of Transcript of the January 16, 2025 Deposition of Joshua Rosen ("Rosen Dep.") |
| 9 | Excerpts of Transcript of the January 24, 2025 Deposition of Reynold Xin ("Xin Dep.") |
| 10 | Excerpts of Transcript of the January 15, 2025 Deposition of ▓▓▓▓ (" ▓▓▓▓ Dep.") |
| 11 | Excerpts of Transcript of the January 8, 2025 Deposition of ▓▓▓▓ ) (" ▓▓▓▓ Dep.") |
| 12 | Additional excerpts of transcript of the March 25, 2025 Deposition of William Davis ("Davis Dep.") |
| 13 | Additional excerpts from Expert Report of William Davis Concerning Infringement of U.S. Patent No. 8,190,610 ("Davis Rep.") |

---

[1] Exhibits 12-13 are attached to the Reply Declaration of Vigen Salmastlian; all other exhibits are attached to the Opening Declaration of Vigen Salmastlian, Dkt. 117-2.

I. **The Court Should Grant Partial Summary Judgment Because the Databricks Platform for Serverless Compute Cannot Infringe as a Matter of Law**

There is no dispute that the Databricks platform has two data processing engines—Photon and Spark—and that R2 accuses only Spark's Sort Merge Join strategy of infringement. (Op. Br. at 6; Ex. 12, Davis Dep., 53:25-54:5.) It is also undisputed that serverless compute only runs Photon, which *replaces* the accused Spark Sort Merge Join with the unaccused Photon Shuffle Hash Join. (Op. Br. at 7-8; Ex. 12, Davis Dep., 88:7-12.) The Court should therefore grant partial summary judgment that serverless compute does not infringe any asserted claim.

R2 attempts to create a fact dispute by arguing that it generally accuses Databricks Runtime. But that does not change the fact that R2 has no infringement theory for serverless compute. As R2 admits, its "infringement contentions did not specifically identify serverless" compute, and thus, it failed to articulate any infringement theory for it. (Opp. at 6.) Mr. Davis's expert report also concluded without any analysis that Databricks' "serverless offerings" infringe the asserted claims. (Op. Br. at 9-10; *see also* Ex. 13, Davis Rep., ¶¶ 227-235.) The *only* theory he mapped to the asserted claims is the accused Spark Sort Merge Join that executes in classic compute. (Ex. 12, Davis Dep., 53:25-54:5.) Mr. Davis also conceded that he "did not test Databricks serverless compute" (*id.* at 102:10-14; *id.* at 46:8-11, 92:20-93:8) and that he "do[es]n't actually know whether serverless compute performs the functionality that [he] rel[ied] on for infringement" (*id.* at 93:10-15). Mr. Davis's opinion on serverless compute is "too speculative to create a dispute of fact." *Biafora v. U.S.*, 773 F.3d 1326, 1332 (Fed. Cir. 2014) (affirming summary judgment). R2's argument that "serverless is basically Databricks" also fails. (Opp. at 8.) R2 "cannot simply 'assume'" all of Databricks Runtime, including serverless compute, is like the classic compute functionality Mr. Davis tested. *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006). R2 "must make a prima facie showing of infringement as to each" and its failure

1

to do so "show[s] that there is no genuine issue of material fact on the issue of infringement." *Id.*

Faced with a lack of evidence, R2 resorts to the same misplaced arguments from its Motion to Strike, which Databricks already addressed in its opposition.[2] (Opp. at 4-6; Dkt. 115; Dkt. 143.)

