**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

R2 Solutions LLC,

     Plaintiff,

v.

Databricks, Inc.,

     Defendant.

Civil Action No. 4:23-cv-01147-ALM

Jury Trial Demanded

**PLAINTIFF R2 SOLUTIONS LLC'S SUR-REPLY IN SUPPORT OF OPPOSITION TO DATABRICKS' MOTION FOR SUMMARY JUDGMENT IN SUPPORT OF DAMAGES *DAUBERT* AND INVALIDITY**

## <u>TABLE OF CONTENTS</u>

I.    CLAIMS 5 AND 21 CANNOT BE FOUND INVALID AT THIS STAGE. ..................... 1

II.   THE *VANMOOR* EXCEPTION IS INAPPLICABLE. ....................................................... 1

III.  WHETHER HADOOP INVALIDATES THE CLAIMS IS A FACT QUESTION. ......... 4

IV.   CONCLUSION.................................................................................................................... 5

## **TABLE OF AUTHORITIES**

**Cases**

*Metaswitch Networks, Ltd. v. Genband US LLC*,
   No. 2:14-cv-744-JRG-RSP, 2016 U.S. Dist. LEXIS 25420 (E.D. Tex. Mar. 1, 2016)........... 1, 2

*Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*,
   No. 2:20-cv-00428-DGE, 2024 U.S. Dist. LEXIS 167536 (W.D. Wash. Sep. 17, 2024) .......... 2

*Oyster Optics, LLC v. Alcatel-Lucent USA, Inc.*,
   816 F. App'x 438 (Fed. Cir. 2020) …………………………………………….……… 3, 4, 5

*Vanmoor v. Wal-Mart Stores, Inc.*,
   201 F.3d 1363 (Fed. Cir. 2000)........................................................................................ 1, 2, 3, 4

**Rules, Statutes, and Authorities**

Fed. R. Civ. P. 11(b) ........................................................................................................................ 5

Databricks' motion fails for three reasons. First, Databricks does not dispute there is no evidence to suggest that claims 5 and 21 can be found invalid at this stage because none of the charts identify these claims and Databricks offers no other evidence. Second, Databricks' motion hinges entirely on whether it can rely on the *Vanmoor* exception to "sidestep" its "rigorous standard of proof for invalidity." *Metaswitch Networks, Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 U.S. Dist. LEXIS 25420, at *20 (E.D. Tex. Mar. 1, 2016). It cannot. The exception is inapplicable on its face, and Databricks' motion fails because it does not do an element-by-element comparison of Hadoop with the asserted claims. Third, Databricks' reply solidifies that, even if *Vanmoor* applies, whether Hadoop practices the claims is a fact issue.

## I.    CLAIMS 5 AND 21 CANNOT BE FOUND INVALID AT THIS STAGE.

R2 explained in its opposition that the Court cannot find claims 5 and 21 invalid at this stage because there is no evidence that R2 "admitted" anything with respect to whether Hadoop practices these claims, and Databricks has put forth no other evidence that could support a finding that these claims are invalid. *See* Opp. at 5-6. Databricks did not even attempt to dispute this.

## II.    THE *VANMOOR* EXCEPTION IS INAPPLICABLE.

In its opposition, R2 spent several pages explaining the *Vanmoor* exception and its inapplicability to this scenario. *See* Opp. at 2-6. Databricks spends just two paragraphs on this topic in reply. And it gets the law wrong. Databricks' first argument is that R2 is wrong that "there is no 'identity' between Hadoop and any accused product," referring to accused products in prior cases.  Reply at 2. But the threshold question is not whether there is an identity between *any* accused product in any case and the prior art (*see* Reply at 2)—it is whether there is an identity between the product accused *in this case* and the prior art. *See* Opp. at 3-4. This is clear from the case law discussed in R2's opposition. *See, e.g., id*. at 3-6. Because there is no "identity" between

1

the product accused (Databricks platform) and the alleged prior art (Hadoop), "Databricks is required to do an element-by-element comparison of Hadoop with the asserted claims 'to produce clear and convincing evidence of anticipation.'" *Id*. at 6 (quoting *Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, No. 2:20-cv-00428-DGE, 2024 U.S. Dist. LEXIS 167536, at *28 (W.D. Wash. Sep. 17, 2024)). It did no such comparison, and thus its motion must fail.

