# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| R2 Solutions LLC,<br><br>　　　Plaintiff,<br><br>v.<br><br>Databricks, Inc.,<br><br>　　　Defendant. | Civil Action No. 4:23-cv-01147-ALM<br><br>Jury Trial Demanded<br><br>███████████████ |

**PLAINTIFF R2 SOLUTIONS LLC'S
SUR-REPLY IN SUPPORT OF OPPOSITION TO DATABRICKS'
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

██████████████████████████████

# **TABLE OF CONTENTS**

I. WHETHER SERVERLESS COMPUTE INFRINGES IS A FACT ISSUE...................... 1

II. WHETHER DATABRICKS AND/OR ITS CUSTOMERS DIRECTLY INFRINGE METHOD CLAIMS 1 AND 5 IS A FACT ISSUE. .......................................................... 2

III. WHETHER DATABRICKS DIRECTLY INFRINGES SYSTEM CLAIMS 17 AND 21 IS A FACT ISSUE. ................................................................................................... 3

IV. WHETHER THE ACCUSED INSTRUMENTALITIES INCLUDE "DATA GROUPS" IS A FACT ISSUE. ................................................................................................... 5

V. WHETHER THE ACCUSED INSTRUMENTALITIES MEET THE "MAPPING FUNCTION" LIMITATION IS A FACT ISSUE. .......................................................... 5

VI. WHETHER THE ACCUSED INSTRUMENTALITIES PRACTICE THE CLAIMED "REDUCING" LIMITATION IS A FACT ISSUE. .......................................................... 6

VII. CONCLUSION ............................................................................................................. 6

## **TABLE OF AUTHORITIES**

**Cases and Rules**

*Commil USA, LLC v. Cisco Sys.*,
  575 U.S. 632 (2015). .................................................................................................. 4

Fed. R. Civ. P. 26(e) .................................................................................................... 1

Databricks' reply fails to raise a single point beyond what R2 already refuted in opposition. Indeed, Databricks simply repackages its motion into slimmer form. As laid out in R2's opposition and further here, myriad fact disputes exist as to every issue raised by Databricks, and the Court should deny Databricks' motion.

**I.     WHETHER SERVERLESS COMPUTE INFRINGES IS A FACT ISSUE.**

Databricks has but a single theory to support that serverless compute does not infringe, namely, that serverless compute runs Photon instead of Apache Spark. Thus, if the Court strikes this theory as violating the Joint Stipulation Regarding Source Code and/or Rule 26(e),[1] Databricks' motion should be denied. And even if the Court does not strike it, the question of whether serverless compute infringes must go to the jury for one simple reason: serverless compute includes Databricks Runtime, and Mr. Davis's opinion is that Databricks Runtime infringes. *See* ECF 139 (Opp.) at 7-8. Databricks does not and cannot dispute this.[2] Indeed, Mr. Davis thoroughly analyzed the only code Databricks produced[3] and concluded that Databricks Runtime infringes, and testimony from Databricks' own witnesses establishes that serverless compute runs Databricks Runtime. *See id*. This raises a fact issue regardless of whether Photon can be turned off from a customer's perspective. Indeed, a reasonable jury could find, for example, that Databricks makes an infringing system when it makes serverless compute clusters, because (as discussed in R2's

---

[1] R2 has fully briefed this issue multiple times. *See*, *e.g.*, ECF 82, 115, 139.
[2] Databricks alleges that R2 did not articulate any infringement theory for serverless compute because its contentions did not say "serverless compute." ECF 165 (Reply) at 1. R2 refuted this in the motion to strike briefing. *See* ECF 158 at 1-2. But in summary, the contentions did not say "serverless compute" *or* "classic compute," because they did not have to. R2 accused the platform as a whole, whether offered via classic means or serverless means. Databricks certainly understood this, as it produced documents for serverless compute and put forth non-infringement positions (unrelated to Photon) for serverless compute in discovery. *See* ECF 139 at 6-7.
[3] It bears mention that Databricks produced just one set of code for the entire accused platform. It did not produce one set of code for classic compute and another for serverless compute or otherwise indicate that the code it produced was only for classic compute.

1

opposition and further below) it deploys and implements the very code Mr. Davis accuses of infringement to create such clusters. Regardless of whether Databricks' "gotcha" Photon argument survives, whether serverless compute infringes is a question that must be put to a jury.

