**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

R2 SOLUTIONS LLC,

                Plaintiff,

    v.

DATABRICKS, INC.,

                Defendant.

Civil Action No. 4:23-cv-01147-ALM

**JURY TRIAL DEMANDED**

**DEFENDANT DATABRICKS, INC.'S SUR-REPLY IN OPPOSITION TO PLAINTIFF R2 SOLUTIONS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DATABRICKS' LICENSE DEFENSE BASED ON APACHE CONTRIBUTIONS**

**TABLE OF CONTENTS**

Page

I.    R2'S FAILURE TO DISCLOSE ITS STATUTE OF FRAUDS DEFENSE WAS PREJUDICIAL AND SHOULD BE BARRED ................................................................... 1

II.   R2'S STATUTE OF FRAUDS DEFENSE FAILS ............................................................ 1

      A.    There is no time period in the Apache 2.0 license that triggers the Statute of Frauds. ................................................................................................................... 1

      B.    R2's estoppel arguments are legally and factually wrong. ..................................... 2

      C.    R2 acknowledges that a key Yahoo contributor testified to the writings evidencing Yahoo's authorization to its agents. ..................................................... 4

III.  THERE IS AMPLE EVIDENCE OF YAHOO CONTRIBUTIONS THAT MEET THE APACHE LICENSE'S "NECESSARILY INFRINGED" REQUIREMENT .................... 5

IV.   CONCLUSION ................................................................................................................. 7

████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andreoli v. Youngevity Int'l,*
 3:16-cv-2922, 2021 WL 4943569 (S.D. Cal. Mar. 23, 2021)...................................................2

*Caplan v. Roberts,*
 506 F.2d 1039 (9th Cir. 1974) ...............................................................................................3

*Google Inc. v. Beneficial Innov., Inc.,*
 No. 2:11-cv-229, 2014 WL 4215402 (E.D. Tex. Aug. 22, 2014)...........................................6

*Kerner v. Hughes Tool Co.,*
 56 Cal. App. 3d 924 (1976) ....................................................................................................4

*Lennar Mare Island, LLC v. Steadfast Ins. Co.,*
 176 F. Supp. 3d 949 (E.D. Cal. 2016).....................................................................................6

*Pardi v. Kaiser Found. Hosps.,*
 389 F.3d 840 (9th Cir. 2004) ..................................................................................................6

*Radio Sys. Corp. v. Lalor,*
 709 F.3d 1124 (Fed. Cir. 2013)...............................................................................................3

*Smartflash LLC v. Apple Inc.,*
 No. 6:13-cv-447-448, 2015 WL 660293 (E.D. Tex. 2015) ....................................................7

STATUTES

Cal. Civ. Code § 1624(a)(1).................................................................................................................2

OTHER AUTHORITIES

Fed. R. Civ. P. 37(c)(1)........................................................................................................................1

FRE 1002 ...............................................................................................................................................5

▮▮▮▮▮▮▮▮▮▮▮▮

**TABLE OF EXHIBITS[1]**

| No. | Exhibit |
|-----|---------|
| 1 | Apache License, Version 2.0, January 2004 (Databricks_R2_00090071-0075) ("Apache 2.0 License") |
| 2 | Apache Individual Contributor License Agreement executed by ▮▮▮ ▮▮▮ (ASF_R2-DB_0000001-0002) ("▮▮▮ ICLA") |
| 3 | Apache Individual Contributor License Agreement executed by ▮▮▮ (ASF_R2-DB_0000003-0005) ("▮▮▮ ICLA") |
| 4 | Apache Individual Contributor License Agreement executed by ▮▮▮ ▮▮▮ (ASF_R2-DB_0000006-0007) ("▮▮▮ ICLA") |
| 5 | Apache Individual Contributor License Agreement executed by ▮▮▮ ▮▮▮ (ASF_R2-DB_0000008-0010) ("▮▮▮ ICLA") |
| 6 | Apache Individual Contributor License Agreement executed by ▮▮▮ (ASF_R2-DB_0000011-0013) ("▮▮▮ ICLA") |
| 7 | Apache Individual Contributor License Agreement executed by ▮▮▮ (ASF_R2-DB_0000014-0016) ("▮▮▮ ICLA") |
| 8 | Apache Individual Contributor License Agreement executed by ▮▮▮ (ASF_R2-DB_0000020-0021) ("▮▮▮ ICLA") |
| 9 | Apache Individual Contributor License Agreement executed by ▮▮▮ (ASF_R2-DB_0026655) ("▮▮▮ ICLA") |
| 10 | Apache Individual Contributor License Agreement executed by ▮▮▮ (ASF_R2-DB_0026656-6657) ("▮▮▮ ICLA") |
| 11 | Excerpts of the Transcript of the March 25, 2025 Deposition of William Davis ("Davis Op. Dep.") |
| 12 | Excerpts of the Transcript of the February 13, 2025 Deposition of ▮▮▮ ("▮▮▮ Dep.") |
| 13 | Excerpts of the Transcript of the January 31, 2025 Deposition of ▮▮▮ ("▮▮▮ Dep.") |

