United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| R2 SOLUTIONS LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 4:23-CV-1147 |
| | § | Judge Mazzant |
| DATABRICKS, INC., | § | |
| | § | |
| *Defendant.* | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Databricks, Inc.'s Motion to Compel Plaintiff R2 Solutions, LLC to Produce Financial Documents (Dkt. #83). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

### BACKGROUND

This is a patent case in which Plaintiff, a non-practicing entity, alleges that Defendant, a data analytics company, infringed U.S. Patent No. 8,190,610 ("the '610 Patent") by incorporating Apache Spark into its software products (Dkt. #1 at p. 5). The issue before the Court is whether it should compel Plaintiff to produce financial statements from 2020–2024 (Dkt. #83 at p. 2). Defendant argues that the statements are relevant to Plaintiff's damages claim because they frame the hypothetical negotiation analysis underlying a reasonable royalty (Dkt. #83 at p. 2). Plaintiff contends that its financial condition is irrelevant because it does not sell products or services, and the financial statements are not probative of any disputed issue (Dkt. #89 at pp. 2, 4–5).

On February 4, 2025, the Court held a discovery conference on this and other issues in the case (*See* February 4, 2025 Minute Entry). After hearing arguments from both parties, the Court denied Defendant's request for Plaintiff's financial statements but allowed Defendant to file a

motion to compel on the issue (*See* February 4, 2025 Minute Entry). On February 10, 2025, Defendant filed its Motion (Dkt. #83). On February 18, 2025, Plaintiff filed its Response (Dkt. #89). On February 25, 2025, Defendant filed its Reply (Dkt. #96). On March 4, 2025, Plaintiff filed its Sur-Reply (Dkt. #99). The Motion is now ripe for adjudication.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party'" (Dkt. #28 at p. 6). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The movant bears the burden to show that the materials and information sought are discoverable. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the movant establishes that the materials requested are within the scope of permissible discovery, the

2

burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. *See* FED. R. CIV. P. 34. Rule 34 requires that responses to requests for production "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." *Id.*

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. *Id.*, advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or

3

expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## ANALYSIS

To be discoverable, documents must be relevant to a claim or defense, non-privileged, and proportional to the needs of the case. *See* FED. R. CIV. P. 26(b)(1). As discussed below, the Court deems Defendant's requested discovery irrelevant to any claim or defense in this case. Defendant therefore cannot meet its threshold burden to show that the documents it seeks are discoverable. Accordingly, Defendant is not entitled to Plaintiff's financial statements from 2020–2024. Defendant's Motion (Dkt. #83) should accordingly be **DENIED**.

### I. Relevance Under the *Georgia-Pacific* Factors

Defendant argues that Plaintiff's financial statements from 2020–2024 are relevant to Plaintiff's damages claim for reasonable royalties by way of *Georgia-Pacific* Factor Five (i.e., the parties' commercial relationship) and Factor Twelve (i.e., customary profit or selling price) (Dkt. #83 at p. 7).[1] *See Georgia-Pac. Corp.*, 318 F. Supp. at 1120. Because such a claim requires the parties and this Court to simulate a hypothetical *Georgia-Pacific* negotiation, so the argument goes, Plaintiff's financial statements—as viewed through the lens of Factors Five and Twelve—would tend to show Plaintiff's bargaining strength at the negotiation table (*See* Dkt. #83 at p. 4). There can be no doubt that documents giving context to the specific commercial dynamics contemplated by Factors Five and Twelve would be relevant and, therefore, discoverable absent any issues

---

[1] Although the parties dispute whether Plaintiff is a proper party to the hypothetical *Georgia-Pacific* negotiation, the Court need not resolve that issue here (*See* Dkt. #83 at p. 4; Dkt. #89 at p. 5). *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. May 28, 1970), *rev'd on other grounds*, *Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 2017). Because the Court finds that Plaintiff's financial statements are not relevant under any applicable *Georgia-Pacific* factor, the issue of Plaintiff's role in that negotiation does not affect the outcome of this Motion. *See infra* at 5–8.

4

regarding privilege or proportionality. Defendant's fatal flaw, however, is that it cannot plausibly articulate why Plaintiff's documents are relevant to either factor. The Court addresses each in turn.

### A. Plaintiff's financial documents are irrelevant under *Georgia-Pacific* Factor Five.

Factor Five is "[t]he commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter." *Georgia-Pac. Corp.*, 318 F. Supp. at 1120. Despite Plaintiff's assertion that it is not a product market competitor, Defendant claims that the financial statements reflect Plaintiff's competitive economic position as a hypothetical licensor (Dkt. #89 at p. 4; Dkt. #83 at p. 7; *see* Dkt. #89-7 at p. 3). Specifically, Defendant submits that Plaintiff's financial statements would inform the nature of the parties' commercial relationship and Plaintiff's relative bargaining strength in the hypothetical negotiation (Dkt. #89 at p. 3). For example, Defendant claims that information relating to Plaintiff's revenue, costs, and profits is relevant to understanding how Plaintiff *would have* approached a negotiation, including whether it might have had an incentive to accept less favorable terms in exchange for an immediate "cash infusion" (Dkt. #83 at pp. 6–7). Defendant insists that this financial context reflects the broader economic relationship between the parties and is, therefore, relevant to Plaintiff's reasonable royalty claim (Dkt. #83 at p. 7).

