IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| R2 Solutions LLC,<br><br>Plaintiff,<br><br>v.<br><br>Databricks, Inc.,<br><br>Defendant. | Civil Action No. 4:23-cv-01147-ALM<br><br>Jury Trial Demanded<br><br>█████████████████ |

**PLAINTIFF R2 SOLUTIONS LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE DATABRICKS' FOURTH SUPPLEMENTAL INVALIDITY CONTENTIONS**

██████████████████████████████████████

## **TABLE OF CONTENTS**

I.    ARGUMENT ................................................................................................................. 1

    A.    Databricks' Supplemental Contentions Violate the Court's Order. ............................ 1

    B.    R2 Did Not Disclaim "Shuffled Hash Join" During IPR. ........................................... 3

    C.    Databricks' Supplemental Contentions Violate the Patent Rules. .............................. 5

# **TABLE OF AUTHORITIES**

**Cases**

*Abiomed, Inc. v. Maquet Cardiovascular,*
  *LLC*, 566 F. Supp. 3d 59 (D. Mass. 2021) .................................................................................. 4

*Barkan Wireless IP Holdings, L.P. v. Samsung Elecs.*
  *Co.*, No. 2:18-CV-00028-JRG, 2019 U.S. Dist. LEXIS 230829 (E.D. Tex. Jan. 23, 2019) ....... 3

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols.,*
  *P.C.*, 482 F.3d 1347 (Fed. Cir. 2007) ........................................................................................ 4

*FINALROD IP, LLC v. John Crane, Inc.*,
  No. 7:15-CV-00097, 2019 U.S. Dist. LEXIS 149649 (W.D. Tex. May 30, 2019) ..................... 4

*Finisar Corp. v. Directv Grp., Inc.*,
  424 F. Supp. 2d 896 (E.D. Tex. 2006) ........................................................................................ 3

**Rules, Statutes, and Authorities**

Patent Rule 3-3(c) ............................................................................................................................. 5

Accepting Databricks' issue framing, whether its supplemental contentions should be stricken boils down to one simple question: was Databricks on notice that "shuffled hash join" infringes the asserted claims prior to R2's ▮▮▮▮ supplement? If the answer is "yes," Databricks has no justification for its new references and theories, its belated disclaimer arguments, or its re-worked defenses—all injected into this case with the benefit of R2's expert reports and summary judgment briefing. And even if the answer is "no," Databricks' supplements should be stricken still because it has failed to articulate how R2's interpretation of the asserted claims is any different since ▮▮▮▮▮▮ were produced.

I.  ARGUMENT

   A.  **Databricks' Supplemental Contentions Violate the Court's Order.**

Databricks' primary argument that its contentions are "tied to" R2's ▮▮▮▮ supplements depends on a single, demonstrably false allegation: that "*[f]or the first time*" in its ▮▮▮▮ supplement "R2 alleged infringement by a 'Shuffle Hash Join' join strategy." *See* ECF 208 at 1 (emphasis added). There are three points to be made here. First, R2 identified "shuffled hash joins," by name, *in every single iteration of its infringement contentions* since June 2024. *See* ECF 207 at 1-2; 207-4, slides 27, 39, 79, 91, 104; ECF 207-5, slides 37, 57-58, 62, 68, 108, 120; ECF 207-6, slides 45-46, 66-67, 71, 77, 117, 129. Second, according to Databricks, a "shuffled hash join" is a "join strategy" that includes reading in partitions (a "scan" step), a "shuffle" step using "hash partitioning," and a "hash join" step. *See* ECF 208 at 2-3. R2 undeniably identified and discussed, at length, each of these steps in its pre-▮▮▮▮ contentions. *See id*; *see also* ECF 207-5, slides 13, 24-33, 37-46, 50-62; ECF 207-6, slides 19, 30-46, 50-60; ECF 205 at 7-9. Third, Databricks clearly recognized and understood R2's "shuffled hash join" accusations, as evidenced by its assertion of self-styled "shuffled hash join" art since its first

1

invalidity contentions. *See* ECF 207 at 2.[1]

For these reasons, there can be no doubt that R2 accused "shuffled hash joins" from the outset, requiring Databricks to have addressed the matter contemporaneously.[2] But even if R2 did not accuse "shuffled hash joins" prior to its latest supplemental contentions, R2's charting of PSHJ did not open the door for Databricks' supplementation by altering claim scope. This is explained at length in R2's original motion (s*ee* ECF 205 at 6-9), and Databricks did not rebut this point in its response. Rather, Databricks argued only de minimis technical distinctions between accused join strategies and offered no indication of any claim scope adjustment. *See* ECF 208 at 15.

With no excuse for failing to raise its current invalidity arguments earlier, Databricks spent pages explaining why its new art and theories are related to "shuffled hash join."[3] *See* ECF 208 at 3-5. But this is irrelevant because, as noted, "shuffled hash joins" have always been accused of infringement by R2, and claim scope is unchanged.

Databricks also alleges that "the Court's Order did not limit Databricks to ▮▮▮ prior art," and that R2's argument otherwise "mischaracterizes the Court's Order." *Id*. at 5. It is Databricks, however, that mischaracterizes the Order. In Databricks' view, it can supplement

---

[1] Databricks confusingly argues that it "did not [previously] assert Shuffle Hash Join art," but then recognizes that it has always asserted Chowdhuri, which it now alleges teaches "shuffled hash join." *See* ECF 208 at 14, n.20; *see also* ECF 207 at 2. Databricks' justification for previously including Chowdhuri is that it was "hold[ing] R2 to its disclaimer." *Id*. This makes no sense. Databricks would not need to assert art to hold R2 to a disclaimer. Nevertheless, Databricks' argument proves that it knew "shuffled hash join" was always an issue.

[2] Mr. Davis's testimony that he did not provide an opinion in his opening report about "shuffled hash join" is meaningless. *See* ECF 208 at 14. R2 chose, for simplicity's sake, to address only sort-merge-join in its opening report. This decision has no bearing on whether Databricks should have disclosed its new art and invalidity theories much earlier. Indeed, Databricks was obligated to do so prior to opening expert reports, as "shuffled hash join" was explicitly accused in all iterations of R2's contentions.

[3] It bears mention that none of the references Databricks added ever use the term "shuffle," much less "shuffled hash join." *See* ECF 205 at 6-7.

its contentions with art allegedly disclosing "shuffled hash joins" even though "shuffled hash joins" and equivalents have always been accused. *Id*. at 6. This interpretation eviscerates established law establishing when a defendant is allowed to amend. This District has recognized that, even when amending as a matter of right under the Local Patent rules, such a "right to amend … is subject to the court's and [the defendant's] countervailing duty to avoid unfairly prejudicing [the plaintiff] through 'eleventh-hour alterations.'" *Finisar Corp. v. Directv Grp., Inc.*, 424 F. Supp. 2d 896, 900 (E.D. Tex. 2006). This District has also previously denied amendments responsive to a plaintiff's amended contentions when the plaintiff's contentions merely added new products and did not introduce a "new theory." *Barkan Wireless IP Holdings, L.P. v. Samsung Elecs. Co*., No. 2:18-CV-00028-JRG, 2019 U.S. Dist. LEXIS 230829, at *7 (E.D. Tex. Jan. 23, 2019). Such is exactly the case here. R2 introduced ▮▮▮▮▮ functionality (in addition to Spark) under the same theory. To then interpret the Order's "tied to" language as giving Databricks carte blanche to re-write its case—after expert reports and summary judgment briefing, no less—is inconsistent with the law and local rules and would punish R2 in a way not possible absent Databricks' discovery misconduct.

Finally, Databricks is wrong that "R2's interpretation of the Order is nonsensical as it would render all supplemental invalidity contentions meaningless." ECF 208 at 6. R2 identified in its original motion two examples of proper supplementation, e.g., if "Databricks allege[d] that it developed ▮▮▮▮▮ before the priority date of the patent" or if "R2's supplements modified claim scope." ECF 205 at 5. Neither applies here.

      **B.**    **R2 Did Not Disclaim "Shuffled Hash Join" During IPR.**

In the Supplemental Opening Report of Dr. Jon Weissman (following the invalidity contentions at issue here), Databricks' expert alleges that R2 disclaimed "Shuffled Hash Join" functionality during IPR. *See* ECF 207-2, ¶¶ 16-20. R2 explains why this is wrong in its pending

3

motion to strike portions of that report. *See* ECF 207 at 5-10. Databricks has now repackaged Dr. Weissman's arguments as an alternate rationale for its late supplements. *See* ECF 208 at 12-14. The arguments fail for two reasons. First, Databricks waived the disclaimer arguments by failing to raise them during claim construction. *See* ECF 207 at 5-6. Second, there was no clear and unmistakable disclaimer in IPR as to "shuffled hash join." *Id*. at 6-10.

Databricks' disclaimer arguments could and should have been raised a year ago. Databricks has always known of the supposed disclaimer, but it failed to raise it during claim construction despite R2 identifying "shuffled hash join" functionality in all contentions, including before claim construction. *See, supra*, at Section I.A. Databricks therefore waived this argument. *See FINALROD IP, LLC v. John Crane, Inc.*, No. 7:15-CV-00097, 2019 U.S. Dist. LEXIS 149649, at *7 (W.D. Tex. May 30, 2019) (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)) (a defendant "waives any argument with respect to the construction of a claim term when they fail to raise that issue during the claim construction phase….").

Further, Databricks' own response establishes the futility of its position. It argues, for instance, that the Court should find disclaimer here because "this Court already found disclaimer" as to different terms based on the same IPR.[4] *See* ECF 208 at 13. Setting aside the fallacy of this assertion, it actually bolsters the notion that Databricks waived its new disclaimer arguments by not raising them during claim construction when other disclaimer positions were considered. *See Abiomed, Inc. v. Maquet Cardiovascular, LLC*, 566 F. Supp. 3d 59, 74 (D. Mass. 2021) (finding waiver when a party "had ample opportunity to raise its contention of prosecution disclaimer,"

---

[4] Databricks alleges that the statements on which the Court previously found disclaimer are "similar" as to what Databricks relies on here. *See* ECF 208 at 13. But Databricks neither explains this assertion nor offers support.

particularly in light of the party having raised "contentions of prosecution disclaimer as to other terms" during claim construction). Databricks also argues, confusingly, that R2's disclaimer occurred "*before*" contentions were served (ECF 208 at 13). With rare exceptions, *all* disclaimer occurs before contentions. Such does not relieve Databricks of its obligation to fairly engage in claim construction in accordance with the Court's schedule and avoid raising new arguments at the eleventh hour. Indeed, for Databricks to now suggest it was relying on undisclosed disclaimer in crafting prior versions of its invalidity case is disingenuous. Whether true or not, Databricks was obligated to tell the Court and R2 about any disclaimer position well before now.

Its waiver notwithstanding, Databricks' disclaimer positions are substantively wrong. The term "shuffled hash join" was never used in IPR, making it impossible for R2 to unmistakably disclaim it. Because "shuffled hash join" was never used in IPR, Databricks is left to reinvent IPR statements by inserting the term where it was not written. *See* ECF 208 at 12-14. And, finally, Databricks ignores the fact that the Chowdhuri reference R2 distinguished in IPR is not equivalent to PSHJ; meaning, as R2 has explained, distinctions over Chowdhuri cannot extend to accused PSHJ functionality. *See* ECF 207 at 5-10.

      **C.**      **Databricks' Supplemental Contentions Violate the Patent Rules.**

In its response, Databricks tries to explain why its 1,000-page "supplemental" contentions are passable under the Patent Rules. *See* ECF 208 at 6-12. The fact is, however, that Databricks' charts do not "identify where specifically" each element is found in the prior art, obscuring its actual theories. P.R. 3-3(c). The charts merely comprise voluminous portions of single references copied and pasted alongside claim elements. *See* ECF 205 at 12. There is no explanation or analysis as to how each reference teaches each limitation, or otherwise how references would be combined. Moreover, the charts purport to combine the single, pasted references with any and all other references Databricks ever identified, giving rise to innumerable combinations. ECF 205 at 12.

5

| | |
|---|---|
| Dated: September 18, 2025 | Respectfully Submitted, |

By: /s/ Carder W. Brooks
Edward R. Nelson III
State Bar No. 00797142
Christopher G. Granaghan
State Bar No. 24078585
John P. Murphy
State Bar No. 24056024
Carder W. Brooks
State Bar No. 24105536
NELSON BUMGARDNER CONROY PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111
ed@nelbum.com
chris@nelbum.com
murphy@nelbum.com
carder@nelbum.com

COUNSEL FOR
PLAINTIFF R2 SOLUTIONS LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2025, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

/s/ Carder W. Brooks

**CERTIFICATE OF AUTHORIZATION**

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

/s/ Carder W. Brooks