███████████████████████████████

**FUNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| R2 SOLUTIONS LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DATABRICKS, INC.,<br><br>　　　　　　Defendant. | Civil Action No. 4:23-cv-01147-ALM<br><br>**JURY TRIAL DEMANDED**<br><br>████████████████ |

**DATABRICKS, INC.'S SUR-REPLY IN OPPOSITION
TO R2 SOLUTIONS LLC'S SECOND MOTION TO STRIKE
<u>CERTAIN SUPPLEMENTAL EXPERT OPINIONS</u>**

███████████████████████████████████

**TABLE OF CONTENTS**

|   |   |   | **Page** |
|---|---|---|---|
| I. | | R2 IDENTIFIES NO BASIS TO STRIKE DR. WEISSMAN'S OPINIONS | 1 |
| | A. | The Court should allow Dr. Weissman's opinions on sample Photon outputs | 1 |
| | B. | The Court should allow Dr. Weissman's opinions on the design of Photon | 2 |
| | C. | The Court should allow Dr. Weissman's opinions rebutting Mr. Davis's new theory and evidence regarding the "reducing" construction | 3 |
| | D. | The Court should allow Dr. Weissman's non-infringing alternatives | 3 |
| | E. | The Court should allow Dr. Weissman's "schema" opinions | 4 |
| II. | | R2 IDENTIFIES NO BASIS TO EXCLUDE DR. MACARTNEY'S OPINIONS | 4 |
| III. | | CONCLUSION | 5 |

███████████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*EcoFactor, Inc. v. Google, LLC*,
    137 F.4th 1333 (Fed. Cir. 2025) ..................................................................................5

*Flexuspine Inc. v. Globus Med.*,
    6:15-cv-201, 2016 U.S. Dist. LEXIS 199476 (E.D. Tex. July 6, 2016) ..................................5

*Intel Corp. v. Future Link Sys., LLC*,
    268 F. Supp. 3d 605 (D. Del. 2017) .........................................................................1

*Lexos Media IP, LLC v. Overstock.com, Inc.*,
    No. 22-2324, 2025 WL 949169 (D. Kan. Mar. 28, 2025) ........................................2

*Monsanto Co. v. David*,
    516 F.3d 1009 (Fed. Cir. 2008)..................................................................................1

████████████████████████

## TABLE OF EXHIBITS[1]

| No. | Exhibit |
|-----|---------|
| 1 | Excerpts of Supplemental Rebuttal Expert Report of Dr. Jon Weissman ("Weissman Supp. Rebut.") |
| 2 | Excerpts of Transcript of the March 5, 2026 Deposition of Dr. Jon Weissman ("Weissman Dep.") |
| 3 | Excerpts of Transcript of the January 24, 2025 Deposition of Reynold Xin ("Xin Dep.") |
| 4 | Excerpts of Transcript of the March 6, 2026 Deposition of William Davis ("Davis Dep.") |
| 5 | Excerpts of Supplemental Expert Report of William Davis Concerning Infringement of U.S. Patent No. 8,190,610 ("Davis Supp.") |
| 6 | Excerpts of Transcript of the August 29, 2025 Deposition of Alexander Behm ("Behm Dep.") |
| 7 | Excerpts of R2's Third Amended Supplemental Infringement Contentions ("R2 Contentions") |
| 8 | Excerpts of Databricks' Supplemental Objections and Responses to Plaintiff R2 Solutions LLC's Interrogatory Nos. 6, 7, 10, 12, 15, 17, 31 ("Databricks' Supp. Rog Resp.") |
| 9 | Excerpts of Supplemental Rebuttal Expert Report of Gareth Macartney, Ph.D. ("Macartney Supp. Rebut.") |
| 10 | Excerpts of Transcript of the March 6, 2026 Deposition of Gareth Macartney ("Macartney Dep.") |
| 11 | Excerpts of Supplemental Expert Report of Jim W. Bergman ("Bergman Supp.") |
| 12 | Behm *et al*, *Photon: A Fast Query Engine for Lakehouse Systems*, Databricks_R2_00132454-Databricks_R2_00132467 ("Photon Paper") |
| 13 | Additional excerpts of Supplemental Rebuttal Expert Report of Dr. Jon Weissman ("Weissman Supp. Rebut.") |

---

[1] Exhibits 1-12 are attached to the Declaration of Vigen Salmastlian filed with Databricks' Opposition. (Dkt 281-1.) Exhibit 13 is attached to the Declaration of Vigen Salmastlian filed with this Sur-reply.

███████████████████████████████

## I.   R2 IDENTIFIES NO BASIS TO STRIKE DR. WEISSMAN'S OPINIONS

### A.   The Court should allow Dr. Weissman's opinions on sample Photon outputs

The issue is whether Databricks' technical expert may provide a demonstration of his properly disclosed "column vector" theory by providing sample Photon outputs in his expert report. The answer is plainly yes. (Opp. at 1, n.2 (citing *Monsanto Co. v. David*, 516 F.3d 1009, 1015 (Fed. Cir. 2008); *Intel Corp. v. Future Link Sys., LLC*, 268 F. Supp. 3d 605, 622-23 (D. Del. 2017).) As in *Monsanto* and *Intel*, Dr. Weissman asked Dr. Behm—the creator of Photon and Databricks' technical 30(b)(6) witness—to provide sample outputs confirming the column vector output for the accused Photon operators. (*Id.* (citing Ex. 2, Weissman Dep. at 73:18-22).) R2's cursory attempts to distinguish *Monsanto* and *Intel* fail.[2]  (Reply at 1 n.1.)

R2 does not respond to Databricks' argument that the sample Photon outputs are justified under Rule 37(c).[3]  (Opp. at 3, n.4.) Instead, R2 makes baseless accusations. (Reply at 1.) Contrary to R2's suggestion, Databricks fully complied with its Photon/Aether discovery obligations, and R2 did not send *any* deficiency letter regarding that production. As R2 concedes, Databricks properly disclosed its theory that Photon does not include the claimed "key-value pairs" because Photon operates on "column vectors" that ██████████████████████  (Opp. at 1-2 (citing Ex. 8, Databricks' Supp. Rog Resp. at 22, 96); Reply at 1 ("R2 is not seeking to strike the theory").) R2 also does not dispute that Databricks produced and cited Photon documents *showing*

---

[2] Contrary to R2's assertion, the materials in *Monsanto* were not "actually 'produced'" during fact discovery (Reply at 1)—as here, they were "produced by the patentee's scientific team" to patentee's expert. *Monsanto*, 516 F.3d at 1015-16. And as in *Intel*, where the expert relied on an employee "to confirm…his tests accurately reflected the operation of" the accused products, Dr. Weissman relied on Dr. Behm to confirm Photon's operation. *Intel*, 268 F. Supp. 3d at 622-23.

[3] R2 also fails to specify any alleged "prejudice." (Reply at 1.) Mr. Davis testified that each accused Photon operator outputs a column vector with ████████████████. (Ex. 4, Davis Dep. at 41:19-23, 52:23-53:10, 58:7-12, 59:24-60:9, 66:11-15, 70:16-18.) Because Mr. Davis agrees with what is shown in Dr. Weissman's sample Photon outputs, there is no prejudice.

███████████████████████████████████████████████

its column vector output.  (Opp. at 2 (citing Ex. 12, Photon Paper, Fig. 2 (showing the same)).)

R2 feigns ignorance by arguing it could not have "possibly requested" sample Photon outputs.  (Reply at 1.)  While R2 knew it was possible—from produced documents showing Photon's column vector output (Opp. at 1)—R2 chose to forgo that discovery.[4]  R2's "cho[ic]e to turn a blind eye" to this available discovery is not a basis to strike it.  *Lexos Media IP, LLC v. Overstock.com, Inc.*, No. 22-2324, 2025 WL 949169, at *7 (D. Kan. Mar. 28, 2025).

**B.      The Court should allow Dr. Weissman's opinions on the design of Photon**

R2 admits that Dr. Weissman's report does not discuss prior art "shuffled hash join" and offers no "invalidity" opinion.  (Reply at 2; Ex. 2, Weissman Dep., 7:12-15 ("I am not" "giving any invalidity opinions in this [] report").)  It therefore complies with the Court's order regarding the permissible scope of rebuttal testimony.  (Dkt. 246; Dkt. 249.)

R2's argument that the disputed opinions "insinuate [] invalidity" is wrong.  (Reply at 2.) Both Dr. Weissman and Mr. Davis rely on ████████████████████████████████████

████████████████████████████████████████████.  (Opp. at 3, n.5; Ex. 5, Davis

Supp., App. B ¶ 23 (R2's technical expert citing ████████████████████████████

██████████████████████████); Ex. 4, Davis Dep. at 78:4-79:6.)  Dr. Weissman relies on

████████████████████ for the same purpose—to explain Photon's design.  (Opp. at 3.)

R2's argument that the disputed paragraphs are "untethered to proper opinions" also fails.

R2 confirms it "did not seek to strike [Dr. Weissman's] opinions that address benefits not conferred

---

[4] R2 did not serve a single document request or interrogatory and did not ask Databricks' 30(b)(6) deponent any questions about the outputs.  (Reply at 1; Opp. at 2-3; *see also* Ex. 4, Davis Dep. at 130:22-131:15 (R2's expert admitting he never "ask[ed] for any discovery on what the output of any Photon function[] contains" and acknowledging he "could have asked for that")).) Additionally, R2's reliance on the Court's source code discovery order fails.  (Reply at 1.)  There is no dispute that order did not prevent R2 from seeking discovery on Photon's outputs, nor did it prevent Databricks from relying on its source code for its defenses.  (Opp. at 1-2 (citing Dkt. 60).)

█████████████████████████████████████████████

by the '610 patent." (Reply at 2.) Because the disputed background paragraphs directly support those opinions, they are properly tethered to allowable opinions.[5]

> **C.      The Court should allow Dr. Weissman's opinions rebutting Mr. Davis's new theory and evidence regarding the "reducing" construction**

R2 does not dispute that Dr. Weissman's opinions are justified under Rule 37(c) to rebut Mr. Davis's new theory regarding the construction of "reducing" and his opinions on new evidence (R2_DB_128605-654).[6] (Opp. at 5-6.) R2 cannot justify its belated evidence based on Databricks' letter identifying deficiencies in R2's contentions. (Reply, Ex. 1 at 6.) It is undisputed that R2_DB_128605-654 includes 14 unidentifiable files with no way of tying them to R2's contentions. Mr. Davis's supplemental report was the first time R2 relied on this data dump, much less provided the relevant context—physical plans in Section G of Mr. Davis's Source Code Appendix—that allowed Dr. Weissman to understand the data. (Opp. at 5-6.) Dr. Weissman therefore appropriately responded to this new theory and evidence by opining that the "reducing" construction is not met. (*Id.*; Ex. 13, Weissman Supp. Rebut. ¶¶ 120-126, 417-429).

> **D.      The Court should allow Dr. Weissman's non-infringing alternatives**

R2 does not dispute that its expert opened the door by introducing a new theory on the Court's construction of "reducing" and opining on new evidence (R2_DB_128605-654), which Dr. Weissman properly rebutted. (Opp. at 6-7; Section C. *supra*.) Dr. Weissman's opinions that the corresponding queries are non-infringing alternatives for the *same reason* are therefore also

---

[5] As explained in Databricks' Opposition, Mr. Davis opined that "but for the '610 patent, Photon would be restricted" and have "no concept of joins." (Opp. at 4 (citing Ex. 5, Davis Supp. ¶¶ 191-93).) Dr. Weissman rebutted this by explaining that the ████████████████████ and that Photon is derived from ████████ and "not…the '610 patent." (Ex. 1, Weissman Supp. Rebut. ¶¶ 480, 483.) Striking the disputed paragraphs would eliminate the support for these opinions.
[6] R2 does not dispute that its infringement contentions (1) failed to explain how any "join query" met the Court's construction of "reducing," and (2) failed to identify a theory based on its belated production of R2_DB_128605-654. (Opp. at 5-6; Reply at 2.)

proper.  Regardless, there is also no dispute that Databricks disclosed the underlying theory in its interrogatory response—that "reducing only a subset of the intermediate data" is a non-infringing alternative because it "would not reduce 'all mapped (intermediate) key-value pairs' as the claim requires."  (Ex. 8, Databricks' Supp. Rog Resp. at 8, 16-17; Opp. at 7; Reply at 2.)  Consistent with this disclosure, Dr. Weissman opined in his supplemental report that each query reduces only a subset of the intermediate data.  (Ex. 13, Weissman Supp. Rebut. ¶¶ 120-126, 469-474.)

### E.    The Court should allow Dr. Weissman's "schema" opinions

R2 does not dispute that Databricks' interrogatory responses complied with Rule 26(e) by disclosing the theory that none of "schema," "column name," or "data type" meet "data group" as construed by the Court.  (Opp. at 7-8; Ex. 8, at 22, 32, 91.)  Consistent with this disclosure, Dr. Weissman opined that the term "schema" as used *in the Databricks documents* refers to "column name" and "data type," and that neither meets the construction of "data group."  (Ex. 13, Weissman Supp. Rebut. ¶¶ 302 (data type), 304 (column name), 26-27 (both), 370.)  R2's assertions that "Dr. Weissman's report states that 'schema' means only 'data type'" and "'schema' equals 'data type'" are therefore false.  (Reply at 2-3.)  There is also no "conflict" with the Court's plain meaning construction of "schema."  (*Id.*)  Dr. Weissman consistently applied the plain meaning of the *claim term* "schema" and R2 identifies no instance showing otherwise.  (Ex. 13, ¶¶ 22, 380-81, 383.)

## II.    R2 IDENTIFIES NO BASIS TO EXCLUDE DR. MACARTNEY'S OPINIONS

This Court already declined R2's attempt to exclude Dr. Macartney's opinions regarding other licenses that post-date the hypothetical negotiation and licenses that arose from litigation.  (Opp. at 9 (citing Dkt. 254 at 12).)  These licenses shed light on the "historical licensing practices" of relevant entities, and the Court found that "degree of comparability" is an issue "best left to…the jury."  (*Id.*)  Because the same reasoning applies here, R2's present Motion should be rejected.

*R2-*▮▮▮▮▮▮ *License*: R2 argues that Dr. Macartney did not consider its recitals in the

4

██████████████████████████████████████████

██████ license that allegedly render the license non-comparable.  But in R2's cited *EcoFactor* case, the Federal Circuit rejected the patentee's attempt to rely on self-serving recitals, and the Court should do the same here.  *EcoFactor, Inc. v. Google, LLC*, 137 F.4th 1333, 1343 (Fed. Cir. 2025).  Moreover, Dr. Macartney did exactly what he was supposed to do under *EcoFactor*.  He provided an opinion that is tethered to the license and the actual payment made by the licensee— that is, ███████████████████.[7]  R2 also argues that Dr. Macartney did not consider "twelve []" items" that allegedly render his opinion unreliable.  (Reply at 4.)  But R2's cherry-picked pieces of information with questionable relevance[8] do not render his opinion unreliable.  Dr. Macartney did an extensive analysis on the ███████ license, including economic circumstances and the recital language.  (Opp. at 9-11.)  At most, any competing issues of comparability are for the jury.

*Databricks-Byteweavr and R2-*████ *Agreements*:  R2 does not dispute that these agreements are relevant at least to the appropriate payment structure and the licensing practices of a party to the hypothetical negotiation—i.e., Databricks for the Byteweavr Agreements and R2 for the ████ Agreement.  (Opp. at 11, 12.)  R2 merely repeats its comparability arguments, but, again, as this Court and R2's own cited case recognizes, "degree of comparability" is an issue for the jury.[9]  (Dkt. 254 at 12; *see also* Reply at 5 (citing *SB IP Holdings, LLC v. Vivint, Inc.*).)

## III.    CONCLUSION

For the foregoing reasons Databricks respectfully requests that the Court deny R2's motion.

---

[7] *EcoFactor* does not stand for the proposition that allegedly contradictory evidence eliminates comparability of a license, as R2 argues.  *EcoFactor* requires that expert opinions be supported by and tethered to the license.  *EcoFactor*, 137 F.4th at 1343.  Here, Dr. Macartney's opinions are. ███████████████████████████, ████████████████ Dr. Macartney relies on for his opinion.

[8] For example, while Dr. Macartney undisputedly considered *accused* ████████ products, R2 argues he should have also considered products "*not accused*."  (Opp. at 10; Reply at 10.)

[9] R2's *Flexuspine* case is distinguishable as R2 has no testimony or evidence negating technological comparability.  *Flexuspine Inc. v. Globus Med.*, 6:15-cv-201, 2016 U.S. Dist. LEXIS 199476, at *13 (E.D. Tex. July 6, 2016).  By contrast, as R2 admits, Databricks' expert opined that the Byteweavr agreements cover comparable technology.  (Reply at 5.)

███████████████████████████████

Dated: April 30, 2026

Respectfully submitted,

*/s/ Vigen Salmastlian*

Vigen Salmastlian
CA Bar No. 276846 (Admitted E.D. Texas)
Email: vsalmastlian@fenwick.com
**FENWICK & WEST LLP**
801 California Street,
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

Michael J. Sacksteder
CA Bar No. 191605 (Admitted E.D. Texas)
Email: msacksteder@fenwick.com
Eric B. Young
CA Bar No. 318754 (Admitted E.D. Texas)
Email: eyoung@fenwick.com
S. Emma Lee
CA Bar No. 344074 (Admitted *Pro Hac Vice*)
Email: emma.lee@fenwick.com
**FENWICK & WEST LLP**
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone:    415.875.2300
Facsimile:    415.281.1350

Jessica M. Kaempf
WA Bar No. 51666 (Admitted E.D. Texas)
Email: jkaempf@fenwick.com
Jonathan G. Tamimi
WA Bar No. 54858 (Admitted E.D. Texas)
Email: jtamimi@fenwick.com
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:    206.389.4510
Facsimile:    206.389.4511

Dargaye Churnet
CA Bar No. 303659 (Admitted E.D. Texas)
Email: dchurnet@fenwick.com
**FENWICK & WEST LLP**
730 Arizona Ave, 1st Floor
Santa Monica, CA 90401

6

████████████████████████████████████████

Telephone:    310.434.5400

Jennifer Truelove
Texas Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: 903.923.9000
Facsimile: 903.923.9099

Deron R. Dacus
Texas Bar No. 00790553
Email: ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 32, Suite 430
Tyler, Texas 75701
Telephone: 903.705.1117

*Attorneys for Defendant*
*Databricks, Inc.*

█████████████████████████████████

## CERTIFICATE OF AUTHORIZATION TO SEAL

Pursuant to Local Rule CV-5(a)(7)(B) I am authorized to file the foregoing document under seal pursuant to paragraph 16 of the Protective Order (Dkt. 61) because this document references Designated Material.

_/s/ Vigen Salmastlian_
Vigen Salmastlian

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 30, 2026, a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  Additionally, I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of these documents via electronic mail per Local Rule CV-5.

_/s/ Vigen Salmastlian_
Vigen Salmastlian

8