## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| R2 Solutions LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Databricks, Inc.,<br><br>    Defendant. | | Civil Action No. 4:23-cv-01147-ALM<br><br>Jury Trial Demanded<br><br>██████████████████ |

## PLAINTIFF R2 SOLUTIONS LLC'S
## MOTION TO BIFURCATE EQUITABLE ISSUES FOR TRIAL TO THE COURT

████████████████████████████████

## **TABLE OF CONTENTS**

I.     INTRODUCTION. ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 1

III.   ARGUMENT ...................................................................................................... 3

      A.   Implied License and Equitable Issues Are Properly Tried to the Court. ..................... 3

      B.   Databricks' Defenses Are Equitable Issues That Must Be Tried to the Court. ............ 5

IV.   THE BENCH TRIAL SHOULD PROCEED BEFORE A JURY TRIAL. ........................ 6

V.    CONCLUSION .................................................................................................... 9

███████████████████████████

## TABLE OF AUTHORITIES

**Cases**

*Carmona v. Carmona*,
  No. H-06-0228, 2007 U.S. Dist. LEXIS 11194 (S.D. Tex. Feb. 16, 2007) ............................... 7

*CoreBrace LLC v. Star Seismic LLC*,
  566 F.3d 1069 (Fed. Cir. 2009) ....................................................................................... 8

*Cyrix Corp. v. Intel Corp.*,
  77 F.3d 1381 (Fed. Cir. 1996) ......................................................................................... 8

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
  Civil Action No. 6:11-CV-201-JRG-JDL, 2017 LX 88005 (E.D. Tex. Dec. 8, 2017) .............. 5

*Glass Equip. Dev., Inc. v. Besten, Inc.*,
  174 F.3d 1337 (Fed. Cir. 1999) ....................................................................................... 4

*Kaist IP US LLC v. Samsung Electronics Co.*
  Ex.1 (No. 2-16-cv-01314-JFG, ECF 437 (E.D. Tex., May 21, 2018)) .................................. 4, 5

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
  No. CV 11-3397 JGB (RZx), 2015 U.S. Dist. LEXIS 187035 (C.D. Cal. June 25, 2015) ......... 4

*Lectec Corp. v. Chattem, Inc.*,
  No. 2:06-cv-00428, 2011 WL 13086026 (E.D. Tex. Jan. 4, 2011) ........................................... 5

*Lectec Corp.*,
  2011 WL 13086026; *see also* Ex. 1 at 67 ...................................................................... 9

*Endo Pharms., Inc. v. Actavis, Inc.*,
  746 F.3d 1371 (Fed. Cir. 2014). ....................................................................................... 5

*Ollnova Techs. Ltd. v. Ecobee Techs.*
  *Ulc*, Nos. 2025-1045, 2025-1046, 2026 LX 294835 (Fed. Cir. June 4, 2026) ........................ 10

*OPTi Inc. v. Silicon Integrated Sys. Corp.*,
  No. 2:10-CV-00279, 2013 U.S. Dist. LEXIS 116923 (E.D. Tex. Aug. 19, 2013) .................... 5

*Ryan Data Exch., Ltd. v. Graco Inc.*,
  No. 4:14-cv-00198 - JEG, 2016 U.S. Dist. LEXIS 189569 (S.D. Iowa Oct. 6, 2016) ............... 4

*SB IP Holdings LLC v. Vivint, Inc.*,
  Civil Action No. 4:20-CV-00886, 2023 U.S. Dist. LEXIS 100252 (E.D. Tex. Apr. 25, 2023) . 7

████████████████████████████

*Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*,
  103 F.3d 1571 (Fed. Cir. 1997) ............................................................................................... 6

*Whirlpool Corp. v. TST Water, LLC*
  No. 2:15-cv-01656-JRG, 2017 WL 2931403 (E.D. Tex. Mar. 3, 2017) .................................... 3

**Rules, Statutes, and Other Authorities**

Fed R. Civ. P. 39(a)(2) ............................................................................................................ 1

Fed. R. Civ. P. 42(b) ............................................................................................................... 1

Fed. R. Civ. P. 56 .................................................................................................................... 7

Fed. R. Civ.P.  403 .................................................................................................................. 5

## I.    INTRODUCTION.

Plaintiff R2 Solutions LLC respectfully moves the Court pursuant to Rules 39(a)(2) and 42(b) of the Federal Rules of Civil Procedure, and the Court's inherent trial management authority, to conduct a trial of equitable defenses asserted by Defendant Databricks, Inc. in a separate bench proceeding <u>prior to</u> the jury trial (to the extent such defenses are not first eliminated via a pending summary judgment motion). Specifically, R2 asks that the following equitable defenses be resolved by the Court outside the jury's presence: (1) Databricks' implied license theories based on Yahoo's Apache-related open-source activities, including implied license by conduct, legal estoppel, and equitable estoppel; (2) Databricks' implied license theories based on ▮▮▮▮▮ and ▮▮▮▮ ▮▮▮▮▮▮▮▮; and (3) Databricks' equitable estoppel defense to the California Statute of Frauds. These are purely equitable issues properly resolved by the Court, not the jury. Courts in this District routinely try implied license and equitable estoppel defenses to the bench. Resolving these defenses in a focused bench proceeding, prior to the jury trial, will narrow issues for the jury, make trial more efficient, and substantially mitigate the risk of jury confusion and unfair prejudice. The Joint Final Pretrial Order has not yet been filed. This motion separately raises a trial structure issue that can, and should, be addressed now.

## II.    BACKGROUND

R2 accuses Databricks of infringing claims 1, 5, 17, and 21 of U.S. Pat. No. 8,190,610 (the "'610 patent") via the Databricks Data Intelligence Platform / Databricks Lakehouse Platform. ECF 205-3, 205-7. Both parties have demanded a jury trial on all issues triable by jury. ECF 1 at 19; ECF 16 at 10. In its answer, under the heading "Equitable Defenses," Databricks broadly pled "legal estoppel" and "equitable estoppel." *See* ECF 16 at 9. Databricks additionally pled the affirmative defenses of "express or implied licenses to the Patent-in-Suit." *Id*.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

As the Court is aware, this case initially focused on Spark functionality within the Databricks platform. Databricks produced open-source Spark code as its own and represented that it had no other relevant code. ECF 200 at 8-9. Over the course of eighteen months, the parties completed fact discovery, expert discovery, and summary judgment briefing, with Spark as the central accused functionality. During that time, Databricks presented two license defenses. First, Databricks argued that it benefits from an express license to Spark under the Apache License, Version 2.0. *See, e.g.*, ECF 266. This theory hinges on whether Databricks can prove that Yahoo! made code contributions to open-source Spark that are causal to Spark's infringement of the '610 patent. *See id*. at 19-20. Second, Databricks argued that it is otherwise authorized to make the Databricks platform by way of ▮▮▮▮▮ and ▮▮▮▮ ▮▮▮▮▮▮▮▮. *See* ECF 262.

Late in discovery, Databricks' founder admitted in deposition that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ *See* ECF 200 at 5. Databricks refused to produce Photon/Aether code and related materials during the discovery period, ▮▮▮▮▮▮▮▮▮▮. *See id*. at 1-2. Upon motion to compel, the Court ordered Databricks to produce Photon/Aether code and materials and reopened discovery and expert reporting solely to address the new evidence. *See id*. at 13; ECF 204. Databricks ultimately defied the Court's order by serving a supplemental expert report amounting to an expansive reconstruction of its invalidity and Apache-based license defenses. *See* ECF 242 at 14-29; ECF 246. These opinions were struck by the Court. *See id*.

Despite the struck opinions, Databricks purports to claim the benefit of an implied license to the '610 patent through equitable estoppel, legal estoppel, and/or Yahoo!'s conduct.[1] *See* ECF

---

[1] Databricks also argues that Photon/Aether are expressly licensed via the Apache 2.0 license, despite it being undisputed that Photon/Aether: (i) is strictly proprietary to Databricks; and (ii) is not available to the open-source community. *See* ECF 259 at 7-8.

██████████████████████████████████████

259, 291. R2 moved for summary judgment on this implied license, arguing, among other things, that: (i) the theory should be disregarded for the same reasons the Court struck the corresponding expert opinions; (ii) an implied license is legally impossible because the Apache 2.0 license already expressly governs the "subject matter," i.e., whether contributions to Apache projects trigger a patent license; and (iii) Databricks has insufficient evidence on multiple elements of each category of implied license (i.e., equitable estoppel, legal estoppel, and conduct). *See id.* R2's motion also addresses the ██████ and ██████ license defenses as pertain to Photon/Aether. *See id.* This motion is pending before the Court.

As it stands, Databricks is pursuing a number of purely-equitable theories: (a) implied license based on conduct, equitable estoppel, and legal estoppel arising from Yahoo's alleged open-source activities; (b) implied license arising from ██████████████████████ set forth in ██████████████ ; (c) implied license arising from ██████████████████ set forth in the ██████████████ ; and (d) equitable estoppel that purportedly precludes R2 from invoking the California Statute of Frauds against the Apache agreements. The Court has previously addressed summary judgment motions related to (b), (c), and (d). ECF 262, 264, 266. As noted in the preceding paragraph, the pending summary judgment motion addresses issues (a), (b), and (c), as they relate to Databricks' proprietary Photon/Aether offerings. ECF 259.

## III.    ARGUMENT

### A.    Implied License and Equitable Issues Are Properly Tried to the Court.

At issue in this motion are Databricks' implied license and equitable estoppel defenses. This Court has routinely recognized that such defenses are equitable defenses for resolution by the Court, not a jury. For example, in *Whirlpool Corp. v. TST Water, LLC*, Judge Gilstrap held that "implied license … defenses are equitable issues the Court will address outside the presence of the jury." No. 2:15-cv-01656-JRG, 2017 WL 2931403, at *2 (E.D. Tex. Mar. 3, 2017) (granting

3

motion *in limine*). Similarly, in *Kaist IP US LLC v. Samsung Electronics Co.*, Judge Gilstrap confirmed, with respect to implied license and equitable estoppel,[2] that the Court would not "present the equitable issues to the jury" because such policy "creates an incentive to present equitable defenses simply for the purpose of getting additional evidence in front of the jury that is not relevant to the issues they have to decide," which would set "a dangerous precedent." Ex. 1 at 67 (No. 2-16-cv-01314-JFG, ECF 437 (E.D. Tex., May 21, 2018)). Courts around the country have held similarly. *See, e.g.*, *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397 JGB (RZx), 2015 U.S. Dist. LEXIS 187035, at *6 (C.D. Cal. June 25, 2015) ("[T]hat the implied license defense is an equitable one … is well-settled by the case law.") (internal citations omitted); *Ryan Data Exch., Ltd. v. Graco Inc.*, No. 4:14-cv-00198 - JEG, 2016 U.S. Dist. LEXIS 189569, at *20 (S.D. Iowa Oct. 6, 2016) (citing *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1341 (Fed. Cir. 1999)) (holding that "implied patent license" is a "'question of law,'" not a "question of fact for the jury"); *see also Endo Pharms., Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1374 (Fed. Cir. 2014).

It is, thus, this Court's practice to hold non-jury trials on equitable defenses, including implied license and equitable estoppel. *See Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-CV-01314-JRG, 2019 U.S. Dist. LEXIS 228342, at *1 (E.D. Tex. Jan. 18, 2019) (holding a separate bench trial outside the presence of the jury on implied license and equitable estoppel defenses); *Eidos Display, LLC v. Chi Mei Innolux Corp.*, Civil Action No. 6:11-CV-201-JRG-JDL, 2017 LX 88005, at *1 (E.D. Tex. Dec. 8, 2017) (holding a separate bench trial outside the presence of the jury on equitable estoppel defenses); *OPTi Inc. v. Silicon Integrated Sys. Corp.*, No. 2:10-CV-00279, 2013 U.S. Dist. LEXIS 116923, at *1 (E.D. Tex. Aug. 19, 2013) (same). Furthermore, this

---

[2] Although most of the cases cited herein relate to implied license defenses, it is beyond dispute that equitable estoppel is an equitable issue "addressed to the sound discretion of the trial court." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (en banc).

4

████████████████████████

Court has prohibited estoppel evidence from reaching the jury under Rule 403, cautioning defendants "not to attempt to argue laches or estoppel." *Lectec Corp. v. Chattem, Inc.*, No. 2:06-cv-00428, 2011 WL 13086026, at *10 (E.D. Tex. Jan. 4, 2011) ("This *in limine* item is otherwise hereby GRANTED because any probative value of evidence on laches or estoppel is substantially outweighed by the dangers of unfair prejudice, jury confusion, and waste of time. … Defendants are therefore cautioned not to attempt to argue laches or estoppel to the jury.") (emphasis in original).

**B.    Databricks' Defenses Are Equitable Issues That Must Be Tried to the Court.**

The law is clear that Databricks' Apache-based implied license defenses are equitable in nature. While Databricks frames its Apache implied license theories as arising from Yahoo!'s conduct, equitable estoppel, and legal estoppel (ECF 259-2), "[t]hese labels describe not different kinds of licenses, but rather different categories of conduct which lead to the same conclusion: an implied license," which "merely signifies a patentee's waiver of the statutory right to exclude." *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997). Indeed, Databricks even pleaded "legal estoppel" and "equitable estoppel" as "Equitable Defenses" in its answer. *See* ECF 16 at 9. Thus, Databricks' Apache-based implied license theories, in whatever form, are equitable issues properly tried outside the jury's presence.

Likewise, Databricks' arguments that it is licensed because it practices ████████ and ████████████████████████ under the ██████ and ████████████ are implied license theories. This is confirmed by the Court's summary-judgment order, which characterized Databricks' ████████████ as asserting that the ██████ ██████ grants ████████████████ that "create an implied license to third parties such as Defendant." ECF 262 at 2, 6. The Court described Databricks' ██████ theory in similar terms, citing Federal Circuit authority that ████████████

5

████████████████████████████████████████

rights "create an implied license to third parties." *Id*. at 12.[3] Databricks itself describes its ████ and ████ arguments as implied license theories. *See* ECF 144 at 2, 4-13. Thus, these are equitable defenses, which the Court should decide outside the presence of the jury.

Finally, Databricks contends that equitable estoppel prevents R2 from invoking the California Statute of Frauds to challenge the Apache 2.0 license and related Individual Contributor Agreements. ECF 145. By its very nature, "equitable estoppel" is an equitable issue reserved for the Court,[4] and the Court alone should decide this issue.

## IV.    THE BENCH TRIAL SHOULD PROCEED BEFORE A JURY TRIAL.

The Court should hold a bench trial on these issues prior to a jury trial. Doing so will narrow the issues for the jury, mitigate the risk of jury confusion and unfair prejudice, and streamline trial presentations. As one example, R2 accuses two infringing functionalities, one based on Spark and one based on Photon/Aether. ECF 205-3, 205-7. Databricks argues that its proprietary Photon/Aether functionality benefits from an implied license based on Yahoo!'s open-source activities. ECF 259-2. If the Court first holds a bench trial and decides this question, such would clarify issues for presentation to the jury and allow both parties to tailor their cases appropriately: either Photon/Aether will be in the case, or it will not be.

---

[3] Although the Court stated at the summary-judgment stage that certain issues were "replete with questions of fact for the jury" (*see, e.g.,* ECF 262 at 10, 14), that statement addressed only the Rule 56 standard, i.e., whether R2 was entitled to judgment as a matter of law. It does not establish that the equitable ████████ implied license theories must be presented to a jury at trial. *See SB IP Holdings LLC v. Vivint, Inc.*, Civil Action No. 4:20-CV-00886, 2023 U.S. Dist. LEXIS 100252, at *2 (E.D. Tex. Apr. 25, 2023) (holding that "disputed issues of fact underlying" an issue that is "entirely equitable in nature" are not jury questions); *see also Carmona v. Carmona*, No. H-06-0228, 2007 U.S. Dist. LEXIS 11194, at *19 (S.D. Tex. Feb. 16, 2007) (holding that "[t]he Court must decide the fact issues on which the equitable questions turn").

[4] Again, the Court only addressed the Rule 56 standard in its summary judgment ruling and did not establish that Databricks' equitable estoppel theory must be presented to a jury. *See* ECF 266. There is no doubt that "equitable estoppel" is an equitable question.

6

████████████████████████████████████████████

As another example, R2 alleges that Databricks infringes by making, using, and selling its Data Intelligence Platform (which incorporates the aforementioned functionalities), as well as by practicing infringing methods. ECF 205-3 at 11. Databricks argues that it has implied licenses because it benefits from ████████ and ████████████████████. ECF 259-2. Even if such licenses exist, they are not dispositive of R2's infringement case. Indeed, even if Databricks could show that ██████ and █████ ███████████████████████████████████████, Databricks could nevertheless still be liable for using and selling the accused platform, and for practicing infringing methods, for its own account. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

This begs a pre-jury trial resolution. Otherwise, the parceled nature of this defense risks juror confusion. If the Court does not first rule on whether Databricks is entitled to an implied license ████████████████████████, then the jury might need to consider a complicated verdict form asking them to state exactly how Databricks infringes (i.e., by making, using, and/or selling). Indeed, it is possible that absent such a precise verdict form, the Court could subsequently find that Databricks has an implied license ████████████████████ and neither the parties nor the Court would know the ruling's actual effect. The jury could have believed, for example, that Databricks infringed solely █████████████████████████, in which case Databricks would be insulated from liability. Or the jury could have believed that Databricks infringed █████████████████████████████████████████, in which case the implied license would have no effect on Databricks' liability. R2 suggests here that the better course is for the Court to decide these implied license issues before the jury trial so the

███████████████████████████████████

parties can tailor jury presentations accordingly. Then, if the Court finds that Databricks has implied ████████ licenses, R2 will not present the jury with an infringement theory premised on Databricks ████████████████████████. If the Court finds, however, that Databricks does not have implied ████████ licenses, such will obviate the need to submit a cumbersome and potentially confusing verdict form seeking specificity by infringement type.

It bears discussion that "dangers of unfair prejudice, jury confusion, and waste of time" often accompany evidence related to equitable issues. *See Lectec Corp.*, 2011 WL 13086026, at *10; *see also* Ex. 1 at 67. Such dangers are particularly concerning here. As part of its Apache-based implied license defense and equitable estoppel exception argument, Databricks intends to paint an encompassing picture that Yahoo! made a sweeping public commitment to open source software, generally encouraged its employees to contribute to Apache projects, used open source activities for recruiting and industry adoption, and understood its Apache contributions to broadly license Yahoo! patents to the community. ECF 259-2 at 39-44. It then intends to press a narrative that R2 should not be enforcing the '610 patent because Yahoo! "meant to give it away," which is irrelevant to the actual jury issues of infringement, validity, and damages. Allowing Databricks to offer such "evidence in front of the jury" to support its narrative—when such evidence "is not relevant to the issues they have to decide"—risks prejudice and confusion and would set a "dangerous precedent." *See* Ex. 1 at 67. Accordingly, if the Court conducts a bench trial on these issues prior to a jury trial, it will narrow issues for the jury and, by extension, make it easier for the parties and the Court to sift evidence for what is truly probative versus what is overly prejudicial.

Finally, holding a bench trial first makes sense from a practical standpoint. There is no jury trial setting. This gives the Court and the parties flexibility from a scheduling perspective, and

8

narrowing issues now makes an already highly technical, complicated case more presentable and palatable for the jury.[5]

## V.    CONCLUSION

For the foregoing reasons, R2 respectfully requests that the Court enter an order that the following issues must be tried to the Court in a bench proceeding conducted prior to the jury trial: (1) whether Databricks has an implied license based on Yahoo's Apache-related open-source activities; (2) whether, and to what extent, Databricks has an implied license pursuant to ▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮; and (3) whether equitable estoppel bars R2 from relying on the California Statute of Frauds.

Dated: June 22, 2026                    Respectfully Submitted,

                                        By: /s/ Carder W. Brooks
                                        Edward R. Nelson III
                                        State Bar No. 00797142
                                        Christopher G. Granaghan
                                        State Bar No. 24078585
                                        Carder W. Brooks
                                        State Bar No. 24105536
                                        **Nelson Bumgardner Conroy PC**
                                        3131 West 7th Street, Suite 300
                                        Fort Worth, Texas 76107
                                        817.377.9111
                                        ed@nelbum.com
                                        chris@nelbum.com
                                        murphy@nelbum.com
                                        carder@nelbum.com

                                        **COUNSEL FOR**
                                        **PLAINTIFF R2 SOLUTIONS LLC**

---

[5] It bears noting that Databricks is alleging patent ineligibility under § 101. The Court likely needs to rule on step one of *Alice* prior to the jury trial anyway. *See Ollnova Techs. Ltd. v. Ecobee Techs. Ulc*, Nos. 2025-1045, 2025-1046, 2026 LX 294835, at *26 n.7 (Fed. Cir. June 4, 2026). This may be handled in parallel with the requested bench proceeding.

9

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for R2 Solutions has complied with the meet and confer requirements in Local Rule CV-7(h) and FRCP 37(a)(1) and that the accompanying motion is opposed.

*/s/ Carder W. Brooks*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record.

*/s/ Carder W. Brooks*

**CERTIFICATE OF AUTHORIZATION**

I hereby certify that under local rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

*/s/ Carder W. Brooks*

10