**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

R2 SOLUTIONS LLC,

Plaintiff,

v.

DATABRICKS, INC.,

Defendant.

Civil Action No. 4:23-cv-01147-ALM

**JURY TRIAL DEMANDED**

**DATABRICKS, INC.'S CORRECTED REPLY IN SUPPORT OF ITS MOTION FOR A DETERMINATION OF AN ABSTRACT IDEA UNDER 35 U.S.C. § 101**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*
882 F.3d 1121 (Fed. Cir. 2018)....................4

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)....................5

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012)....................5

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)....................4

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)....................4

*BSG Tech. LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)....................4

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020)....................4

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)....................4

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)....................1

*Elec. Power Grp. v. Alstom*,
830 F.3d 1350 (Fed. Cir. 2016)....................4

*Enfish, LLC v. Microsoft Corp.,*
822 F.3d 1327 (Fed. Cir. 2016)....................3

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
879 F.3d 1299 (Fed. Cir. 2018)....................3

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026) ....................5

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)....................5

*Intell. Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017)..........2

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019)..........3

*Mortg. Grader, Inc. v. First Choice Loan Servs.*,
811 F.3d 1314 (Fed. Cir. 2016)..........4

*Ollnova Techs. Ltd. v. ecobee Techs. ULC*,
177 F.4th 1343 (Fed. Cir. 2026) ..........4

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ..........3

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017)..........1

## TABLE OF EXHIBITS[1]

| No. | Exhibit | Docket Entry No. |
|---|---|---|
| 1 | U.S. Patent No. 8,190,610 (the "'610 patent") | Dkt. 334-3 |
| 2 | Excerpts of the Opening Expert Report of Dr. Jon Weissman, dated February 20, 2025 ("Weissman Op. Rep.") | Dkt. 334-4 |
| 3 | Excerpts of the Transcript of the March 25, 2025 Deposition of Bill Davis ("Davis Dep. (Day 1)") | Dkt. 334-5 |
| 4 | Excerpts of the Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), *R2 Solutions LLC v. Cloudera, Inc.*, Case No. 1:23-cv-1205-RP, Dkt. 24 (W.D. Tex., Feb. 2, 2024) | Dkt. 334-6 |
| 5 | Excerpts of the Rebuttal Expert Report of William Davis Concerning the Validity of U.S. Patent No. 8,190,610 dated March 13, 2025 ("Davis Reb. Rep.") | Dkt. 334-7 |

[1] Each of the exhibits listed in this table, Exhibits 1–5, is attached to the Declaration of Vigen Salmastlian (Dkt. 334-2).

## I. R2'S REPLY CONFIRMS THE '610 PATENT'S CLAIMS ARE ABSTRACT.

As explained in Databricks' opening brief, the asserted claims are directed to the abstract idea of "merging data by applying mapping and reducing functions to data sets with different schemas." (Dkt. 334 ("Op. Br.") at 1.) R2 does not dispute that its own prior briefing and its own expert describe the focus of the '610 patent *and its claims* in the same way. (Dkt. 354 ("Opp.") at 12–13.) Specifically, R2 characterized the patent and "the claims of the '610 patent" as directed to an alleged "improvement" that is the same as the abstract idea identified by Databricks:

> As an ***improvement to the existing technology process***, the '610 patent describes "a novel MapReduce architecture where ***mapping and reducing functions can be applied to data from heterogenous data sources (i.e., data sources having different schema) to accomplish the merger of heterogenous data*** based on a key in common between or among the heterogenous data." FAC, ¶ 16; Davis Decl., ¶ 34. ***The claims of the '610 patent*** include several technical enhancements that ***facilitate this improved architecture*** . . .

(Ex. 4 at 11; Ex. 5.) R2's recharacterization of these statements as "the problem" (Opp. at 13) rather than the focus of the claims fails because R2 admitted the "claims of the '610 patent" are directed to the same idea. *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) ("taking two data sets and combining them into a single data set" is abstract). R2's related contention that the proposed abstract idea is "not even abstract" because it includes software steps of "mapping" and "reducing" data to merge the data has no legal basis. (Opp. at 12.) The Federal Circuit has held data-processing claims are abstract even when they recite software functions. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326–27 (Fed. Cir. 2017) ("start[ing] with data, add[ing] an algorithm, and end[ing] with a new form of data" is abstract).

## II. R2 DOES NOT MEANINGFULLY DISPUTE THE CLAIMS ARE PURELY FUNCTIONAL.

R2 does not identify a single claim limitation that supplies a technological advance. R2 admits the '610 patent "does not claim to have invented partitioning, mapping, and reducing." (Opp. at 11.) This is not surprising, as the '610 patent confirms—and R2's expert conceded in

deposition—that the claims recite pre-existing generic MapReduce technology, including merging data by performing the steps of "partitioning" data to form partitions with "key-value pairs," "mapping" to produce "intermediate data" with "key-value pairs" and "reducing" the "intermediate data" based on a key in common. (Op. Br. at 5–7.) R2 also does not dispute that the claims recite conventional computer components, including a generic "distributed system" and a generic "computer system" with a "processor and memory." (*Id.* at 13; '610 patent, cls. 1, 17.)

Unable to point to anything in the claim, R2 falls back on the Court's constructions, arguing the improvement is supplied by "'data groups' and their associated 'mechanisms for identifying data' (i.e., the 'grouping' discussed in the specification)." (Opp. at 7–8.) But the patent describes this "mechanism" as a generic label applied to input data to route it to a corresponding function. (Op. Br. at 7–8; '610 patent 3:50–61; 4:1–13; Fig. 3 (data labels "All Emp" and "All Dept").)[2]

According to R2, these labels (i.e., "mechanism") "indicat[e] . . . which data group the partition originated from," so that "each mapping function is selected for a partition based on the data group the partition originated from." (Opp. at 7–8.) But R2 quotes the claimed result, not technology for achieving it. The claim does not recite how the "mechanism" works, how it determines which data group a partition came from, or how it routes information to a particular "map" function. (Op. Br. at 3–4.) R2's reliance on the "reduce" limitation also fails. (Opp. at 7–8.) The "reducing" step is claimed by its "*result*" of merging different intermediate data, through *unspecified* processing in a manner that is *somehow* "defined to correspond to that data group." ('610 patent, claim 1; Op. Br. at 4.) The claim again fails to recite how the "mechanism" is used by the "reducing" step at all, much less to achieve the claimed result. A "mechanism" described only as a generic label, with no limitation on how to use it to achieve the claimed result, does not

---

[2] *See Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1326 (Fed. Cir. 2017) (finding "tags" for "grouping [] similar items" abstract).

make a claim concrete. (Op. Br. at 14–15 (citing *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316–17 (Fed. Cir. 2021) ("content-based identifier" to route data to operations is abstract).)

Because the claims are purely functional and recite nothing more than the goal of merging heterogeneous data using generic MapReduce functions, R2 incorrectly argues that claiming *how* to achieve the desired advance "is not required." (Opp. at 11 (citing *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019)).) In *Koninklijke*, the claims recited a specific implementation, modifying "in time" the permutation applied to successive data blocks, that let prior art systems detect transmission errors they previously could not. 942 F.3d at 1152–53. The court distinguished those claims from claims that "simply recite, without more, the mere desired result," holding that "[a]n improved result, without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea." *Id.* at 1150–51.

Nor can R2 rely on cases finding improvements in computer functionality. (Opp. at 10.) Each of those cases turned on claims reciting a specific technical structure. In *Enfish, LLC v. Microsoft Corp.*, a "self-referential" logical table improved how a computer stores and retrieves data. 822 F.3d 1327, 1336–37 (Fed. Cir. 2016). In *Finjan, Inc. v. Blue Coat Sys., Inc.*, a method for generating a security profile enabled the system "to do things it could not do before." 879 F.3d 1299, 1303–05 (Fed. Cir. 2018). The '610 claims, by contrast, recite labeled data routed through generic MapReduce functions, with no comparable technological improvements.[3]

R2 also repeatedly relies on inapposite cases resolved at *Alice* step two to argue the '610 claims escape abstractness at step one, including *BASCOM*, *Aatrix*, and *Mortg. Grader*. (Opp. at 4, 5 n.1, 10.) That is the wrong analysis. In each, the Federal Circuit accepted that the patents

[3] R2 also fails to distinguish the cases cited in Databricks' opening brief. (Opp. at 14.) It repeats for each case that the '610 patent provides a "specific mechanism" or solution "unique to computers" without ever identifying what that specific mechanism or computer-specific solution is. (*Id.*) At best, R2 is referencing the "mechanism" for identifying data in "data groups," which is no more than a generic label without any technology for achieving the claimed results.

claimed an abstract idea and asked only whether the claims supplied an inventive concept at step two. Databricks' motion asks the Court to resolve step one only. R2's step-two authorities confirm that the inventive-concept arguments it advances belong to the jury.[4] *See Ollnova Techs. Ltd. v. ecobee Techs. ULC*, 177 F.4th 1343, 1355–58 (Fed. Cir. 2026).

## III. R2'S REMAINING ARGUMENTS CONTRADICT PRECEDENT.

R2's remaining arguments improperly go outside the '610 patent's claims and specification, relying on expert testimony about "reduce-side bottlenecks," "data skew," "load imbalance," and "memory overload" to argue the patent is directed to a "redesign" of MapReduce that permits it to more "*efficiently* join [] data." (Opp. at 5–7, 9–10.) But none of this appears in the '610 patent. Because an expert cannot inject into a patent what the inventors never disclosed or claimed, R2's reliance on its expert fails. *BSG Tech. LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018). While R2 contends that "iterators" are a "specific programming object" (Opp. at 9–10), the independent claims do not recite "iterators" at all, and the dependent claims require only "*an* iterator."[5] R2 cannot transform abstract claims into patent-eligible subject matter by pointing to unclaimed features. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767–69 (Fed. Cir. 2019). Furthermore, "merely adding computer functionality to increase the speed or

---

[4] There is also no basis for R2's new request to bifurcate the § 101, step one inquiry from trial. Step one is a legal question that the Court resolves on the intrinsic evidence, without extrinsic or expert testimony. *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372–74 (Fed. Cir. 2020) ("Alice step one presents a legal question that can be answered based on the intrinsic evidence."). R2's conventionality arguments regarding partitioning, mapping, and reducing (Opp. at 7–9) are step-two fact questions for the jury. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

[5] Although dependent claims 5 and 21 recite "*an* iterator," the specification confirms an iterator simply "access[es] intermediate data" within a reduce function. ('610 patent, 3:60–61.) That is exactly what conventional MapReduce does as explained in the 2004 Google MapReduce paper. (Dkt. 62-10 ("Dean Paper") at 2 ("intermediate values are supplied to the user's reduce function via an iterator").) The claimed "iterator" is therefore the use of conventional computer technology to perform the abstract idea. *Elec. Power Grp. v. Alstom*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

efficiency of [a] process does not confer patent eligibility on an otherwise abstract idea." *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1067-68 (Fed. Cir. 2026).

Realizing the claims merely recite pre-existing MapReduce technology, R2 contradicts Federal Circuit precedent, arguing that "even assuming that the '610 just recites traditional MapReduce, it still would not be abstract, because MapReduce itself is a specific computer technology solving problems unique to computers." (Opp. at 13.) But the Federal Circuit has been clear that claims which recite "conventional or generic technology" are abstract. *See, e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).[6] Step one does not ask whether the prior art is technological; it asks whether the claims recite a technological improvement over the prior art. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). The '610 patent claims do not.

Finally, R2 misleadingly suggests that eligibility has been resolved by IPR proceedings and prior briefing in other cases. (Opp. at 1–2.) But the IPRs are irrelevant as they addressed obviousness, not eligibility, and the prior eligibility motions were denied as moot or without prejudice pending claim construction—not on the merits. (Op. Br. at 11, n.7.)

## IV. CONCLUSION

Databricks respectfully asks the Court to hold that the asserted claims are directed to the abstract idea of "merging data by applying mapping and reducing functions to data sets with different schemas" and instruct the jury on that abstract idea.

---

[6] R2 makes the same error when it argues the claims do not comprise a mental process because it "presupposes computer architecture." (Opp. at 15.) The question at step one of *Alice* is not whether generic computer hardware or functions are invoked, but whether the claim—as here—automates a human-performable mental process (e.g., merging the two sets of data in Fig. 3), which the Federal Circuit has held abstract. *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible.").

Dated: August 21, 2026

Respectfully submitted,

*/s/ Vigen Salmastlian*
Michael J. Sacksteder
CA Bar No. 191605 (Admitted E.D. Texas)
Email: msacksteder@fenwick.com
Eric B. Young
CA Bar No. 318754 (Admitted E.D. Texas)
Email: eyoung@fenwick.com
S. Emma Lee
CA Bar No. 344074 (Admitted *Pro Hac Vice*)
Email: emma.lee@fenwick.com
**FENWICK & WEST LLP**
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350

Vigen Salmastlian
CA Bar No. 276846 (Admitted E.D. Texas)
Email: vsalmastlian@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Jessica M. Kaempf
WA Bar No. 51666 (Admitted E.D. Texas)
Email: jkaempf@fenwick.com
Jonathan G. Tamimi
WA Bar No. 54858 (Admitted E.D. Texas)
Email: jtamimi@fenwick.com
**FENWICK & WEST LLP**
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511

Dargaye Churnet
CA Bar No. 303659 (Admitted E.D. Texas)
Email: dchurnet@fenwick.com
**FENWICK & WEST LLP**
730 Arizona Ave, 1st Floor
Santa Monica, CA 90401
Telephone: 310.434.5400

Jennifer Truelove
Texas Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH P.C.**
104 E. Houston Street, Suite 300
Marshall, TX 75670
Telephone: 903.923.9000
Facsimile: 903.923.9099

Deron R. Dacus
Texas Bar No. 00790553
Email: ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 32, Suite 430
Tyler, Texas 75701
Telephone: 903.705.1117

*Attorneys for Defendant*
*Databricks, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 21, 2026. Additionally, I hereby certify that all counsel of record who consented to electronic service are being served with a copy of this document via electronic mail per Local Rule CV-5.

*/s/ Vigen Salmastlian*
Vigen Salmastlian