II. **The Court Should Grant Partial Summary Judgment Because R2 Cannot Show That Any Databricks User Directly Infringes Asserted Method Claims 1 and 5 Under the Federal Circuit's Opinion in *Akamai***

Direct infringement of a method claim requires showing that "all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). As Mr. Davis testified, his infringement theory requires no less than a half-dozen conditions, and he conceded he has no evidence that any Databricks user has ever met them. (Op. Br. at 11-13; Ex. 12, Davis Dep., 124:20-125:7.) R2 also does not dispute that Databricks does not "direct or control" any user to "do what [Mr. Davis] did to show infringement." (Op. Br. at 13-14 (citing Ex. 12, Davis Dep., 123:8-12).) Nor does R2 identify any evidence of a "joint enterprise," as none exists. Because there is no evidence that anyone has ever met *all* the conditions of Mr. Davis's infringement theory, the Court should grant partial summary judgment of non-infringement of method claims 1 and 5.[3]

---

[2] R2 concealed its actual infringement theory, which required Mr. Davis to *turn off* Photon, until its opening expert report. Databricks' first chance to respond was thus in its rebuttal report. (Dkt. 143 at 2-4; Ex. 12, Davis Dep., 95:3-96:2; Dkt. 143 at 4.) Databricks complied with the parties' source code stipulation, which is limited to Apache Spark and does not include Photon. (*See* Dkt. 73; *see also* Dkt. 103 at 2.) Indeed, Databricks' expert Dr. Weissman relied on *publicly available* Photon documents and the *same* open-source Spark source code as Mr. Davis to debunk R2's infringement theory. (Dkt. 143 at 4.) Databricks also never distinguished its internal implementation of Apache Spark from open-source Apache Spark. R2's arguments to the contrary are baseless. Public Photon documents explain that the accused Spark Sort Merge Join *does not* execute when Photon runs. (Dkt. 143-13.) That fact is consistent with the parties' stipulation. R2's argument that this allegedly means "internal Apache Spark files do not operate like open source Spark" is wrong. (Opp. at 5.) Photon is not Spark. And the testimony R2 cites only shows that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that is not at issue in this case.

[3] Footnote 3 of R2's opposition misstates Databricks' argument. There is no evidence of *any* Databricks *user* that directly infringes, whether a user is a Databricks customer or Databricks itself. Additionally, R2's argument that Databricks does not challenge R2's indirect infringement theory

R2's attempt to rely on "circumstantial evidence" of infringement is wrong. It is undisputed that Mr. Davis's infringement theory *requires turning off* Photon, and there is *no evidence* any Databricks user has done that. (Ex. 12, Davis Dep., 88:20-89:1, 116:1-11.) This alone warrants summary judgment. Additionally, generic testimony that Databricks customers ███████████████ does not show infringement as it is untethered from Mr. Davis's specific theory, which only accuses one of the multiple possible joins under specific conditions. For example, it does not show that any Databricks user turned off Photon and/or performed a join on two data sets with different schema that are large enough to invoke the accused Spark Sort Merge Join. (Op. Br. at 11-13; Opp. at 10.) Databricks' testimony that it assists customers with joins and uses its platform on its own data fails for the same reasons. (Opp. at 10.)

R2's argument is also wrong when it asserts direct infringement because Databricks "directs and controls" the platform code that executes in the way Mr. Davis alleges. (Opp. at 11-13.) It is undisputed that the Databricks platform neither initiates nor performs any data processing on its own. (Op. Br. at 5 (undisputed fact 9).) As Mr. Davis testified, "[the user] has to give some code" and must also provide data sets to be analyzed.[4] (Ex. 12, Davis Dep., 13:25-14:6, 18:20-19:1.) Indeed, Mr. Davis's theory required *creating* his own code, data sets, and configuration to force the Databricks platform to perform the allegedly infringing functionality. The Databricks platform simply does not perform *any step* of the claimed method in the way Mr. Davis alleges *unless a Databricks user* does exactly what Mr. Davis did. (Op. Br. at 11-13.) Because "the record

---

is wrong. (Opp. at 13, n.6.) Indirect infringement must also be dismissed as "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004).

[4] Moreover, it is undisputed that Databricks does not direct or control the actions of its customers. (Ex. 10, ███████ Dep., 92:3-10 (███████); Ex. 11, ███████ Dep., 72:22-73:2 ███████ *id.* at 73:19-74:2.)

3

contains no evidence of actual users…infringing," and Mr. Davis is the only user who has ever performed the allegedly infringing functionality, there is "no evidence of direct infringement." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

### III. The Court Should Grant Partial Summary Judgment Because Databricks Classic Compute Does Not Directly Infringe Asserted System Claims 17 and 21 as a Matter of Law Under the Federal Circuit's Opinion in *Centillion*

Claims 17 and 21 require a "computer system [that] *comprises at least one processor and memory that are operable to perform*" the MapReduce steps of the claims. (Dkt. 71 at 6; Ex. 1, '610 patent, claims 17, 21 (emphasis added).) The *entirety* of Mr. Davis's opinion is his speculation that "[t]he Databricks Platform *must* include at least one processor and memory" "configured to perform the operations of claim 17."[5] But he conceded that "Databricks itself *does not provide* processors or memory resources for classic compute," and thus, cannot "make" the claimed system. (Ex. 13, Davis Rep., ¶¶ 188, 228; Ex. 12, Davis Dep., 18:4-7.) And R2 admits that "Databricks *does not sell* processors and memory," and thus, does not "sell" the claimed system. (Opp. at 14.) Databricks also does not "use" the claimed system. Claims 17 and 21 require the same MapReduce steps as claims 1 and 5, and there is *no evidence* that Databricks has ever used its platform in the way Mr. Davis alleges. (Section II, *supra*.) Because R2 cannot show direct infringement of claims 17 and 21, the Court should grant summary judgment.[6]

R2's reliance on how the Databricks platform and cloud providers' processors and memory are "made" to work "after deployment"—i.e., after assembly by the user—is misplaced. As Mr. Davis conceded, *Databricks users* must purchase a third-party "cloud provider's CPU and

---

[5] R2's entire response is attorney argument that cobbles together unrelated opinions of its expert. But "conclusory allegations and attorney arguments are insufficient to overcome…summary judgment." *Ferring B.V. v. Barr Lab'ys, Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006).

[6] R2's argument that serverless compute infringes claims 17 and 21 is wrong. Serverless compute does not meet system claims 17 and 21 for the reasons discussed in Section I.

4

memory," create an account with that cloud provider, and complete steps to have the Databricks platform "loaded into [the user's] account." (Ex. 12, Davis Dep., 18:10-11, 7:22-8:1.) This alone is fatal to R2's claim because a Databricks *user* combines the Databricks platform for classic compute with the cloud provider's "processor and memory." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011) (holding that Qwest did not "make" the claimed system because "[t]he customer, not Qwest, completes the system by providing the 'personal computer data processing means' and installing the client software"). But after a user forms this combination, the processor and memory still are not "operable" to perform the required MapReduce steps until, as Mr. Davis and R2 admit, the user "give[s] some code" by "writing a query to his own data" and "click[ing] run now."[7] (Ex. 12, Davis Dep., 13:25-14:6; 18:20-19:1; Opp. at 15-16.) Thus, Databricks does not "make" the claimed system.[8]

R2's argument that the Databricks platform's "control plane" shows that Databricks "uses" the claimed computer system by controlling it and putting it into service is wrong. (Opp. at 16-17.) As R2 admits, the purpose of the "control plane" is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp. at 17.) Databricks has no "control" over a customer's code, data sets, or configuration of the Databricks platform. (Ex. 10, ▮▮▮ Dep., 92:3-10; Ex. 11, ▮▮▮ Dep., 72:22-73:2, 73:19-74:2.) Thus, the "control plane" does not change

---

[7] R2 misstates Databricks' argument as "reading limitations into the claims." It is an undisputed fact that a user *must* provide data sets and data processing code. Without Mr. Davis's code and data sets, the cloud provider's processors and memory are not "operable to perform" anything, much less the accused Spark Sort Merge Join in the way Mr. Davis alleged.

[8] R2's cited cases are inapposite. In *Garrett* and *Lifetime Industries*, the court denied defendant's motion to dismiss because plaintiff *plausibly* alleged that defendant makes the claimed system. *Garrett v. TP-Link Rsch. Am. Corp.*, No. 20-cv-03491, 2020 WL 6873419, at *6 (N.D. Cal. Nov. 23, 2020); *Lifetime Indus. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1378 (Fed. Cir. 2017). As explained above, R2 cannot plausibly show that Databricks makes, uses, or sells, the claimed "computer system" for classic compute.

5

the fact that Databricks users must assemble the claimed system to work in the way Mr. Davis alleges, which is insufficient as a matter of law. *Centillion,* 631 F.3d at 1284 (finding no control where "the end user was 'using' every element of the system by transmitting a message" even though "the user did not have physical control over" each element).

IV.   **R2 Cannot Show the Accused Functionality Meets the Claimed "Data Groups"**

The Court construed "data group," a term recited in every asserted claim, as "a group of data *and* a mechanism for identifying data from that group." (Dkt. 71 at 6.)  There is no dispute that R2 accuses Delta tables[9] as the claimed "data groups" (Opp. at 19), and R2 further alleges the "'mechanism for identifying data from that group' is the schema of the table itself" where the ▓▓▓ (*id.* at 18). It is also undisputed that ▓▓▓. (*Id.*)  The Court should therefore grant summary judgment because there is no dispute that the accused "mechanism" (schema ▓▓▓ *is not* part of the accused "data group."

R2 attempts to create a fact dispute by characterizing the clear testimony of its expert as a "fallacy." (Opp. at 17.)  But consistent with the opinions in his report, Mr. Davis testified a Delta table is the alleged "data group" and the required "mechanism" is "schema," which he equated with ▓▓▓. (Ex. 12, Davis Dep., 215:9-10 ("That's right.  The Delta table is a data group"); 209:15-18 ("schema is the mechanism for identifying data from a data group"); 208:9-14 ("▓▓▓"); *see also* Ex. 13, Davis Rep., ¶¶ 137, 139.)  And Mr. Davis conceded ▓▓▓

---

[9] R2 argues in a footnote that Mr. Davis's accused "data groups" are not limited to Delta tables. (Opp. at 18, n. 10.)  But, as Mr. Davis admitted, he mapped only Delta tables to the claimed "data groups," he "didn't look at any other data sources," and his "infringement opinion in this case would be the same for a user loading in data" into any other table. (Ex. 12, Davis Dep., 165:2-6; 205:20-25; 207:16-23.)  Thus, R2's reliance on other tables also fails as ▓▓▓, and neither R2 nor Mr. Davis show otherwise.

██████████████████████████████████

██████████████████████████, and thus, cannot be the claimed "data group." (Ex. 13, Davis Rep., ¶ 205; Ex. 12, Davis Dep., 215:11-14, 137:15-19, 165:2-24.)

### V. R2 Cannot Show the Specialized "Mapping Functions" of the Claims are Met

Each asserted claim as construed by the Court requires that "each mapping function is selected for a partition based on the data group the partition originated from." (Dkt. 71 at 27.) R2 agrees that Mr. Davis accuses the ShuffleExchangeExec operator as the "mapping function." (Opp. at 19.) And it is undisputed that this alleged mapping function ████████████████ ████████████████████████████████████████████████████████████████████████████████ ████."[10] (Ex. 12, Davis Dep., 173:8-19; Opp. at 18-20.) Indeed, Mr. Rosen—a Databricks Staff Software Engineer—testified that ████████████████████████████████████████ ████████████████████████████████████████████████████████████" (Ex. 8, Rosen Dep., 194:19-23.) Thus, there is no dispute of fact, and the Court should grant summary judgment.

R2's reliance on Mr. Davis's report fails to create any fact dispute. Mr. Davis opined that ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ and then proclaimed "in [s]ummary" the Court's construction is met. (Opp. at 19.) None of what R2 or Mr. Davis identified is what the Court's construction requires. R2 attempts to fill the gap with attorney argument that "the mapping functions are selected…at the outset, in the query planning stage," and are "preordained." (Opp. at 19-20.) The Court should disregard R2's baseless argument, as Mr. Davis did not even refer to "the querying planning stage," much less how "selection" is somehow "preordained." (Ex. 13, Davis Rep., ¶¶ 147-151.)

---

[10] Indeed, R2 does not dispute that the Databricks platform does not "provide any way to select [a] map function based on what data group a data partition originates from." (Op. Br. at 19.)

7

## VI. R2 Cannot Show the Accused Functionality Meets the Claimed "Reducing"

The "reducing" requirement of each asserted claim, as construed by the Court, requires "[processing] / [process] the intermediate data for each data group in a manner that is defined to correspond to the data group from which the intermediate data originated." (Dkt. 71 at 29-30.) It is undisputed that neither accused operator—SortMergeJoinExec and SortMergeJoinEvaluator—"considers" whether the accused intermediate data comes from a particular "data group" (i.e., Delta table) as required by the Court's construction.[11] (Opp. at 21; *see also* Ex. 12, Davis Dep., 178:7-23). Indeed, as Databricks' technical witnesses testified, the Databricks platform ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. 8, Rosen Dep., 195:12-16.) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. 9, Xin Dep., 129:21-130:7.) The Court should therefore grant summary judgment.

R2's argument that SortMergeJoinEvaluator iterators satisfy this limitation is wrong. Mr. Davis admits that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. 13, Davis Rep., ¶ 169.) And Mr. Davis conceded that the accused operators ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. 12, Davis Dep., 178:18-23.) It is therefore undisputed that these iterators *are not* defined to correspond to the original "data groups."

## VII. CONCLUSION

For the foregoing reasons, Databricks respectfully requests that the Court grant this motion.

---

[11] R2 does not dispute that the Databricks platform does not "provide any way to define a reduce of data based on what dataset the data originated from." (Op. Br. at 20.) R2 also argues it is "irrelevant" whether the accused reduce functionality "considers or uses [D]elta tables" (i.e., alleged "data group") or "consider[s] whether the outputs of the sort step" (i.e., the intermediate data) "come from a particular [D]elta table" (i.e., alleged data group). (Opp. at 21.) Because neither occurs, the processing of "the intermediate data" is not in a "manner that is defined to correspond to the data group from which the intermediate data originated" as required by the Court's construction. (Dkt. 71 at 30.)

██████████████████████████████████████

Dated: May 15, 2025

Respectfully submitted,

*/s/ Vigen Salmastlian*
Michael J. Sacksteder
CA Bar No. 191605 (Admitted E.D. Texas)
Email: msacksteder@fenwick.com
Gregory Sefian
CA Bar No. 341802 (Admitted *Pro Hac Vice*)
Email: gsefian@fenwick.com
S. Emma Lee
CA Bar No. 344074 (Admitted *Pro Hac Vice*)
Email: emma.lee@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:     415.875.2300
Facsimile:      415.281.1350

Vigen Salmastlian
CA Bar No. 276846 (Admitted E.D. Texas)
Email: vsalmastlian@fenwick.com
**FENWICK & WEST LLP**
801 California Street,
Mountain View, CA 94041
Telephone:     650.988.8500
Facsimile:      650.938.5200

Jessica M. Kaempf
WA Bar No. 51666 (Admitted E.D. Texas)
Email: jkaempf@fenwick.com
Jonathan G. Tamimi
WA Bar No. 54858 (Admitted E.D. Texas)
Email: jtamimi@fenwick.com
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:     206.389.4510
Facsimile:      206.389.4511

Dargaye Churnet
CA Bar No. 303659 (Admitted E.D. Texas)
Email: dchurnet@fenwick.com
**FENWICK & WEST LLP**
730 Arizona Ave, 1st Floor
Santa Monica, CA 90401

Telephone: 310.434.5400

Jennifer Truelove
Texas Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: 903.923.9000
Facsimile: 903.923.9099

Derron R. Dacus
Texas Bar No. 00790553
Email: ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 32, Suite 430
Tyler, Texas 75701
Telephone: 903.705.1117

*Attorneys for Defendant
Databricks, Inc.*

10

## CERTIFICATE OF AUTHORIZATION TO SEAL

Pursuant to Local Rule CV-5(a)(7)(B) I am authorized to file the foregoing document under seal pursuant to paragraph 16 of the Protective Order (Dkt. 62) because this document references Designated Material.

*/s/ Vigen Salmastlian*
Vigen Salmastlian

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 15, 2025, a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Additionally, I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail per Local Rule CV-5 on May 15, 2025.

*/s/ Vigen Salmastlian*
Vigen Salmastlian