Databricks twists the case law to argue otherwise. First, Databricks alleges that "*Vanmoor's* ruling relied on the plaintiff's admissions that the prior art disclosed the claims." Reply at 2. This is an overly broad and misleading description of *Vanmoor*. In *Vanmoor*, the plaintiff accused caulking cartridges of infringing the claims, and then the defendants demonstrated that they had placed those very same "accused caulking cartridges on sale prior to the critical date." *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000). Thus, the court found the defendants' burden was satisfied as to invalidity because the accused products themselves were prior art. *Id*. Subsequent cases have made it abundantly clear that the *Vanmoor* exception applies only in similar circumstances, i.e., when "the allegedly anticipating products are *also* the products accused of infringement" in that case. *Nat'l Prods.*, 2024 U.S. Dist. LEXIS 167536 at *28; *see also Metaswitch Networks, Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 U.S. Dist. LEXIS 25420, at *20 (E.D. Tex. Mar. 1, 2016); Opp. at 3-5.

Databricks distorts the *Oyster* case in alleging that it "extended *Vanmoor* to infringement contentions in a *prior* case." Reply at 2 (emphasis in original). *Oyster* was about interpreting a patent license, not about how a defendant can satisfy its invalidity burden on summary judgment or the intricacies of the *Vanmoor* exception. Oyster sued Fujitsu over Fujitsu's modulators and receivers and separately sued ALU and Cisco over various other products, at least some of which included the Fujitsu modulators and receivers. *Oyster Optics, LLC v. Alcatel-Lucent USA, Inc.*,

816 F. App'x 438, 439 (Fed. Cir. 2020). The cases were consolidated, and Oyster settled with Fujitsu via a license. *Id*. at 440. The Oyster/Fujitsu license released all customers of Fujitsu's "Licensed Products" when the "only reasonable and intended use of the component comprising the Licensed Product [was] to practice the claim and the component substantially embodie[d] the patented invention by embodying its essential feature." *Id*. at 445. "ALU and Cisco moved for partial summary judgment … with respect to their products containing Fujitsu modulators and receivers." *Id*. at 441. Crucially, "[t]he parties [did] not dispute that 'the only reasonable and intended use' of the Fujitsu modulators and receivers contained in [ALU's and Cisco's] accused products [was] to practice the asserted claims…. Thus, the only issue to be decided [was] whether the Fujitsu modulators and receivers 'substantially embod[ied] the patented invention by embodying its essential features." *Id*. As evidence of this, ALU and Cisco pointed to Oyster's infringement contentions mapping the accused Fujitsu modulators and receivers to the claims, Oyster's expert's confirmation that the infringement contentions accused the Fujitsu modulators and receivers, and Oyster's expert's opinion that the accused Fujitsu modulators and receivers infringed the claims. *Id*. at 445-46. The court found, with brief citation to *Vanmoor*, that "in the face of [Oyster's] repeated and consistent statements alleging infringement" of the asserted patent by the "Fujitsu modulators and receivers themselves…, we agree with the district court that the release of [the Oyster/Fujitsu agreement] applied to ALU and Cisco." *Id*. at 446.

As an initial matter, this holding has no bearing on a defendant's ability to rely on the *Vanmoor* exception to sidestep its burden of proving invalidity. To the contrary, the *Oyster* court simply relied on *Vanmoor* in finding that ALU and Cisco were released from liability under the Oyster/Fujitsu license because it was undisputed that the licensed Fujitsu modulators and receivers provided the basis of Oyster's infringement claims against ALU and Cisco. But in any event, far

from being "fatal" to R2's case, *Oyster solidifies* R2's position. Indeed, the infringement contentions ALU and Cisco relied on came from the *same consolidated case* and accused the *same products* that were alleged to embody the patented invention. *Id.* at 446 n.6. Thus, *Oyster* is consistent with *Vanmoor*; it did not extend it.

In summary, Databricks fails to cite even a single case that contravenes R2's extensive explanation and analysis of the *Vanmoor* exception. It is indisputable, then, that to rely on *Vanmoor*, Databricks must show an identity between the accused product (the Databricks platform) and the prior art (Hadoop). It is also undisputed that there is no such identity here. Databricks' motion thus cannot survive. Databricks has not done an element-by-element comparison of Hadoop with the claims or otherwise shown by clear and convincing evidence that the asserted claims are invalid over Hadoop.[1] The Court should deny Databricks' motion.

## III.    WHETHER HADOOP INVALIDATES THE CLAIMS IS A FACT QUESTION.

Databricks' reply is dedicated almost entirely to recounting facts that it thinks are good for its motion and downplaying facts that it thinks are bad for its motion.[2] R2 explained in its opposition that there is a fact issue because it never accused Hadoop, the charts (based entirely on documents that post-date the patent's priority date) are insufficient to demonstrate how Hadoop teaches every limitation even if they can be said to accuse Hadoop, and Mr. Davis dedicated over

---

[1] Moreover, R2 explained in its opposition that Hadoop was not accused in the JP Morgan case or otherwise, meaning that there has never been an "identity" between Hadoop and any accused product. *See* Opp. at 5.

[2] It bears mention here that Databricks introduced evidence in reply which it neglected to include with its motion, including contentions from R2's case against Cloudera. *See* ECF 163-7. The Court should strike this evidence as untimely. But in any event, the Cloudera contentions do not support Databricks' motion. Even a cursory review reveals that R2 identified Cloudera products as the accused instrumentalities, that myriad functionality separate from and in combination with Hadoop was provided for the limitations, and that Hadoop is not even mapped against several limitations (e.g., "data groups", "different schema", and "processing the intermediate data for each data group in a manner that is defined to correspond to that data group"). *See id.* In other words, R2 did not accuse Hadoop in its case against Cloudera or otherwise.

three-dozen paragraphs of his rebuttal report to explaining why Hadoop does not practice or anticipate the asserted claims. *See* Opp. at 6-9. In reply, Databricks simply disagrees and alleges that R2 did accuse Hadoop via the past charts, that the past charts are sufficient to show how Hadoop teaches every limitation, and that Mr. Davis's opinions "do not negate R2's prior [alleged] admissions." Reply at 4. Far from helping its case, Databricks' reply emphasizes these fact disputes and demonstrates that whether Hadoop invalidates the claims is a question for the jury.

It is worth noting, however, that Databricks is legally incorrect in arguing that the JP Morgan contentions must be sufficient to demonstrate how Hadoop teaches every limitation because R2 had a Rule 11 basis to sue JP Morgan. Opp. at 4. Demonstrating a good faith basis to file suit (e.g., that the claim is "nonfrivolous" and "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery") is a far cry from demonstrating how a product satisfies every limitation. *See* Fed. R. Civ. P. 11(b). Indeed, if these standards were coextensive, a plaintiff would be faced with the impossible task of proving its infringement case at the outset without discovery. But the Court has P.R. 3-1(g) for a reason, namely, to allow a plaintiff the "reasonable opportunity" for discovery into the defendant's source code before explaining the theory of how source-code-based products meet every limitation. This is precisely the type of discovery that R2 *had not done* prior to serving the JP Morgan contentions. R2 never looked at JP Morgan's source code and did not flesh out an infringement theory before the case settled, but it would have done so based on JP Morgan's proprietary source code. Thus, although the JP Morgan charts cited Hadoop documentation, they were not admissions that open-source Hadoop meets every claim limitation.

## IV.    CONCLUSION

For at least the foregoing reasons, Databricks' motion should be denied.

████████████████████████████

Dated: May 29, 2025         Respectfully Submitted,

         By: */s/ Carder W. Brooks*
         Edward R. Nelson III
         State Bar No. 00797142
         Christopher G. Granaghan
         State Bar No. 24078585
         John P. Murphy
         State Bar No. 24056024
         Carder W. Brooks
         State Bar No. 24105536
         Nelson Bumgardner Conroy PC
         3131 West 7th Street, Suite 300
         Fort Worth, Texas 76107
         817.377.9111
         ed@nelbum.com
         chris@nelbum.com
         murphy@nelbum.com
         carder@nelbum.com

         COUNSEL FOR
         PLAINTIFF R2 SOLUTIONS LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2025, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

*/s/ Carder W. Brooks*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Carder W. Brooks*