## II. WHETHER DATABRICKS AND/OR ITS CUSTOMERS DIRECTLY INFRINGE METHOD CLAIMS 1 AND 5 IS A FACT ISSUE.

In its opposition, R2 laid out the evidence supporting that Databricks directly infringes the method claims. First, R2 demonstrated that the accused platform practices each step. Opp. at 9-11. Second, R2 demonstrated that Databricks performs each step via the accused platform because "Databricks controls the initiation and performance of the infringing methods." *Id*. at 11-12. Third, R2 demonstrated that to the extent any customers practice any of the method steps, the acts are attributable to Databricks. *Id*. at 12-13. Databricks fails to contravene these arguments in reply.

As an initial matter, Databricks misrepresents the record right out of the gate. For example, Databricks alleges that Mr. Davis "conceded he has no evidence" of the technical conditions of infringement being met. Reply at 2. This is wrong, as R2 has already explained. Opp. at 8-11. Databricks also alleges that R2 "does not dispute that Databricks does not 'direct or control'" its customers. Reply at 2. This is also wrong, as R2 provided extensive argument and evidence on exactly this point. Opp. at 11-13.

Next, in arguing that the accused platform does not practice the method steps, Databricks yet again relies on its Photon-based non-infringement theory, arguing that there is no evidence that a Databricks user has ever "turned off Photon." Reply at 3. This should be stricken for the reasons R2 has already explained. Setting that aside, the argument fails because there is sufficient evidence for a jury to find that the accused platform is used without Photon.

2

████████████ R2 also provided evidence from Mr. Davis that the functionality accused of infringing is "fundamental" and that the conditions for infringement "are almost always met." Opp. at 10. Indeed, as just one example, Databricks has not disputed that Dr. Weissman confirmed that functionality accused by R2 "is the default strategy for joins under the conditions identified by Mr. Davis." *Id*. at 11. Based on this evidence, a jury could find that Databricks Runtime is engaged without Photon enabled.

Finally, in arguing that it does not perform the method steps, Databricks just ignores the law. At bottom, Databricks argues that it cannot infringe because the platform needs a query to start processing and needs data to process, neither of which is provided by Databricks.[4] But this is irrelevant; what matters is *who performs the steps*. Databricks does, as R2 already explained. *Id*. at 11-13. Even in reply, **Databricks has not pointed to a single method step that is performed by a customer instead of itself**. The only conclusion is that the Databricks platform is a black box that Databricks invokes itself and is invisible to the customer, putting this squarely within *Akamai*.

### III. WHETHER DATABRICKS DIRECTLY INFRINGES SYSTEM CLAIMS 17 AND 21 IS A FACT ISSUE.

Databricks makes five points about claims 17 and 21 in reply. All fail. First, Databricks again argues (without any legal authority) that it cannot infringe by making or selling the system because it does not provide processors and memory. This is wrong, as R2 already demonstrated in its opposition. *See* Opp. at 13-16. Regardless of whether Databricks provides the processors and memory, it "completes the system" by deploying the infringing platform, and it sells the system

---

[4] It bears mention Databricks is wrong at least because it is the one that provides the query to invoke the platform, as R2 explained and Databricks did not refute. *See* Opp. at 11-13.

3

by charging customers for it. *See id.* Notably, Databricks has no response to R2's bring-your-own-cup-to-Starbucks analogy, which demonstrates exactly how Databricks makes and sells the system even though customers have their own cloud environments.

Second, Databricks alleges it does not use the system because there is "*no evidence* that Databricks has ever used its platform in the way Mr. Davis alleges." Reply at 4 (emphasis in original). As an initial matter, it does not matter if Databricks uses an infringing system in a particular way—it still uses a system that is "operable" as required by the claims and therefore infringes. But regardless, there is copious evidence of Databricks using the system as discussed above and in R2's opposition, even if Databricks does not acknowledge it. Opp. at 16-17.

Third, Databricks argues that customers, not Databricks, make the system because customers must have their own cloud environment and request that Databricks deploy the platform. Reply at 5. This means nothing. Customers come to Databricks with empty servers, and Databricks turns those empty servers into infringing systems by deploying the accused platform. Opp. at 13-16. Regardless of whether customers request that Databricks do this, Databricks is still the one doing it. *See Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 639, 135 S. Ct. 1920, 1926 (2015).

Fourth, Databricks argues that the system is not "operable" to perform the claim elements after Databricks deploys the platform because the user has to provide a query and data and "click run now." Reply at 5. This fails for the same reasons R2 already outlined in opposition. *See* Opp. at 15-16. Writing queries to data and clicking a start button is just how a user interacts with the accused platform. It has nothing to do with what the accused platform is "operable" to do. Indeed, Databricks makes a living off of selling its platform with advertised capabilities, i.e., functionality that the platform is "operable" to perform (including the accused functionality).

Finally, Databricks alleges that it does not use the system because it has "no 'control' over

4

a customer's code, data sets, or configuration of the Databricks platform." Reply at 5. R2 once again dispelled this notion in its opposition. *See* Opp. at 16-17. The facts show, and Databricks has not refuted, that "Databricks receives queries from users, packages them to be operable with the 'compute planes' of the customers, and then invokes functionality in the customers' compute planes using the packaged queries." *Id*. at 17. This is squarely within the "use" contemplated by *Centillion*, which Databricks does not even attempt to address. *Id*. at 17.

IV. **WHETHER THE ACCUSED INSTRUMENTALITIES INCLUDE "DATA GROUPS" IS A FACT ISSUE.**

Databricks' reply just repeats its motion and further mischaracterizes Mr. Davis's testimony. Make no mistake, Mr. Davis *never* ▮▮▮▮▮▮▮▮▮▮, no matter how much Databricks wishes he did. *See* Opp. at 17-18. Mr. Davis's opinion is clear. ▮▮▮▮▮▮▮▮▮▮. It will be up to the jury to decide whether R2 has shown that the "data group" limitation is met or not.

V. **WHETHER THE ACCUSED INSTRUMENTALITIES MEET THE "MAPPING FUNCTION" LIMITATION IS A FACT ISSUE.**

Yet again, Databricks repeats its motion. At bottom, Databricks again alleges that R2 cannot prove infringement because ▮▮▮▮▮▮▮▮▮▮. But nothing in the claims requires this. Mr. Davis explained at length how the accused platform meets this limitation. For example, Mr. Davis reproduced ▮▮▮▮▮▮▮▮▮▮. Opp. at 19-20. He then explained how this and other evidence demonstrates that the accused platform meets this limitation. *Id*. That Databricks disagrees is not grounds for summary judgment.

5

In attacking R2's opposition on this point, Databricks alleges that R2's explanation of how "mapping functions" are selected in the query planning stage is "baseless" because "Mr. Davis did not even refer to 'the query planning stage'" and did not use the word "preordained." Reply at 7. Databricks is playing word games. ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ *See* Opp. at 18-20. This is exactly what R2 was referring to in its opposition, regardless of whether R2's word choice is identical to Mr. Davis's.

## VI.  WHETHER THE ACCUSED INSTRUMENTALITIES PRACTICE THE CLAIMED "REDUCING" LIMITATION IS A FACT ISSUE.

Databricks' position is that the reduce functions themselves must "consider" whether certain data comes from a certain data group to meet the limitation. But the claims do not require this. R2 explained in opposition why the accused platform satisfies this limitation. Specifically, as one example, the Databricks platform "processes intermediate data in a manner that is defined to correspond to original data groups, because it uses data group specific iterators that accomplish processing that is 'tailored and corresponds' to each of the data groups." Opp. at 21. Whether this meets the limitation is a question for the jury.

## VII. CONCLUSION

R2's evidence of Databricks' infringements of all asserted claims is extensive. It is telling that Databricks' flagship argument violates both a stipulation and the Federal Rules—if Databricks had a better one, it would lead with it. The undeniable truth is this: Databricks is using its own misrepresentations as both sword and shield. In discovery, Databricks made misrepresentations to shield itself from discovery into proprietary and highly relevant code. Now Databricks is trying to use those same misrepresentations to cut down R2's infringement case. The Court should not allow this. Databricks' motion should be denied.

Dated: May 29, 2025                                      Respectfully Submitted,

                                                By: */s/ Carder W. Brooks*
Edward R. Nelson III
State Bar No. 00797142
Christopher G. Granaghan
State Bar No. 24078585
John P. Murphy
State Bar No. 24056024
Carder W. Brooks
State Bar No. 24105536
Nelson Bumgardner Conroy PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111
ed@nelbum.com
chris@nelbum.com
murphy@nelbum.com
carder@nelbum.com

COUNSEL FOR
PLAINTIFF R2 SOLUTIONS LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2025, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

*/s/ Carder W. Brooks*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Carder W. Brooks*