---

[1] Exhibits 47-54 are attached to the Sur-Reply Declaration of Vigen Salmastlian; all other exhibits are attached to the Opposition Declaration of Vigen Salmastlian, Dkt. 145-1.

████████████████████████████████████████████

| No. | Exhibit |
|-----|---------|
| 14 | Excerpts of the Expert Report of Jon Weissman Concerning Invalidity of U.S. Patent No. 8,190,610 ("Weissman Op.") |
| 15 | Excerpts of the Transcript of the February 12, 2025 Deposition of Douglass Cutting ("Cutting Dep.") |
| 16 | Archived Apache Spark Webpage Titled "Current Committers" (Databricks_R2_00102767-2769) ("Spark Committer List") |
| 17 | Yahoo Open Source Guide Webpage Titled "Special Recordkeeping for Special Projects" (Databricks_R2_00118512-8514) ("Yahoo Open Source Guide") |
| 18 | Apache Software Foundation Blog Post Titled "The Apache Software Foundation Announces Apache Spark as a Top-Level Project" (Databricks_R2_00097024-7025) ("Apache Spark Press Release") |
| 19 | Yahoo Press Release Titled "Yahoo! Commits to Apache Software Foundation as Platinum Sponsor" (Databricks_R2_00118660-8661) ("Yahoo Press Release") |
| 20 | Yahoo Developer Network Post Titled "The Backstory of Yahoo and Hadoop" (Databricks_R2_00091755-1757) ("Backstory of Yahoo and Hadoop") |
| 21 | Databricks' Initial Disclosures dated July 16, 2024 ("Initial Disclosures") |
| 22 | Excerpts of Databricks' Omnibus Supplemental Objections and Responses to R2's Interrogatories (Nos. 1-36) ("Omnibus Supplemental Responses") |
| 23 | R2's Third Supplemental Objections and Responses to Databricks' Second Set of Interrogatories (No. 25) ("Supp. Resp. to Interrog. 25") |
| 24 | ███████████████████████████████████████ |
| 25 | Yahoo Presentation Titled "Hadoop and Spark Join Forces at Yahoo" (Databricks_R2_00096253-6271) ("Hadoop and Spark Join Forces at Yahoo") |
| 26 | Apache Software Foundation Webpage Titled "Frequent Questions About Apache Licensing" (R2_DB_126730-6740) ("Apache FAQ") |
| 27 | Compiled Apache Spark GitHub Webpages Showing Yahoo Employee Contributions (Databricks_R2_00118771-8844) ("Apache Spark Contributions") |
| 28 | Compiled CaffeOnSpark GitHub Webpages Showing Yahoo Employee Contributions (Databricks_R2_00118845-8861) ("CaffeOnSpark Contributions") |

██████████████████████████████████████

| No. | Exhibit |
|-----|---------|
| 29 | Excerpts of the Expert Report of Gareth Macartney, Ph.D. ("Macartney Rep.") |
| 30 | Excerpts of the Expert Report of Jim W. Bergman ("Bergman Rep.") |
| 31 | Apache Software Foundation Blog Post Titled "The Apache Software Foundation Celebrates 20 Years of Community-Led Development 'The Apache Way'" (████████_00000241-0254) ("Apache Community-Led Development") |
| 32 | Excerpts of the Expert Report of William Davis Concerning Infringement of U.S. Patent No. 8,190,610 ("Davis Op.") |
| 33 | Excerpts of the Transcript of the March 27, 2025 Deposition of William Davis ("Davis Rebut. Dep.") |
| 34 | Commit to RDD.scala by ██████████ (Databricks_R2_00116703-6712) ("RDD.scala") |
| 35 | Commit to PairRDDFunctions.scala by ████████████ (Databricks_R2_00116732-6733) ("PairRDDFunctions.scala") |
| 36 | Commit to ShuffleHandle.scala by ██████████████ (JWeissman_00006422-6423) ("ShuffleHandle.scala") |
| 37 | Apache Spark File ShuffleExchange.scala (Databricks_R2_00117414-7419) (ShuffleExchange.scala) ("ShuffleExchange.scala") |
| 38 | Excerpts of the Transcript of the March 21, 2025 Deposition of Jon Weissman ("Weissman Dep.") |
| 39 | Commit to ZippedPartitionsRDD.scala by ██████████████ (Databricks_R2_00098922-8925) ("ZippedPartitionsRDD.scala") |
| 40 | Commit to ZippedRDD.scala by ████████████ (Databricks_R2_00098908-8909) ("ZippedRDD.scala") |
| 41 | Commit to DAGScheduler.scala by ████████████ (JWeissman_00000110-0126) ("DAGScheduler.scala") |
| 42 | Apache Hadoop Webpage Titled "Apache Hadoop NextGen MapReduce (YARN)" (Databricks_R2_00116132-6133) ("MapReduce 2.0") |
| 43 | Excerpts of infringement contentions served by R2 in *R2 Solutions LLC v. Cloudera, Inc.*, No. 1:23-cv-1205 (W.D. Tex.) (R2_DB_105120, 5218) ("Cloudera Contentions") |

███████████████████████████████████████████████

| No. | Exhibit |
| --- | --- |
| 44 | Excerpts of infringement contentions served by R2 in *R2 Solutions LLC v. JP Morgan Chase & Co.*, No. 21-cv-00174 (E.D. Tex.) (R2_DB_065079, 5087) ("JP Morgan Contentions") |
| 45 | Yahoo Developer Network Blog Post Titled "CaffeOnSpark Open Sourced for Distributed Deep Learning on Big Data Clusters" (Databricks_R2_00118639-8644) ("CaffeOnSpark Open Sourced") |
| 46 | Archived Webpage of CaffeOnSpark GitHub Repository (Databricks_R2_00108087-8088) ("CaffeOnSpark Archive") |
| 47 | ████████████████████████████████ |
| 48 | Additional excerpts of the Transcript of the February 13, 2025 Deposition of ███ ████████ ("█████ Dep.") |
| 49 | Additional excerpts of the Transcript of the January 31, 2025 Deposition of ████████████ ("██████ Dep.") |
| 50 | Contributions to YARN in the Apache Spark GitHub Repository (Databricks_R2_00107709-7712) ("YARN Commits") |
| 51 | Additional excerpts of the Expert Report of William Davis Concerning Infringement of U.S. Patent No. 8,190,610 ("Davis Op.") |
| 52 | Plaintiff's Second Supplemental Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") |
| 53 | Declaration of Jon Weissman and Excerpts of the Expert Report of Jon Weissman Concerning Invalidity of U.S. Patent No. 8,190,610 |
| 54 | Declaration of Gareth Macartney, Ph.D. and Excerpts of the Expert Rebuttal Report of Gareth Macartney, Ph.D. |

███████████████████████████████████████████

## I.    R2'S FAILURE TO DISCLOSE ITS STATUTE OF FRAUDS DEFENSE WAS PREJUDICIAL AND SHOULD BE BARRED

As R2 admits, R2 did not disclose its reliance on the California Statute of Frauds during discovery.  Databricks' relevant interrogatory sought the full "factual *and legal basis*" for any contention that the Apache 2.0 license does not result in a license to Databricks.  (Dkt. 145 ("Opp.") at 6.)  R2 responds that its interrogatory response—served less than a week before the close of fact discovery—stated that Databricks had not identified a "written agreement" or "written record(s)." (Dkt. 161 ("Reply") at 1.)  But that is not a "legal basis."  R2's interrogatory response does not disclose or even suggest R2's reliance on the California Statute of Frauds, much less provide notice of R2's new theory that any "written agreement" must "be signed by Yahoo." (Dkt. 107 ("Mot.") at 1.)  If R2 had properly disclosed its concealed theory, Databricks would have pursued additional evidence ████████████████████████████████████████

████████████████████████████████████  Indeed, through the testimony of a former Yahoo engineer, Databricks identified and deposed ████████████ during the last week of fact discovery. He was ██████████████████████████████████████ and testified that his team kept written records of approved employee contributors and tracked contributions through internal Jira and Bugzilla repositories.  (Ex. 48, ████████ Dep. at 86:4-87:22.)  R2 concealed its legal theory until summary judgment to prevent Databricks from seeking this additional discovery. R2's failure to disclose its theory was not harmless, and R2 does not even attempt to explain how it was substantially justified.  R2's belated theory should be stricken.  Fed. R. Civ. P. 37(c)(1).

## II.    R2'S STATUTE OF FRAUDS DEFENSE FAILS

### A.    There is no time period in the Apache 2.0 license that triggers the Statute of Frauds.

R2 does not dispute that the California Statute of Frauds applies to only those agreements where "*by its terms* it is *impossible* for performance in the [year-long] period."  (Opp. at 8 (citing

1

*Andreoli v. Youngevity Int'l*, 3:16-cv-2922, 2021 WL 4943569, at *4 (S.D. Cal. Mar. 23, 2021). As explained in Databricks' opposition, the time period for the Apache 2.0 patent grant is indefinite, and thus, the statute does not apply. (Opp. at 7-9). R2's argument that the copyright and patent provisions trigger the Statute of Frauds is wrong because both provisions are expressly "perpetual.". *Andreoli*, 2021 WL 4943569 at *4 (an agreement "in perpetuity" is "indefinite"). Neither contains time periods that render performance within a year "impossible," much less *require* performance after a year-long period. R2's reliance on the expiration date of the '610 patent also fails. The terms *of the agreement* determine whether performance within a year is impossible. Cal. Civ. Code § 1624(a)(1). As R2 admits, "the Apache 2.0 license and the ICLAs do not list the patents they apply to," much less the '610 patent or its expiration date. (Reply at 1-2.) Because the Apache 2.0 license is not tied to a particular patent, the duration of any patent license is indefinite and may fall within a year.[2] Thus, the Statute of Frauds does not apply.

**B.    R2's estoppel arguments are legally and factually wrong.**

R2 admits that "Yahoo intended to embrace and contribute to the open-source community, including Apache Spark" (Reply at 3) and does not dispute that Yahoo extensively published its open-source commitment and contributions to Apache Spark, including on its Yahoo Developer Network blog, podcasts, and external conferences and events. (Opp. at 11.) R2 also does not dispute that Yahoo's contributions were made under the Apache 2.0 license, which "grant[ed] to the Open Source community *a license to its patents that covered Spark*." (*Id.* at 10-11 (citing Exs. 12, 14).) Nor does R2 dispute or respond to Databricks' second basis for estoppel, based on unjust enrichment.[3] (*See* Opp. at 10 (quoting and applying *Chavez v. Indymac Mortg. Servs.*, 219 Cal.

---

[2] R2 does not dispute that ICLA's could be performed within a year as Yahoo employees actually made contributions to Apache Spark within a year. (Opp. at 9-10.) Thus, the statute does not apply.
[3] R2 does not address the specific benefits Yahoo realized from its representations that it was contributing to Apache open-source projects, including Spark under the Apache 2.0 license.

████████████████████████████████████

App. 4th 1052, 1058 (2013)).)  Thus, the Court should deny R2's motion on these facts alone.

R2 is legally and factually wrong when it argues that estoppel does not apply because there is no evidence that *R2* made any "representation" about a license to the '610 patent.  (Reply at 2-3.)  "Equitable estoppel applies to successors-in-interest where privity has been established." *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1131 (Fed. Cir. 2013). ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████  R2 is legally bound to the encumbrances created by Yahoo's open-source activities and representations and cannot now avoid those encumbrances.

R2's argument that estoppel requires a representation specific to the '610 patent also fails. The Apache 2.0 license applies to *any* "patent claims licensable" by a contributor.  (*Id.* Ex. 1, Apache 2.0 License, Databricks_R2_00090072.)  Yahoo made broad representations that implicated all Yahoo "patents that covered Spark," which includes the '610 patent.  (*Id.* Ex. 12, ████████ Dep. at 20:20-25.)  At the very least, these are material disputes of fact for the jury.

R2 also misses the mark when it argues that there is no evidence of Databricks' detrimental "reliance" on Yahoo's commitment to the Apache license.[5]  Databricks relied on Yahoo's representations and has used Apache Spark with the understanding that "all contributors"—which Databricks has long known includes Yahoo (*id.* Ex. 16)—"have granted licenses to their patents

---

Yahoo was able to recruit world class scientists, develop and improve open-source projects with community resources, avoid obsolescence by encouraging adoption of Apache projects, including Spark, as industry standards, and develop good will and a positive reputation.  (Opp. at 12.) Because each of these issues that are relevant to "estoppel is a question for the trier of fact," they preclude summary judgment.  *Caplan v. Roberts*, 506 F.2d 1039, 1042 (9th Cir. 1974).

[4] Unless otherwise noted, all emphasis is added.

[5] Databricks' sworn expert reports provide this evidence.  (Opp. Ex. 14, Weissman Op., ¶¶ 992, 1001-12; Exs. 53, 54.)

that cover the project." (*Id.* at 12-13 (citing *id.* Ex. 29, Macartney Rep., ¶¶ 31, 51, 64; Ex. 30, Bergman Rep., ¶ 83).) Databricks relied on Yahoo's representations, and if R2 were permitted to rely on the Statute of Frauds, it will result in an unconscionable injury and unjust enrichment.[6] At a minimum, numerous factual disputes preclude summary judgment.

### C.    R2 acknowledges that a key Yahoo contributor testified to the writings evidencing Yahoo's authorization to its agents.

R2 does not dispute the wealth of evidence that Yahoo's agents signed ICLAs on Yahoo's behalf (Opp. at 7-8), and that Yahoo granted its agents both actual authority (*id.* at 14-15) and ostensible authority to enter those agreements (*id.* at 16-17).

R2 misapplies the law when it asserts Yahoo's authorizations to enter Apache ICLAs must also have been "in writing." (Reply at 4-5.) First, even if Yahoo had *not* given written authorization, "[a] principal is estopped to raise the equal dignities rule" (the statute R2 invokes) where "the principal, by its own conduct, lulls the third party into believing that its agent has written authority to enter the contract or has no need of written authority." *Kerner v. Hughes Tool Co.*, 56 Cal. App. 3d 924, 934 (1976). ███████ testified that Yahoo had "***hundreds***" of authorized contributors and maintained an entire list of authorizations to those Yahoo agents. (*Id.* Ex. 12, ███████ Dep., 33:19-34:3, 24:7-26:18.) Summary judgment is thus improper, at least because a jury can readily find Yahoo authorized its agents to sign ICLAs and bind Yahoo to the patent grant of the Apache 2.0 license.

---

[6] R2 does not legitimately dispute the far-reaching impact its Statute of Frauds theory would have on the Apache open-source community. (Opp. at 4.) R2 argues "the purpose of the CCLA" is to obviate that impact, but R2 ignores that an Apache ICLA—as executed by Yahoo employees that contributed to Spark—is sufficient, and a CCLA *is not required*. (Opp. Ex. 7, ███████ ICLA, ASF_R2-DB_0000016 (requiring a representation that an employer provided "permission" and "waived such rights," "***or*** that [the] employer has executed a separate Corporate CLA").) R2's position would nullify the patent grant underlying hundreds, if not thousands, of open-source projects, dismantle the Apache open-source community, and result in unconscionable harm to thousands of contributors and users that reasonably rely on the Apache open-source license.

███████████████████████████████████████

Second, any writing requirement was satisfied, as ████████ testified that Yahoo provided authorizations by email and maintained internal lists of authorized individuals. (Ex. 48, ████ Dep. at 23:5-24:16, 92:13-93:22, 74:7-13.) Indeed, ████████ testified that Yahoo provided written authorization of his ICLA by email. (Opp. Ex. 13, ████ Dep. at 219:2-220:10.) R2 argues Mr. ████ testimony is "inadmissible" under FRE 1002, but provides no support for that conclusion. (Reply at 5.) FRE 1002 does not apply where documents are no longer available. And as ████████ testified, his Yahoo employment ended over a decade ago, and he no longer had access to his Yahoo emails. (Ex. 49, ████ Dep., at 219:2-220:13, 211:4-13.) Regardless, R2 has no response to ████████ testimony corroborating that ██████ was an approved contributor who had written authorization. (*Id.* Ex. 12, ██████ Dep., at 26:5-8) R2 also attempts to dismiss the email authorization of ████████ as "only establish[ing] ████████ authority." (Reply at 5.) But the fact that the email "establish[es] ██████ authority" is sufficient, as ████ ████ signed the ICLA and made relevant and material contributions to Spark that triggered a license to the '610 patent.

## III.   THERE IS AMPLE EVIDENCE OF YAHOO CONTRIBUTIONS THAT MEET THE APACHE LICENSE'S "NECESSARILY INFRINGED" REQUIREMENT

The Apache 2.0 license is triggered where patent claims are "necessarily infringed" by "Contribution(s) alone" *or* by "combination of their Contribution(s) with the Work to which such Contribution(s) was submitted." This second category does not specify what portion of the "infringement" is a result of the "work" as opposed to the "contribution." Under this agreement, if the work itself infringes a party's patent, a party's *contribution* to that work is sufficient to trigger the license because the contribution in combination with the work also infringes. (*Id.* at 17-18.) It is undisputed that, during the time Yahoo owned the '610 patent, Yahoo made hundreds of contributions to versions of Spark that R2 alleges infringes the '610 patent. Thus, under the plain

██████████████████████████████

meaning of the agreement, and under R2's infringement theory, Yahoo's contributions to Spark triggered a license to the '610 patent.

R2's misreads the agreement when it argues that this interpretation does not give effect to all provisions. (Reply at 5.)  The agreement does not grant a license based on an allegedly infringing work *alone*. (*Id.*)  Rather, a party's *contribution* to that work triggers the license.  As a matter of policy, a party's *contribution* is a message to the open-source community that the party is embracing the open-source project, is granting a license to its patents the project implicates, and thus, guarantees that the party will not sue users of that open-source project for patent infringement. (Opp. Ex. 12, ████ Dep. at 67:9-18.)  The uncontroverted testimony of Yahoo's senior leadership confirms that Yahoo understood the Apache 2.0 license and the effect of its contributions this way. (*Id.* at 18; *id.* Ex. 12 ████ Dep., 65:9-66:11, 130:9-21).)  R2's argument that the contribution must "cause" or "play some role in infringement" is simply wrong. (Reply at 5; Mot. at 17.)  Those words appear nowhere in the agreement, and that is fatal to R2's motion.[7]

Regardless, Databricks has provided ample evidence of Yahoo contributions to features of Spark that additionally "play[] some role in infringement" under R2's own infringement theories.[8]  First, it is undisputed that R2 alleged in the JPMorgan case that Hadoop Yarn meets at least claim elements 1[PRE], 1[D], and 17[PRE].  (Opp. at 20.)  And the uncontroverted testimony of ████ ████ confirmed that Yahoo contributed Hadoop YARN to Apache Spark. (*Id.* Ex. 13, ████ Dep. at 238:12-17; *see also* Ex. 50, YARN Commits, Databricks_R2_00107709 (showing YARN

---

[7] R2 ignores that the parties' conflicting interpretations show the provision is ambiguous, which precludes summary judgment. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 848 (9th Cir. 2004).  Ambiguity also permits considering the contracting parties' intent, which is a dispute of fact. *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 964 (E.D. Cal. 2016).

[8] R2's "accusations of infringement serve as a 'binding admission' which may be properly considered as evidence."  *Google Inc. v. Beneficial Innov., Inc.*, No. 2:11-cv-229, 2014 WL 4215402, at *4-*5 (E.D. Tex. Aug. 22, 2014).

is integrated into Spark as "spark /yarn").)  R2's attempt to distinguish Hadoop YARN from Spark is therefore nonsensical, and based on R2's own allegations, Yahoo's contribution of YARN to Spark "plays some role in infringement."  Second, Databricks identified multiple Yahoo contributions to the specific Spark functionality that R2 relies on for infringement in this case. (Opp. at 19-20.)  For example, Yahoo contributed to ZippedPartitionsRDD, which Mr. Davis conceded is "used as part of the sort processing" of the accused SortMergeJoin that Mr. Davis mapped to element 1[E].  (*Id.* at 20; Ex. 51, Davis Op., App. C at 22, 23, 26.)  As another example, Yahoo contributed to "ShuffleHandle" which implements the ShuffleExchangeExec functionality that Mr. Davis alleges is the claimed "map function" of element 1[B].  (Opp. at 19 n.7.)  As yet another example, Yahoo contributed to DAGScheduler and RDD functionality that Mr. Davis relies on for infringement. (*See e.g.*, *id.* at 20; *see also id.* Ex. 32, Davis Op., ¶¶ 68, 74 (describing RDDs as "central to [Spark's] design" and "naturally divide[] data into partitions").)  R2's infringement contentions also identified these files as "evidence" of infringement.  (Ex. 52, Infringement Contentions at 36, 40, 46, 61-62, 67, 83, 93, 146 (ZippedPartitionsRDD); 18, 23-24, 90, 99, 106, 143 (RDD); 11, 29, 39, 73, 78 (DAGScheduler).)  Third, while it is undisputed that Yahoo contributed CaffeOnSpark—Yahoo's combination of Caffe with Spark—under the Apache 2.0 license, R2 baselessly argues Yahoo did not contribute Spark.  (Reply at 7.)  As Yahoo witnesses testified, and R2 admits, CaffeOnSpark *requires* Spark and cannot run without it.  (Opp. at 7; *id.* Ex. 13, ███ Dep. at 71:5-8.)

R2's disputes concerning these facts confirms these are issues for the jury.  *Smartflash LLC v. Apple Inc*., No. 6:13-cv-447-448, 2015 WL 660293, at *6-*7 (E.D. Tex. 2015) ("differences in expert opinion…are for the trier of fact").  The Court should therefore deny R2's motion.

## IV.    CONCLUSION

For the foregoing reasons, Databricks requests that the Court deny R2's motion.

Dated: May 29, 2025

Respectfully submitted,

*/s/ Vigen Salmastlian*

Michael J. Sacksteder
CA Bar No. 191605 (Admitted E.D. Texas)
Email: msacksteder@fenwick.com
Gregory Sefian
CA Bar No. 341802 (Admitted *Pro Hac Vice*)
Email: gsefian@fenwick.com
S. Emma Lee
CA Bar No. 344074 (Admitted *Pro Hac Vice*)
Email: emma.lee@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

Vigen Salmastlian
CA Bar No. 276846 (Admitted E.D. Texas)
Email: vsalmastlian@fenwick.com
**FENWICK & WEST LLP**
801 California Street,
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

Jessica M. Kaempf
WA Bar No. 51666 (Admitted E.D. Texas)
Email: jkaempf@fenwick.com
Jonathan G. Tamimi
WA Bar No. 54858 (Admitted E.D. Texas)
Email: jtamimi@fenwick.com
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:    206.389.4510
Facsimile:    206.389.4511

Dargaye Churnet
CA Bar No. 303659 (Admitted E.D. Texas)
Email: dchurnet@fenwick.com
**FENWICK & WEST LLP**
730 Arizona Ave, 1st Floor
Santa Monica, CA 90401
Telephone:    310.434.5400

Jennifer Truelove
Texas Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: 903.923.9000
Facsimile: 903.923.9099

Derron R. Dacus
Texas Bar No. 00790553
Email: ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 32, Suite 430
Tyler, Texas 75701
Telephone: 903.705.1117

*Attorneys for Defendant*
*Databricks, Inc.*

## CERTIFICATE OF AUTHORIZATION TO SEAL

Pursuant to Local Rule CV-5(a)(7)(B) I am authorized to file the foregoing document under seal pursuant to paragraph 16 of the Protective Order (Dkt. 61) because this document references Designated Material.

*/s/ Vigen Salmastlian*
Vigen Salmastlian

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 29, 2025, a true and correct copy of the above and foregoing documents are being served via electronic mail to all counsel of record for all parties per Local Rule CV-5.

*/s/ Vigen Salmastlian*
Vigen Salmastlian