Plaintiff disputes that its financial statements are relevant under Factor Five because that factor addresses competitive market dynamics, not internal financial health (Dkt. #89 at p. 4). According to Plaintiff, Defendant already knows the commercial relationship between the parties within the meaning of Factor Five—there is none—and that no discovery is needed to establish that fact (Dkt. #89 at pp. 4–5). That is because Plaintiff does not sell *any* products or services (Dkt. #89 at pp. 4–5) (emphasis added). Plaintiff maintains that Factor Five focuses on whether the

5

parties are competitors or engaged in similar commercial activity, neither of which is revealed by general financial statements (Dkt. #89 at p. 4). Plaintiff also notes that Defendant has not cited any caselaw connecting financial statements to the Factor Five analysis (Dkt. #89 at p. 4).

The Court finds that Plaintiff's financial statements are irrelevant under Factor Five. This factor considers "[t]he commercial relationship between the licensor and licensee," and emphasizes whether the parties are competitors or whether one party is an inventor and the other a promoter. *See Georgia-Pac. Corp.*, 318 F. Supp. at 1120. Defendant argues that Plaintiff's financial condition sheds light on the broader economic relationship between the parties and indicates relative bargaining strength (Dkt. #89 at p. 3). But Factor Five is not a vehicle for importing general financial health into the analysis absent a substantive commercial relationship between the parties. Plaintiff is a non-practicing entity that neither competes with Defendant nor sells products in any comparable market (Dkt. #89 at pp. 4–5); there is no evidence of any commercial dynamic between the two parties that Plaintiff's financial documents would alter or clarify. Put another way, financial statements reflecting general expenses or operating costs do not reveal whether the parties have the commercial relationship contemplated by Factor Five. In the Court's view, this factor concerns itself with the *structural* nature of the relationship, not the financial motivations that might underlie a party's negotiating posture. Because Defendant has not carried its burden to show that Plaintiff's financial documents will reveal any relevant information regarding the parties' commercial relationship, Defendant's theory of relevance under Factor Five cannot support discovery of Plaintiff's financial records.

### B. Plaintiff's financial documents are irrelevant under *Georgia-Pacific* Factor Twelve.

Next, Factor Twelve is "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions." *Georgia-Pac. Corp.*, 318 F. Supp. at 1120. Defendant invokes this factor to justify its request for Plaintiff's financial documents because they ostensibly reveal "the portion of profit [Plaintiff] would expect from the hypothetical license" (Dkt. #83 at pp. 6–7). Defendant claims, in fact, that courts have held a plaintiff's general financial records are "relevant to various *Georgia-Pacific* factors including factor [twelve]" (Dkt. #96 at pp. 3–4) (citing *Utica Enterprises v. Federal Broach and Mach. Co.*, No. 01-CV-74655, 2006 WL 8095265, at *4 (E.D. Mich. Jan. 13, 2006)). According to Defendant, licensing agreements alone do not reveal the financial pressures or strategic considerations that may influence customary royalty arrangements in actual negotiations (Dkt. #96 at p. 3).

By contrast, Plaintiff argues that its financial statements are irrelevant under Factor Twelve because it focuses on industry-wide royalty norms—not a single licensor's internal finances (Dkt. #99 at pp. 2–3). Moreover, Plaintiff maintains that Defendant "already has all of [Plaintiff's] licenses and assignment agreements, which reflect precisely how much [Plaintiff] expended to acquire the portfolio and precisely how much licensing revenue [Plaintiff] has generated" (Dkt. #99 at p. 2). Plaintiff highlights that Defendant's "cursory citation to a 2006 Michigan case" is distinguishable because, unlike here, there "the plaintiff practiced the invention and had records of related sales, marketing expenses, costs, and pricing structures" (Dkt. #99 at p. 3) (citing *Utica Enterprises*, 2006 WL 8095265, at *3–4). Thus, in Plaintiff's view, *Utica* cannot substantiate Defendant's argument that Plaintiff's financial statements are relevant under Factor Twelve.

7

Again, the Court finds that Plaintiff's financial statements are irrelevant under Factor Twelve. *See Georgia-Pac. Corp.*, 318 F. Supp. at 1120. This factor focuses on prevailing royalty rates and licensing practices in the industry—not the internal financial condition of a party to a hypothetical negotiation. *See id.* (evaluating "[t]he portion of the profit or of the selling price that may be *customary* in the particular business or *in comparable businesses* to allow for the use of the invention or analogous inventions.") (emphasis added). Defendant suggests that Plaintiff's financial data could provide insight into the value Plaintiff would place on the patent, or the pressure it would feel to accept certain terms, but that reasoning conflates subjective financial considerations with objective market norms Comparable license agreements best represent customary arrangements, and Plaintiff has already produced them (*See* Dkt. #99 at p. 2). Financial statements, on the other hand, do not inform what is "customary" across the market at large because they are necessarily tailored to a single company. The speculative notion that Plaintiff's internal cost structure or cash position could uncover industry norms is too attenuated to justify compelling discovery. Thus, the Court finds that Factor Twelve likewise does not support production of Plaintiff's financial records.

Because Defendant has not shown that Plaintiff's financial statements are relevant to any claim or defense—either through *Georgia-Pacific* Factors Five or Twelve—the Court need not analyze whether the documents are proportional to the needs of this case or whether producing those documents would place an undue burden on Defendant. *See* FED. R. CIV. P. 26(b)(1). Defendant has not carried its burden to show that Plaintiff's financial statements are relevant. For that reason alone, Plaintiff's financial documents are not discoverable. The Court finds that Defendant's Motion should accordingly be **DENIED**.

## CONCLUSION

It is therefore **ORDERED** that Defendant Databricks, Inc.'s Motion to Compel Plaintiff R2 Solutions, LLC to Produce Financial Documents (Dkt. #83) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 12th day of June, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE